1    GLYNN & FINLEY, LLP
     CLEMENT L. GLYNN, Bar No. 57117
2    JONATHAN A. ELDREDGE, Bar No. 238559
     One Walnut Creek Center
3    100 Pringle Avenue, Suite 500
     Walnut Creek, CA 94596
4    Telephone: (925) 210-2800
     Facsimile: (925) 945-1975
5
     Attorneys for Defendants
6    LandAmerica Financial Group, Inc., LandAmerica
     National Commercial Services,
7    LandAmerica Lawyers Title Company, and
     LandAmerica Commercial Search Services Company



8

9                UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11                            **C 07 3999 SC**
                              Case No.

12   MARWAN A. HARARA,         )

13           Plaintiff,      )

14     vs.                 )   **NOTICE OF REMOVAL OF ACTION**
                        )   **UNDER 28 U.S.C. § 1441**

15   LANDAMERICA FINANCIAL GROUP, )
     INC., LANDAMERICA CORPORATION, )
16   LANDAMERICA NATIONAL     )
     COMMERCIAL SERVICES,      )
17   LANDAMERICA LAWYERS TITLE  )
     COMPANY, AND LANDAMERICA   )
18   COMMERICAL SEARCH SERVICES  )
     COMPANY and DOES 2 through 100,  )
19   Inclusive,                 )

20         Defendants.    )

21   ————————————————  )

22

23         TO THE CLERK OF THE ABOVE ENTITLED COURT:

24            PLEASE TAKE NOTICE that pursuant to 28 U.S.C. section 1441, defendants

25   LandAmerica Financial Group, Inc. and dba LandAmerica National Commercial Services,

26   Lawyers Title Insurance Corporation, erroneously sued as LandAmerica Lawyers Title

27   Company, and LandAmerica Commercial Search Services Company (collectively

28   "LandAmerica") hereby remove to this Court the state court action described below:

1        1.    On December 6, 2006, this action was commenced in the Superior Court

2    of the State of California in and for the County of Alameda, entitled "MARWAN A. HARARA,

3    plaintiff, vs. LANDAMERICA FINANCIAL GROUP, INC., LANDAMERICA

4    CORPORATION, LANDAMERICA NATIONAL COMMERCIAL SERVICES, AND

5    LANDAMERICA LAWYERS TITLE COMPANY, defendants," Case Number RG 06301116.

6    A copy of the complaint is attached hereto as **Exhibit A**.[1]

7        2.    The first date upon which any named defendant received a copy of the

8    complaint was May 30, 2007, when plaintiff's counsel served a copy of the complaint on CT

9    Corporation, which then sent it to LandAmerica's Virginia office.  The summons was issued for

10   defendant LandAmerica Commercial Search Services Company, which was sued under the

11   fictitious name of "Doe I."  A copy of the summons is attached hereto as **Exhibit C**.  At the same

12   time, LandAmerica also received a summons that did not include the name of any other

13   defendant.  A copy of that summons is attached hereto as **Exhibit D**.  LandAmerica has not

14   received an amendment to the complaint adding LandAmerica Commercial Search Services

15   Company as a defendant.

16       3.    The "four corners" of plaintiff's complaint do not state sufficient facts to

17   establish removal under 28 U.S.C. section 1331.  (See *Harris v. Bankers Life and Casualty*

18   *Company* (9th Cir. 2005) 425 F.3d 689, 694 ["We now conclude that notice of removability

19   under § 1446(b) is determined through examination of the four corners of the applicable

20   pleadings, not through subjective knowledge or a duty to make further inquiry."].)  The

21   complaint does not allege the states of incorporation and principal places of business for each of

22   the defendants.  Indeed, defendant LandAmerica Commercial Search Services Company is not

23   even mentioned in the complaint.  The complaint also erroneously alleges that one or more of the

24   defendants has its principal place of business in San Francisco, CA, which, if true, would destroy

25   diversity.  Further, the complaint does not specify the damages sought.  Instead, the complaint

26

27   [1]    As discussed in LandAmerica's "Notice of Related Action or Proceeding and Request for
Assignment," filed herewith, this case is related to a federal action filed in February 2004.  A
28   copy of the second amended complaint from that action is attached hereto as **Exhibit B**.

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441

1  seeks general, special and compensatory damages "in an amount to be proven at trial," as well as

2  interest, costs and "other relief." (See Exh. A at p. 10:10-17.)

3      4.    After receipt of plaintiff's complaint, LandAmerica reviewed the facts to

4  determine whether the action was subject to removal. Based on that review, it was determined

5  that this action is removable to this Court pursuant to the provisions of 28 U.S.C. section 1441:

6      (a)    This Court has original jurisdiction over this action under 28

7  U.S.C. sections 1331 and 1332, in that it is a civil action between citizens of different states and

8  the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs:

9      (i)    Plaintiff is a citizen of the State of California. (Exh. A at ¶

10  1.)

11      (ii)    Defendant LandAmerica Financial Group Inc. is a Virginia

12  corporation with its principal place of business in Richmond, Virginia. (See Declaration of

13  Timothy Reardon, at ¶ 4.)

14      (iii)    Defendant Lawyers Title Insurance Corporation,

15  erroneously sued as LandAmerica Lawyers Title Company, is a Nebraska corporation with its

16  principal place of business in Richmond, Virginia. (See *ibid.*)

17      (iv)    Defendant LandAmerica Commercial Search Services

18  Company is a Virginia corporation with its principal place of business in Richmond, Virginia.

19  (See *ibid.*)

20      (v)    Defendant LandAmerica National Commercial Services is

21  a dba of LandAmerica Financial Group Inc. (See *ibid.*)

22      (vi)    LandAmerica Corporation is unknown to defendats. The

23  California Secretary of State's Business Portal shows that corporation is suspended and it is

24  unrelated to any of the defendants in this matter. (See *ibid.*) Attached as **Exhibit E** is a printout

25  of the Business Portal's webpage. The sham joinder of a non-existent entity does not destroy

26  diversity. (See *Calero v. Unisys Corp.* (N.D.Cal. 2003) 271 F.Supp.2d 1172, 1176 ["a defendant

27  who has been fraudulently joined need not be considered in evaluating diversity of

28  citizenship."].)

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441

1             (vii)    The claimed damages apparently exceed $75,000.  Plaintiff

2    claims he was damaged by LandAmerica's conduct because he:  (1) was not able to close escrow

3    and purchase the service station; (2) lost the benefit of the bargain that had been negotiated with

4    ConocoPhillips Company; (3) lost his escrow deposit; and (4) sustained losses for his inability to

5    hold the property in trust until the final performance by all parties of all escrow instructions and

6    terms of the "Sale Contract."  (See Exh. A at ¶¶ 12, 17 and 22.)  His claimed damages include

7    "loss of his investment, loss of goodwill, loss of business, loss of improvements to the Station,

8    loss of merchandise, loss of equipment, loss of benefits of the proceeds from the sale of [his]

9    business and the Station, and all and any consequential damages resulting from LandAmerica's

10   unlawful actions."  (See *id.* at ¶ 36.)  The alleged amount of the escrow deposit is $5,000.  (See

11   *id.* at ¶ 8.)  Based on plaintiff's second amended complaint in the prior action, his alleged loss of

12   "investment" is $50,000 (see Exh. B at ¶ 28) and the alleged "loss of benefits of the proceeds

13   from the sale of Harara's business and the Station" to Wurn Waa Phan is at least $180,000 (see

14   *id.* at ¶¶ 48, 60).  These three items of alleged damages ($235,000) exceed the statutory

15   minimum for diversity jurisdiction.

16                          **INTRADISTRICT ASSIGNMENT**

17           5.    Pursuant to Civil Local Rule 3-2(c) and (d) this action is properly removed

18   to the San Francisco Division.  As discussed in LandAmerica's "Notice of Related Action or

19   Proceeding and Request for Assignment," filed herewith, LandAmerica requests that this action

20   be assigned to Magistrate Judge Bernard A. Zimmerman who handled a related matter.

21           Dated:   August 3, 2007

22                        GLYNN & FINLEY, LLP

23                        By_____

24                        Attorneys for Defendants
                          LandAmerica Financial Group, Inc.,

25                        LandAmerica National Commercial Services,
                          LandAmerica Lawyers Title Company, and

26                        LandAmerica Commercial Search Services
                          Company

27

28

- 4 -

# EXHIBIT A

*5313003*

Superior Court of California
County of Alameda

2006 DEC -6  PH 2: 18

Allan E. Broussard
Justice Center
Executive Officer Clerk

SUMMONS ISSUED

1   Marwan A. Harara
2   3220 Contreras Place
    Hayward, California 94542
3   Phone: (510)888-9511

4   In Pro Per

5

6

7

8                    SUPERIOR COURT OF CALIFORNIA

9                        COUNTY OF ALAMEDA

10

11                                              Case No. RG 06 30 11 16

12   MARWAN A. HARARA,

                                                COMPLAINT FOR DAMAGES
13          Plaintiff,
                                                UNLIMITED CIVIL JURISDICTION
14          v.

15

16   LANDAMERICA FINANCIAL GROUP,
     INC., LANDAMERICA CORPORATION,
17   LANDAMERICA NATIONAL
     COMMERCIAL SERVICES,
18   LANDAMERICA LAWYERS TITLE
     COMPANY, [and DOES 1 through 100,
19   INCLUSIVE]

20          Defendants.

21

22

23

24

25

26

---

COMPLAINT FOR DAMAGES                               Case No:

## PRELIMINARY ALLEGATIONS

1.   At all times herein mentioned, Plaintiff MARWAN A. HARARA ("Harara") is an individual residing at 3220 Contreras Place, Hayward, California 94542.

2.   Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Defendants LANDAMERICA FINANCIAL GROUP, INC., LANDAMERICA CORPORATION, LANDAMERICA NATIONAL COMMERCIAL SERVICES, LANDAMERICA LAWYERS TITLE COMPANY ("LandAmerica") were formed, and now are, as a parent Virginia corporation having operating divisions and subsidiaries in California and having its California principal place of business at One Market Street, Spear Tower Suite 1850, San Francisco California 94105 and doing business within the County of Alameda at 1320 Harbor Bay Parkway, Suite 260, California 94502, and within this judicial district.

3.   Plaintiff is not aware of the true names or capacities, whether individual, corporate, associate or otherwise, of Defendants named herein as DOES 1 through 100, Inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff shall amend this Complaint to allege the true names and capacities of the fictitiously named Defendants when ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants is in some manner intentionally or negligently responsible for the things herein alleged and the damages it suffered.

4.   Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants, fictitious and real, are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by their conduct.

5.   Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, each of the fictitiously named Defendants was the agent, servant, employee, co-

2

COMPLAINT FOR DAMAGES                                          Case No:

venture, and/or alter ego of each of the remaining fictitiously named Defendants and was acting

within the course, scope, purpose, consent, knowledge, and authorization of such agency,

employment, and/or joint venture and each fictitiously named Defendant has ratified and

approved the acts of his, her, and/or its agents.

6.    The real property that is the subject matter of this action is commonly described as a 76-branded motor fuel gas station located at 4280 Foothill Blvd., Oakland, California 94601("Station").

7.    On or about June 6, 2003, Harara, as the buyer, entered into a written contract with the owner of the Station, Tosco Operating Company, Inc., as the seller ("Seller") for the sale of the real estate property and attached improvements of the Station ("Sale Contract") in which Harara agreed to purchase and Seller agreed to sell the real estate property and attached improvements of Station for the total consideration of One Million One Hundred Twenty Thousand Dollars ($1,120,000.00).

8.    On or about June 16, 2003, an escrow was opened for the conveyance of the Station pursuant to the terms of the Sale Contract designating LandAmerica as the Escrow agent and the Sale Contract, along with an escrow deposit paid by Harara in the amount of Five Thousand Dollars ($5,000.00), was delivered to LandAmerica.

### FIRST CAUSE OF ACTION

(NEGLIGENCE)

9.    Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Complaint as if the same were set out at length herein.

10.    In performing services as the escrow holder, LandAmerica acted negligently in that it (1) canceled the escrow despite repeated instruction to the contrary from Harara as the buyer; (2)

3

COMPLAINT FOR DAMAGES                                    Case No:

1    opened a new escrow, shortly after canceling Harara's escrow, to the same property, the

2    Station, for the Seller involving a new buyer other than Harara; (3) held Harara's escrow

3    deposit and refused to release it after canceling Harara's escrow and starting a new escrow for

4    the sale of the same property, the Station, to another buyer; (4) failed in performing its services

5    to act as an agent for all parties; (5) failed to perform the express escrow instruction relating to

6    the sale of the Station and failed to provide the services required under the escrow instructions;

7    (6) failed to investigate the facts and ascertain Harara's instruction as the buyer before

8    canceling Harara's escrow and starting a new escrow to the same property, the Station, for the

9    Seller; (7) accepted Seller's sole instruction in furtherance of its self-dealing activities and to

10    advance and protect obtaining Seller's other business in the form of LandAmerica's designation

11    by the Seller as an escrow agent, title insurance provider, and other commercial services

12    provider involving Seller's numerous property transactions taking place in California and

13    around the US; and (8) failed to perform in good-faith and fair dealing, failed to perform in

14    accordance with its duty of loyalty, and breached its fiduciary duty to Harara by canceling the

15    escrow in immediate response to Seller's request and before obtaining any instruction or

16    feedback from Harara.

17

18    11.    Harara relied on LandAmerica's services as an escrow holder to perform in accordance

19    with the escrow instruction, to act as an agent for all parties by ascertaining the facts from

20    Harara before accepting to cancel the escrow for the sale of the Station to Harara, not to act in

21    detriment to Harara's interest in self-dealing and in order o advance and protect its own other

22    numerous dealings and transactions with Seller, and to act in furtherance of its fiduciary duty,

23    duty of loyalty, and duty of good-faith and fair dealing as an escrow holder.

24

25

26

4

COMPLAINT FOR DAMAGES                                    Case No:

12.    As a direct and proximate result of the negligence and carelessness of LandAmerica as the escrow holder as set forth above, Harara was damaged in that he: (1) was not able to close escrow and purchase the property of the Station; (2) lost the benefit of the bargain that was negotiated with the Seller; (3) lost his escrow deposit; and (4) sustained losses for his inability to hold the property in trust with LandAmerica as the escrow holder until the full performance by all parties of all escrow instructions and terms of the Sale Contract.

## SECOND CAUSE OF ACTION

### (BREACH OF CONTRACT)

13.    Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Complaint as if the same were set out at length herein.

14.    The aforementioned written escrow instructions described in this complaint constituted a written contract between the buyer Harara and the escrow holder LandAmerica.

15.    Harara performed his obligations under the terms of the escrow instructions in the manner specified in those instructions and their subsequent amendments, except for those acts that have been prevented, delayed, or excused by the Seller's or LandAmerica's acts or omissions.

16.    LandAmerica as the escrow holder failed and refused to perform its obligations under the terms of the escrow instructions and violated the terms of the escrow instructions in that it (1) canceled the escrow despite repeated instruction to the contrary from Harara as the buyer; (2) opened a new escrow, shortly after canceling Harara's escrow, to the same property, the Station, for the Seller involving a new buyer other than Harara; (3) held Harara's escrow deposit and refused to release it after canceling Harara's escrow and starting a new escrow for the sale of the same property, the Station, to another buyer; (4) failed in performing its services

5

COMPLAINT FOR DAMAGES                                    Case No:

to act as an agent for all parties; (5) failed to perform the express escrow instruction relating to the sale of the Station and failed to provide the services required under the escrow instructions; (6) failed to investigate the facts and ascertain Harara's instruction as the buyer before canceling Harara's escrow and starting a new escrow to the same property, the Station, for the Seller; and (7) accepted Seller's sole instruction in furtherance of its self-dealing activities and to advance and protect obtaining Seller's other business in the form of Seller's designating LandAmerica as an escrow agent, title insurance provider, and other commercial services provider involving Seller's numerous property transactions taking place in California and around the US.

17.    As a direct and proximate result of LandAmerica's failure and refusal to perform its obligations under the escrow instructions and its violation of those instructions Harara was damaged in that he (1) was not able to close escrow and purchase the property of the Station; (2) lost the benefit of the bargain that was negotiated with the Seller; (3) lost his escrow deposit; and (4) sustained losses for his inability to hold the property in trust with LandAmerica as the escrow holder until the full performance by all parties of all escrow instructions and terms of the Sale Contract.

### THIRD CAUSE OF ACTION

(BREACH OF CONTRACTUAL COVENANT

OF GOOD FAITH AND FAIR DEALING)

18.    Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Complaint as if the same were set out at length herein.

19.    By acting in the manner described above, LandAmerica breached its contractual covenant of good faith and fair dealing in accordance with the reasonable commercial standards of fair

6

COMPLAINT FOR DAMAGES                                     Case No:

dealings in the trade, and in accordance with the covenants and promises under the escrow instructions.

20.    Harara has duly performed all conditions, covenants, and promises required to be performed under the escrow instructions and subsequent amendments, except for those acts that have been prevented, delayed, or excused by the Seller's or LandAmerica's acts or omissions.

21.    By engaging in the conduct set forth herein, LandAmerica has breached its contractual covenant of good faith and fair dealing.

22.    As a direct and proximate result of this breach of LandAmerica's contractual covenant of good faith and fair dealing as herein alleged, Harara was damaged in that he (1) was not able to close escrow and purchase the property of the Station; (2) lost the benefit of the bargain that was negotiated with the Seller; (3) lost his escrow deposit; and (4) sustained losses for his inability to hold the property in trust with LandAmerica as the escrow holder until the full performance by all parties of all escrow instructions and terms of the Sale Contract.

## FOURTH CAUSE OF ACTION

### (UNJUST ENRICHMENT)

23.    Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Complaint as if the same were set out at length herein.

24.    The aforementioned written escrow instructions described in this complaint constituted a written contract between Harara the buyer and LandAmerica as the escrow holder.

25.    Harara performed its obligations under the terms of the escrow instructions in the manner specified in those instructions and their subsequent amendments, except for those acts that have been prevented, delayed, or excused by the Seller's or LandAmerica's acts or omissions.

7

COMPLAINT FOR DAMAGES                                Case No:

26.    LandAmerica as the escrow holder failed and refused to perform its obligations under the terms of the escrow instructions and violated the terms of the escrow instructions in the manner described above in this Complaint.

27.    As a direct and proximate result of LandAmerica's failure and refusal to perform its obligations under the escrow instructions and its violation of those instructions, LandAmerica was unjustly enriched by opening escrow for the same property and attached fixed improvements of the Station for the Seller and a new buyer other than Harara and was unjustly enriched by its other numerous self-dealing acts as described herein.

## FIFTH CAUSE OF ACTION

### (BREACH OF FIDUCIARY DUTY)

28.    Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Complaint as if the same were set out at length herein.

29.    As an escrow holder, LandAmerica owed Harara a fiduciary duty that consisted of (1) a duty of loyalty, (2) a duty to make full disclosure, and (3) a duty to exercise a high degree of care to act as an agent for all parties in performing its services.

30.    LandAmerica breached its fiduciary duty owed to Harara by acting in the manner described in this Complaint.

31.    As a direct and proximate result of LandAmerica's breach of its fiduciary duty owed to Harara, Harara was damaged in the manner described in this Complaint.

## SIXTH CAUSE OF ACTION

### (CONSPIRACY)

32.    Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Complaint as if the same were set out at length herein.

8

COMPLAINT FOR DAMAGES                                    Case No:

33.    LandAmerica as an escrow holder did the acts and things herein alleged pursuant to, and furtherance of, the conspiracy and above-alleged agreement.

34.    LandAmerica as an escrow holder furthered the conspiracy by cooperation with or lent aid and encouragement to or ratified and adopted the acts of Seller in breaching the Sale Contract and the Seller's contractual obligations thereunder.

35.    By acting in the manner described herein relating to the Station, LandAmerica and Seller cooperated, aided, encouraged, ratified, and adopted the acts of each others to deprive Harara of his contractual rights and remedies under the Sale Contract and the benefit of the bargain of the sale of the Station.

36.    As a direct and proximate result of LandAmerica's and Seller's conspiracy to breach the escrow instructions and the Sale Contract, breach their implied covenants of good-faith and fair dealing, and perform other fraudulent conduct as herein alleged, Harara has been injured and damaged in an amount to be proven at trial, including, but not limited to, loss of his investment, loss of goodwill, loss of business, loss of improvements to the Station, loss of merchandise, loss of equipment, loss of benefits of the proceeds from the sale of Harara's business and the Station, and all and any consequential damages resulting from LandAmerica's unlawful actions.

## SEVENTH CAUSE OF ACTION

### (UNFAIR BUSINESS PRACTICES IN VIOLATION

### OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, ET SEQ.)

37.    Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Complaint as if the same were set out at length herein.

9

COMPLAINT FOR DAMAGES                                    Case No:

38.     Harara is informed and believes, and based thereon alleges, that each of LandAmerica's failure to perform and breaches as stated herein under each cause of action also constitute a violation of California Business and Professions Code § 17200, et seq.

39.     Harara is entitled to and requests restitution, in an amount according to proof at the time of trial, incurred as a result of each of LandAmerica's violations of California Business and Professions Code § 17200, et seq.

WHEREFORE, Harara prays for judgment as follows:

With respect to all Causes of Action

1.  General damages in an amount to be proven at trial;

2.  Special damages in an amount to be proven at trial;

3.  Compensatory damages in an amount to be proven at trial;

4.  Punitive damages in an amount to be proven at trial;

5.  Interest allowed by law;

6.  Costs incurred herein; and

7.  Any other and further relief the Court deems just and proper.

DATED: December 6, 2006

By: _____

Marwan A. Harara

Plaintiff

COMPLAINT FOR DAMAGES                                    Case No:

10

**EXHIBIT B**

1   Marwan A. Harara (CSB No. 209142)
2   3220 Contreras Place
    Hayward, California 94542
3   Phone: (510)445-0932

4   Plaintiff Marwan A. Harara
    In Pro Se

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11                                          Case No: C04-0515-BZ
    MARWAN AHMED HARARA, on behalf
12  of himself and the General Public of the State   **SECOND AMENDED COMPLAINT FOR:**
    of California
13                                          1.  VIOLATIONS OF THE PETROLEUM
    Plaintiff,                                  MARKETING PRACTICES ACT, 15
14                                              U.S.C. § 2801, ET SEQ.;
    vs.                                     2.  VIOLATIONS OF THE PETROLEUM
15                                              MARKETING PRACTICES ACT, 15
    CONOCOPHILLIPS COMPANY, a Texas             U.S.C. § 2801, ET SEQ.;
16  Corporation,      DEAN      RICHARD    3.  CONSTRUCTIVE TERMINATION BY
    MASTERTON, [and DOES 1 through 100,          FAILING TO DELIVER MOTOR FUEL
17  INCLUSIVE],                                  AND FAILING TO COMPLY WITH
                                                CREDIT TERMS OF PAYMENT AND
18  Defendants.                                 CREDIT CARD SALES TERMS
                                                UNDER THE AGREEMENT IN
19                                              VIOLATION OF THE PETROLEUM
                                                MARKETING PRACTICES ACT, 15
20                                              U.S.C. § 2801, ET SEQ.;
                                            4.  RETALIATORY EVICTION IN
21                                              VIOLATION OF THE PETROLEUM
                                                MARKETING PRACTICES ACT, 15
22                                              U.S.C. § 2801, ET SEQ.;
                                            5.  ACTUAL TERMINATION IN
23                                              VIOLATION OF THE PETROLEUM
                                                MARKETING PRACTICES ACT, 15
24                                              U.S.C. § 2801, ET SEQ.;
                                            6.  ACTUAL AND STATUTORY
25                                              DAMAGES AND EQUITABLE AND
                                                DECLARATORY RELIEF FOR
26                                              VIOLATIONS OF THE EQUAL
                                                CREDIT OPPORTUNITY ACT OF THE
27                                              CONSUMER CREDIT PROTECTION
                                                ACT, 15 U.S.C. § 1691, ET SEQ., AND
28                                              12 CFR § 202 ET SEQ.;



7. ACTUAL AND STATUTORY DAMAGES AND EQUITABLE AND DECLARATORY RELIEF FOR VIOLATIONS OF THE EQUAL CREDIT OPPORTUNITY ACT OF THE CONSUMER CREDIT PROTECTION ACT, 15 U.S.C. § 1691, ET SEQ.;

8. ACTUAL AND STATUTORY DAMAGES FOR VIOLATIONS OF THE HOLDEN CREDIT DENIAL DISCLOSURE ACT OF 1976 – CALIFORNIA CIVIL CODE § 1787.2;

9. ACTUAL AND STATUTORY DAMAGES FOR VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §21140, ET SEQ.;

10. ACTUAL AND STATUTORY DAMAGES FOR VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §21140, ET SEQ.;

11. DAMAGES FOR BREACH OF CONTRACT;

12. DAMAGES FOR BREACH OF CONTRACT;

13. DAMAGES FOR BREACH OF CONTRACT;

14. DAMAGES FOR BREACH OF CONTRACT;

15. FRAUD AND DECEIT – INTENTIONAL MISREPRESENTATION OF FACTS;

16. FRAUD AND DECEIT – NEGLIGENT MISREPRESENTATION OF FACTS, CALIFORNIA CIVIL CODE § 1710(2);

17. BREACH OF CONTRACTUAL COVENANT OF GOOD FAITH AND FAIR DEALING;

18. DAMAGES FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;

19. DAMAGES FOR NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;

20. CONSPIRACY

21. ACTUAL AND STATUTORY DAMAGES, RESTITUTION, AND EQUITABLE AND DECLARATORY RELIEF FOR UNFAIR BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, ET SEQ.

22. SPECIFIC PERFORMANCE

23. DECLARATORY RELIEF

1
2 **JURY TRIAL DEMANDED**
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PRELIMINARY ALLEGATIONS

1.    Plaintiff, Marwan A. Harara, ("Harara") is an individual who operated a 76-branded motor fuel gas station located at 4280 Foothill Blvd., Oakland, California 94601("Station").

2.    Harara is informed and believes, and based thereon alleges, that defendant, ConocoPhillips Company ("Conoco"), which is a successor by merger to Tosco Marketing Company, is now, and at all times mentioned in this Complaint was, a corporation doing business in the State of California.

3.    Harara is informed and believes, and based thereon alleges that, Conoco is the third-largest integrated U.S. energy company.

4.    Harara is informed and believes, and based thereon alleges, that Conoco is, on a global basis, the sixth largest publicly held energy company based on hydrocarbon reserves and production, and it is the fifth-largest global refiner.

5.    Harara is informed and believes, and based thereon alleges, that Conoco is a major international integrated energy company with operations in forty-nine (49) countries. Harara is informed and believes and thereon alleges that Conoco is headquartered in Houston, Texas and has assets of Seventy-Five Billion Dollars ($75 billion), a refining capacity of two million and six hundred (2.6 million) barrels per day, net proved reserves of eight billion and seven hundred million (8.7 billion) barrels of oil equivalent, and daily production of one million and seven hundred (1.7 million) barrels of oil equivalent.

6.    Harara is informed and believes, and thereon alleges, that Dean Richard Masterton ("Masterton") is an individual who is residing at 4024 Marcas Court, Pinole, California 94564, is working for and representing Conoco, and, during the times alleged herein, acted on behalf

SECOND AMENDED COMPLAINT

4

CASE NO. C04-0515 BZ

of himself by misusing the rights and privileges granted to him as a Conoco employee and agent.

7.    Harara is not aware of the true names or capacities, whether individual, corporate, associate or otherwise, of defendants named herein as DOES 1 through 100, Inclusive, and therefore sues these defendants by such fictitious names. Harara shall amend this Second Amended Complaint to allege the true names and capacities of the fictitiously named defendants when ascertained. Harara is informed and believes, and on that basis alleges, that each of the fictitiously named defendants is in some manner intentionally or negligently responsible for the things herein alleged and the damages he suffered.

8.    Harara is informed and believes, and on that basis alleges, that each of the defendants, fictitious and real, are responsible in some manner for the occurrences herein alleged, and that Harara's damages as herein alleged were proximately caused by their conduct.

9.    Harara is informed and believes, and on that basis alleges, that at all times herein mentioned, each of the fictitiously named defendants was the agent, servant, employee, co-venture, and/or alter ego of each of the remaining fictitiously named defendants and were acting within the course, scope, purpose, consent, knowledge, and authorization of such agency, employment, and/or joint venture and each fictitiously named defendant has ratified and approved the acts of his, her, and/or its agents.

10.    Whenever in this Second Amended Complaint a reference is made to Conoco, Masterton, defendants, and/or each of them, such allegation shall be deemed to mean that acts of all defendants acting individually, jointly, and/or severally.

11.    Harara brings this action and files this Second Amended Complaint based on information and belief against Conoco, in both capacities, as an individual and as a private attorney general

action on behalf of the people of the State of California for its unabated unfair business practices as stated herein and applied to Harara, as applied to all similarly situated people in the State of California, and as applied to the general public of the State of California pursuant to California Business and Professions Code § 172000 et seq.

## JURISDICTION

12.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 as it presents a federal question and pursuant to 15 U.S.C. § 2085. The Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2085 explicitly confers jurisdiction on the United States District Courts for all civil actions brought by franchisees against franchisors, irrespective of the amount in controversy.

13.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1391(b) and 15 U.S.C. § 2085(a), which confer jurisdiction on the United States District Court over civil actions in the District where the defendants reside or where substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated.

14.    This Court has jurisdiction over the remaining causes of action of this Second Amended Complaint pursuant to 28 U.S.C. 1331, which causes of action are based on violations of federal law.

15.    This Court has jurisdiction over the remaining causes of action of this Second Amended Complaint pursuant to 28 U.S.C. § 1367, which causes of action are based on state and common law, are so related to the federal claims, and form part of the same case or controversy.

## VENUE

16.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) and 15 U.S.C. § 2805(a) where Harara, as the franchisee, is doing business within the boundaries of the Northern District and where substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated.

## COMMON ALLEGATIONS

17.    As a franchisee of a gasoline retail station, Harara is a member of the class intended to be protected by the PMPA. As a franchisor, Conoco is subject to the PMPA.

18.    On February 1, 1999, Harara bought the goodwill and leasehold of the Station.

19.    Tosco Marketing Company, a predecessor in interest to Conoco, accepted the assignment of the lease and franchise agreement ("Expired Agreement") by the former owner of the Station to Harara for occupancy of the Station and for supply with 76-branded fuel. The Expired Agreement was renewed once for a three-year period on January 16, 2001. (This renewed agreement will be referred to herein as the "Agreement"). The Agreement was set to expire on April 30, 2004. *See Agreement attached to the First Amended Complaint as Exhibit-1.*

20.    Harara is informed and believes, and based thereon alleges, that Masterton was the only representative of Conoco that Harara dealt with. At all times, Masterton communicated all issues relating to the Agreement to Harara and presented all agreements for signature to Harara. On February 1, 1999, Masterton was present to oversee the transfer of possession to Harara from the former leaseholder. At all times, Masterton presented himself as the only point of contact between Harara and Conoco and informed Harara that all contacts regarding any matter involving Conoco or the Station and property where the Station is located, had to go through

7

SECOND AMENDED COMPLAINT                                         CASE NO. C04-0515 BZ

him. At different times during the life of the Agreement, when Harara attempted to directly contact any Conoco's employee, agent, designated person, or department, other than Masterton or other than through Masterton, Harara was referred, by such Conoco's employee, agent, designated person, or department, to Masterton as the only point of contact.

21.    Harara is informed and believes, and based thereon alleges, that Masterton was informed of Harara's plans to make improvements within a few months of executing the Expired Agreement to the building and property where the Station is located.

22.    Harara is informed and believes, and based thereon alleges, that Masterton was consulted and asked about the proper procedure to obtain Conoco's approval.

23.    Harara is informed and believes, and based thereon alleges, that Masterton informed Harara that: (i) Masterton would perform all necessary internal procedures; (ii) Masterton's oversight was the only notice needed to perform the improvements to the station; and (iii) Masterton's approval was that of Conoco's.

24.    Harara is informed and believes, and based thereon alleges, that Masterton encouraged Harara to proceed with the improvement to the building and property to improve the business and increase gas sales.

25.    Harara is informed and believes, and based thereon alleges, that Masterton represented to Harara that Harara's expected long-term occupancy, as evidenced by the occupancy of Harara's predecessor at the Station, would pay for the cost of improvements.

26.    Harara is informed and believes, and based thereon alleges, that Masterton informed Harara that the former owner occupied the Station for at least 15 years before the former owner transferred possession and sold his goodwill to Harara.

27.    Harara is informed and believes, and based thereon alleges, that Masterton represented to Harara that the improvements would ensure Conoco's grant to Harara of enrollment in various incentive programs and special discounts and its providing of equipment-upgrade and other privileges, i.e., installation of credit card dispensers and periodic fresh painting and pavement.

28.    Thereafter, Harara embarked on a major improvement project that was financed by a loan for Fifty Thousand Dollars ($50,000.00) from the Oakland Business Development, a small-business lender doing business in Oakland, California, two lines of credit, and a loan from a personal friend.

29.    Under Harara's operation and after the improvements were made, the Station's sales of gas increased exponentially compared to the sales before Harara bought the Station until the economy slowed towards the end of the year 2001.

30.    With the decrease in the sales of gas, Masterton started a campaign of complaints about the management of the Station and about sales and use of non-branded and third-party-branded motor oil while repeating his threats to terminate the Agreement. His repeated threats created a hostility and tension with Harara, which hostility and tension ultimately resulted in Masterton's revocation of Harara's payment-by-credit for gasoline, Masterton's refusal to advance credit to Harara to pay for gasoline as called for under the Agreement. *See Exhibit-1 pp. 12-13.* Harara's direct requests for credit to Conoco's Credit Department were all referred to Masterton.

31.    With the cash-in-advance plan, Harara had to pay to wire and wire the cost of each gasoline load in advance of delivery. Receipt of each wire transfer had to be confirmed by Conoco's Accounting Department before it granted a release for each gas load. Such release from Conoco's Accounting Department was then communicated to Conoco's Dispatch Department to allow for the placement of the order of the gasoline load and its delivery.

9

SECOND AMENDED COMPLAINT                                      CASE NO. C04-0515 BZ

Considering that Conoco's Accounting Department assigned one person only to administer Harara's account at all times, Conoco's Dispatch Department requirement to place orders twenty-four (24) hours in advance, Conoco's Dispatch Department prerequisite of obtaining the release from Accounting prior to placing and accepting an order, and the difference in time-zones and lack of timely communication between Conoco's Accounting and Dispatch departments, Harara's ability to run the business was completely frustrated. Harara's purchase and obtaining of consistent and timely gas deliveries became impossible.

32.    Moreover, Conoco denied Harara access to all his financial records of gasoline cash sales, all credit sales, history of gasoline orders, other vital financial information, and other requests for payments and charges, which led to substantial difficulties in creating balanced financial sheets and complete accounting records for the Station.

33.    In addition to Conoco's denial of access to all written financial records, Conoco refused to pay substantial amounts of money for Harara's credit-card sales based on customers' disputing the sales or the fact that a credit card was stolen when was used at the time of sale at the pump.

34.    Harara's complaints to Conoco' Accounting Department and Conoco' Credit Department were referred to Masterton.

35.    Harara is informed and believes, and based thereon alleges, that after repeated attempts to work with Masterton to resolve concerns related to obtaining credit, late delivery of gasoline loads, inaccessibility to financial and sales records, and Conoco's refusal to pay for its customers' credit card sales that it had authorized, on or about the end of the year 2002, Harara asked for a face-to-face meeting with Masterton. Masterton informed Harara that the only way out for Harara to capture any value from the Station in return for his initial investment and

10

SECOND AMENDED COMPLAINT                                    CASE NO. C04-0515 BZ

goodwill was a "firesale" of the Station. Masterton said to Harara that a "firesale meant Harara's sale of the Station within days and not weeks." Masterton informed Harara that the alternative was his loss of the business and the Station.

36.    On or about April 3, 2003, Harara received a "Notice of Nonrenewal" of the Agreement.

37.    On or about April 3, 2003, Harara received, along with the Notice of Nonrenewal, a "Bona Fide Offer" to sell the Station ("First Offer").

38.    On or about April 22, 2003, Harara received a second "Notice of Nonrenewal" of the Agreement.

39.    On or about April 22, 2003, Harara received, along with the second Notice of Nonrenewal, a second "Bona Fide Offer" to sell the Station ("Second Offer"), which stated that the deadline to accept the second bona fide offer was June 9, 2003. *See Second Offer attached to the First Amended Complaint as Exhibit-2.*

40.    On or about May 12, 2003, Harara contacted Conoco's designated contact person at Conoco Real Estate Department, Dick Mathews ("Mathews"), and scheduled a face-to-face meeting at Mathews' office in San Ramon, California. Conoco's San Ramon offices were closed and Mathews did not show up for the meeting due to illness.

41.    On or about May 22, 2003, Harara met with Mathews at Mathews' office in Sacramento to discuss the Second Offer. Harara informed Mathews that based on Harara's initial contacts with lending institutions he was informed that the proposed selling price stated in the Second Offer was high and might not be approved in a loan application. Harara raised the fact that the Station was located in an area where the real property was relatively depressed and that such factor should be taken into account by Conoco when proposing the selling price. Mathews turned to his computer and informed Harara that he was re-evaluating the formula used to

generate the selling price proposed in the Second Offer. Mathews informed Harara that the said selling price proposed in the Second Offer seemed inflated but he had to further investigate it, obtain internal approval for any possible reduction, and would get back to Harara in a few days.

42.    Moreover, during Harara's meeting with Mathews on May 22, 2003, Harara informed Mathews that Harara had improved the real property and structure of the Station and that Harara expected not to pay Conoco for the work he had done and had paid for already. Mathews informed Harara that he would check with Masterton and Masterton's superiors to determine if additional reductions in the proposed selling price of the Second Offer due to Harara's improvements were warranted.

43.    On or about May 28, 2003, Harara called Mathews regarding the reduction in the selling price proposed in the Second Offer. Mathews stated to Harara over the phone that, after an investigation and internal review, the selling price proposed in the Second Offer was in fact inflated by Seventy-Five Thousand Dollars ($75,000.00) and that Conoco would credit such amount to Harara upon the consummation of the sale. Mathews informed Harara that he had not obtained a response regarding a credit for the improvements Harara had made to the Station and that he was still working on it.

44.    On or about June 6, 2003, based on the representation made by Mathews on May 28, 2003, Harara accepted the Second Offer and continued to work with Mathews to obtain a credit for the improvements made to the Station.

45.    On or about August 7, 2003, Harara met face-to-face with Mathews at Mathews' office in Sacramento for the second time to determine how Harara would obtain credit for the improvements made. Harara submitted an appraisal of the cost of the improvements made to the Station in order to deduct such cost from the selling price proposed in the Second Offer.

SECOND AMENDED COMPLAINT

CASE NO. C04-0515 BZ

Mathews informed Harara that Masterton or his superior, Douglas E, Bergman ("Bergman"), had to approve any credits for improvements.

46.    On or about December 15, 2003, Harara requested Bergman and Masterton in writing to approve credit or reimbursement for the improvement he made to the Station.

47.    On or about December 17, 2003, since Harara had not received a response from either Bergman or Masterton, Harara called Mathews to check on whether the credit for improvement was approved. Mathews informed Harara that his best option was to contact Bergman's superior, Don Kaplan; however, Mathews asked Harara to wait a few days before Harara "ruffled anyone's feathers" and till Mathews had a last chance to discuss the issue with Bergman.

48.    On or about December 17, 2003, Harara accepted an offer to sell Harara's goodwill, merchandise, equipment, and other property in the Station to Wurn Waa Phan ("Phan"), who was represented by Martin Hendren ("Hendren"), an agent of a business brokerage firm called Business Team. The offer was contingent on Harara's assignment, and Conoco's consent to Harara's assignment, of the Second Offer.

49.    On or about December 18, 2003, Bergman responded to Harara in writing. Bergman informed Harara that he can be reimbursed for depreciated actual dollar amounts spent based on invoices shown to Masterton.

50.    On or about December 22, 2003, Harara replied to Bergman and informed him that the appraisal of the cost of improvement that was already submitted to Mathews was the only measure that Harara considered accurate for determining the cost of improvements made to the Station.

51.    On or about January 16, 2004, Harara called Mathews and asked whether he was aware of the status of approval of his request for credit for improvements made to the Station. Mathews informed Harara that it was likely that it had been denied. Harara, then asked Mathews about how the inflated Seventy-Five Thousand Dollars ($75,000.00) that Mathews promised and communicated to Harara would be credited. Mathews denied that he promised to reduce the selling price, denied that he had any discussion about inaccurate application of special formula to compute the selling price, and denied that he had any discussion with Harara about the inflated selling price proposed in the Second Offer. Subsequently, Harara informed Mathews that he would be assigning the Second Offer to a third party for consideration and that Harara expected and arranged to sell to such third party, along with the assignment of the Second Offer, all property and goodwill Harara had in the Station; therefore, Harara requested Conoco's consent to his assignment of the Second Offer. Mathews asked Harara to make such request in writing.

52.    On or about January 16, 2004, Bergman responded to Harara's letter of December 22, 2003, by rejecting the appraisal and denying any credits for any of the improvements Harara made to the Station.

53.    On or about January 18, 2004, Harara requested, via an electronic message, facsimile, and mail to Mathews, Conoco's consent to Harara's assignment of the Second Offer to a known third party.

54.    On or about January 19, 2004, Mathews sent an electronic mail to Harara informing Harara that: (i) the intent of the PMPA was to allow the dealer an opportunity to purchase a site and not to market it; (ii) Mathews had received "a full priced offer on [the] site in hand from an outside buyer since 11/8/03 [and that he] intend[ed] to pursue this matter with the buyer;" and

14

(iii) Mathews had instructed Conoco's Real Estate Department to cancel the escrow on 1/16/2004, two days before Mathews asked Harara to reduce to a writing his phone request, as alleged in ¶ 51 herein, for Conoco's consent to assign the Second Offer.

55.    On or about January 20, 2004, Harara received a facsimile from the escrow holder, LandAmerica National Commercial Services ("LandAmerica"), requesting the parties' consent to cancel the escrow and release all claims arising from the Second Offer in consideration for refund of Harara's escrow deposit.

56.    On or about January 22, 2004, Harara instructed LandAmerica to maintain the escrow open until the parties resolved their differences.

57.    On or about January 26, 2004, Harara received a letter from Mathews stating that Harara refused to close escrow and that unless Harara did so within ten (10)-day therefrom, the Second Offer would be null and void and Conoco would retain Harara's escrow deposit.

58.    After requesting gas delivery by phone several times during the month of January and receiving none, on or about January 26, 2004, Harara requested in writing that Conoco perform under the Agreement and supply the Station with gasoline.

59.    On or about February 3, 2004, Harara responded to Mathews' letter of January 26, 2004, and rejected Mathews' misconstruction of events and Mathews' ten (10)-day's notice, which was to expire on February 6, 2004.

60.    On or about February 5, 2004, Harara received a phone call from Hendren informing him that Phan was able to conclude the purchase of the Station within days based on a Seven Hundred Thousand Dollars ($700,000.00) sum in cash and Five Hundred Thousand Dollars ($500,000.00) loan from his personal bank. Hendren informed Harara that Phan, after Harara had informed Hendren of Conoco's refusal to consent to assignment of the Second Offer and

cancellation of escrow, had contacted Mathews and that Mathews told him that the property of the Station was for sale for One Million and Forty-Five Thousand Dollars ($1,045,000.00), less Seventy-Five Thousand Dollars ($75,000.00) than what was offered to Harara in the Second Offer. Hendren informed Harara that Mathews was to consummate a deal that Mathews had initiated with a third party, other than Harara, in November of 2003. Hendren informed Harara that Mathews had stated that Harara's original offer was to be cancelled the following day, February 6, 2004.

61.     On February 6, 2004, Harara filed this action against Conoco and Masterton. On February ------ 2004, Harara personally served Conoco and Masterton with a copy of the Complaint.

62.     On or about February 11, 2004, Conoco issued a notice of default to Harara based on its allegation of Harara's failure to stock for sale two grades of motor fuel or gasoline.

63.     On or about February 23, 2004, Masterton personally delivered to Harara, or his employee, a notice of termination, eviction, and repossession of the Station effective March 1, 2004, at 12:00 PM for failure to stock for sale motor fuel, failure to pay due balances, and failure to comply with local laws and regulations ("Notification of Termination").

64.     On or about February 23, 2004, Harara sent by facsimile and certified mail a notice of surrender of the Station on March 1, 2004, at 9:00 AM, to Conoco based on its breach of the Agreement and failure to supply Harara with motor fuel pursuant to its terms.

65.     Harara is informed and believes, and based thereon alleges, that Conoco has defrauded him by intentionally and negligently misrepresenting facts about reducing and crediting part of the selling price proposed in the Second Offer to entice him to accept the Second Offer, thus

16

foreclosing any claim to the fact that the Second Offer was not a bona fide offer in compliance with the requirements of the PMPA.

66.    Harara is informed and believes, and based thereon alleges, that Conoco has defrauded him by intentionally and negligently misrepresenting facts about crediting or deducting the cost of improvements made to the Station by Harara from the selling price proposed in the Second Offer to entice him to accept the Second Offer, thus foreclosing any claim to the fact that the Second Offer was not a bona fide offer in compliance with the requirements of the PMPA.

67.    Harara is informed and believes, and based thereon alleges, that Conoco has defrauded him by intentionally offering to sell the property of the Station, while an escrow to sell the same to Harara was in effect, to a third party for a price that was less than the selling price proposed in the Second Offer.

68.    Harara is informed and believes, and based thereon alleges, that Conoco had known that the selling price proposed in the Second Offer was inflated and above the fair market value. therefore, such Second Offer was not a bona fide offer pursuant to the requirements of the PMPA.

69.    Harara is informed ad believes, and based thereon alleges, that the Second Offer was fraudulent.

70.    Harara is informed ad believes, and based thereon alleges, that the Second Offer was not bona fide pursuant to the provisions of the PMPA.

71.    Harara is informed ad believes, and based thereon alleges, that the Second Offer was not bona fide and was not made in good faith and in the normal course of business in that Conoco recognized that it was inflated and exceeded the fair market value of the land, improvements, and equipment located therein.

72.    Harara is informed and believes, and based thereon alleges, that Conoco's offer to sell the Station to a third party for a price that is less than the selling price proposed in the Second Offer violated the provisions of the PMPA in that Harara was not giving a first right of refusal.

73.    Harara is informed and believes, and based thereon alleges, that Conoco's offer to sell the Station to a third party for a price that is less than the selling price proposed in the Second Offer, while an escrow for the sale of the Station pursuant to the terms of the Second Offer was pending, violated the provisions of the PMPA.

74.    Conoco's refusal to sell the Station to Harara at the reduced the price that was offered by Conoco to other third parties and its refusal to credit him for the improvements he made to the Station deprived Harara of his business, entire investment and goodwill, and denied him the ability to pay off the debt he accumulated to improve the Station; all of which is contrary to the purpose and intent of the PMPA.

75.    Harara is informed and believes, and based thereon alleges, that pursuant to Section 2802(b)(3)(D)(iii)(I) of the PMPA, Conoco is obligated, upon furnishing notification of nonrenewal to Harara, to make a bona fide offer that is within the fair market value and is not over and above other offers made concurrently by Conoco to third parties for the same property while escrow for the sale of such property to Harara is pending. Harara is informed and believes, and based thereon alleges, that Conoco failed to convey such bona fide offer to Harara.

76.    Harara is informed and believes, and based thereon alleges, that the defendants, and each of them, proceeded with a course of conduct that caused, and will continue to cause, Harara substantial hardship and irreparable harm.

18

77.     Due to Conoco's and each of the defendants' actions, Harara and his family lost their primary means of support, his franchise, and his substantial investment therein.

## FIRST CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(VIOLATIONS OF THE PETROLEUM

MARKETING PRACTICES ACT, 15 U.S.C. § 2801, ET SEQ.)

78.     Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

79.     Harara is informed and believes, and based thereon alleges, that Conoco's decision to nonrenew Harara's franchise and the Agreement was not made in good faith or in the normal course of business thus damaging and injuring Harara's rights and interests.

80.     Pursuant to Section 2802(b)(3)(D) of the PMPA, Conoco was obligated, at the time when it served its Notice of Nonrenewal of the Agreement, to make a bona fide offer of all of its interest in the premises of the Station, which offer must have included the equipment and improvements located at the property of Station at fair market value. Greco v. Mobil Corp., 597 F. Supp. 468; Roberts v. Amoco Oil Co., 740 F.2d 602 (8th Cir. 1984); Ellis v. Mobil Oil Co., 969 F.2d 784 (9th Cir. 1992).

81.     Harara is informed and believes, and based thereon alleges, that Conoco failed to make a bona fide offer of its entire interest in the premises of the Station by requiring, among other things, as non-negotiable conditions of the Second Offer that Harara purchase the property of the Station at an inflated price that is in excess of fair market value and is above the price Conoco offered to other third parties.

19

82.   Harara is informed and believes, and based thereon alleges, that Conoco failed to make a bona fide offer of its entire interest in the premises of the Station by offering Harara a selling price in the Second Offer that was in excess of one or more selling prices Conoco offered concurrently to other third parties during the pendency of escrow between Harara and Conoco to purchase the same property.

83.   Harara is informed and believes, and based thereon alleges, that Conoco failed to make a bona fide offer of its entire interest in the premises of the Station by offering Harara the Second Offer and opening an escrow with Harara while intending not to perform.

84.   Harara is informed and believes, and based thereon alleges, that Conoco failed to make a bona fide offer of its entire interest in the premises of the Station by offering Harara the Second Offer and opening an escrow with Harara while (i) offering the same property for sale and to others for a lesser selling price, and (ii) accepting, entertaining, inviting, or entertaining other offers for the sale of the same property for a lesser selling price.

85.   Harara is informed and believes, and based thereon alleges, that Conoco failed to make a bona fide offer of its entire interest in the premises of the Station by offering Harara the Second Offer and opening an escrow with Harara while Conoco continued to market the same property of the Station, continued to engage third parties' offers to purchase, and continued to offer the same property of the Station to third parties at a price that was less than the selling price proposed by Conoco in the Second Offer.

86.   Harara is informed and believes, and based thereon alleges, that Conoco's offer to sell the Station to a third party for a price that is less than the selling price proposed in the Second Offer violated the provisions of the PMPA in that Harara was not giving a first right of refusal.

SECOND AMENDED COMPLAINT                                    CASE NO. C04-0515 BZ

87.    Pursuant to Section 2802(b)(3)(D) of the PMPA, before deciding not to renew Harara's franchise and the Agreement, Conoco was obligated to reach a prerequisite determination in good faith and in the normal course of business to sell the premises of the Station.

88.    Harara is informed and believes, and based thereon alleges, that Conoco's decision to nonrenew Harara's franchise and the Agreement was not made in good faith and was not made in the normal course of business thus damaging and injuring Harara's rights and interests.

89.    Harara is informed and believes, and thereon alleges, that Conoco violated Section 2802(b)(3)(D) of the PMPA because its decision to sell the premises of the Station was not made in good faith and in the normal course of business.

90.    Harara is informed and believes, and based thereon alleges, that Conoco's Second Offer to Harara was intended as a sham and was made in fraud and that Conoco had never intended to perform in accordance with its terms.

91.    Harara is informed and believes, and thereon alleges, that Conoco violated Section 2804(c)(3)(A) of the PMPA by nonrenewing the Agreement and failing to give proper notice of its intention nonrenew in that it failed to adequately set forth the true grounds for termination and nonrenewal.

92.    Harara is informed and believes, and thereon alleges, that Conoco intended to eliminate him individually as a franchisee and a retailer of gasoline and that its decision to terminate and nonrenew the Agreement was not made in good faith and in the normal course of business.

93.    Harara is informed and believes, and thereon alleges, that Conoco's actions surrounding its First Offer, its Second Offer, its inflated selling price proposed to Harara in the Second Offer, its continued marketing of the property of the Station while an escrow is pending for sale of the same, its continued discussions with third parties about sale of the property of the Station

21

to such third parties while the escrow is pending, its offer to sell the same property to third parties for a price that is lesser than the price offered to Harara in the Second Offer, its refusal to credit Harara for the cost of improvement he made to the same property, and its refusal to consent to Harara's assignment of the Second Offer to a known party raise serious questions about the legality of Conoco's actions under the PMPA and constitute justifiable grounds for litigation..

94.    Harara is, therefore, entitled to a permanent injunction restraining and enjoining Conoco, its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries from entering into, offering, or accepting any offers or purchase and sale agreements to sell the property of the Station to any third party, from terminating or nonrenewing the Agreement and Harara's franchise and lease agreement until Conoco comes forward with and offers Harara a bona fide offer to sell the property of the Station so and let Harara exercise all of his rights in accordance with the terms of such bona fide offer, and from forcing Harara to surrender the Station, his improvements made therein at his cost, and other rights and interests he has there in accordance with the PMPA, federal law, and state law.

95.    Harara has suffered and will continue to suffer damages, in amounts to be proven at trial, as a proximate result of Conoco's violations of the PMPA as set forth herein.

96.    Harara is entitled to the above-requested relief under § 2801 et seq., of the PMPA and further requests an order by the Court compelling Conoco to make a bona fide offer of its entire interest in the Station and its premises to Harara.

97.    Harara is entitled to and requests exemplary damages, in an amount sufficient to deter further violations of the PMPA, as a result of Conoco's willful and reckless disregard of the requirements of the PMPA and Harara's rights and interests.

98.    Harara is entitled to and requests attorneys' fees, experts' fees, and all other costs permitted under the PMPA in connection with bringing this action pursuant to § 2805(d) of the PMPA.

## SECOND CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(VIOLATIONS OF THE PETROLEUM

MARKETING PRACTICES ACT, 15 U.S.C. § 2801, ET SEQ.)

99.    Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

100.    Harara is a party to the Second Offer with Conoco. A true and correct copy of the Agreement is attached to the First Amended Complaint and incorporated herein by reference as *Exhibit-2.*

101.    On or about May 28, 2003, Mathews informed Harara that the selling price proposed in the Second Offer was in fact inflated by Seventy-Five Thousand Dollars ($75,000.00) and that Conoco would credit such amount to Harara.

102.    On or about June 6, 2003, based on the representation made by Mathews as alleged herein, Harara accepted the Second Offer and continued to work with Mathews to obtain a credit for the improvements made to the Station.

103.    Harara considered as conditions to his acceptance of the Second Offer Conoco's representations made by its agent Mathews that: (i) the selling price proposed in the Second

23

Offer was to be reduced by Seventy-Five Thousand Dollars ($75,000.00) and (ii) the value of the improvements was to be reimbursed.

104.  Harara is informed and believes, and based thereon alleges, that Conoco's representations were false and were made in fraud to secure Harara's acceptance of the Second Offer.

105.  Harara is informed and believes, and based thereon alleges, that Conoco's representations were false and were made in fraud to secure Harara's acceptance that the Second Offer was a bona fide offer.

106.  Harara is informed and believes, and based thereon alleges, that Conoco failed to make a bona fide offer of its entire interest in the premises of the Station by offering Harara a selling price in the Second Offer that was in excess of one or more selling prices Conoco offered concurrently to other third parties during the pendency of escrow between Harara and Conoco to purchase the same property.

107.  Harara is informed and believes, and based thereon alleges, that on May 22, 2003, and August 7, 2003, Mathews represented to Harara that the Second Offer was assignable and that Conoco's consent to such assignability was common and had been done by Conoco repeatedly in the past.

108.  Harara reasonably relied on Conoco's representations that the Second Offer would be assignable by him and that Conoco would consent to such assignability upon his request as conditions precedent to his acceptance of the Second Offer.

109.  Harara is informed and believes, and based thereon alleges, that Conoco's representations were false and were made in fraud to secure Harara's acceptance of the Second Offer.

110. Harara is informed and believes, and based thereon alleges, that Conoco's representations were false and were made in fraud to secure Harara's acceptance that the Second Offer was a bona fide offer.

111. Harara is informed and believes, and based thereon alleges, that Conoco's Second Offer to Harara was intended as a sham and was made in fraud and that Conoco had never intended to perform in accordance with its terms.

112. Harara is, therefore, entitled to a permanent injunction restraining and enjoining Conoco, its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries from entering into, offering, or accepting any offers or purchase and sale agreements to sell the property of the Station to any third party, from terminating or nonrenewing the Agreement and Harara's franchise and lease agreement until Conoco comes forward with and offers Harara a bona fide offer to sell the property of the Station so and let Harara exercise all of his rights in accordance with the terms of such bona fide offer, and from forcing Harara to surrender the Station, his improvements made therein at his cost, and other rights and interests he has there in accordance with the PMPA, federal law, and state law.

113. Harara has suffered and will continue to suffer damages, in amounts to be proven at trial, as a proximate result of Conoco's violations of the PMPA as set forth herein.

114. Harara is entitled to the above-requested relief under § 2801 et seq., of the PMPA and further requests an order by the Court compelling Conoco to make a bona fide offer of its entire interest in the Station and its premises to Harara.

115.  Harara is entitled to and requests exemplary damages, in an amount sufficient to deter further violations of the PMPA, as a result of Conoco's willful and reckless disregard of the requirements of the PMPA and Harara's rights and interests.

116.  Harara is entitled to and requests attorneys' fees, experts' fees, and all other costs permitted under the PMPA in connection with bringing this action pursuant to § 2805(d) of the PMPA.

### THIRD CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(CONSTRUCTIVE TERMINATION BY FAILING TO DELIVER MOTOR FUEL AND FAILING TO COMPLY WITH CREDIT TERMS OF PAYMENT AND CREDIT CARD SALES TERMS UNDER THE AGREEMENT IN VIOLATION OF THE PETROLEUM MARKETING PRACTICES ACT, 15 U.S.C. § 2801, ET SEQ.)

117.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

118.  Harara entered into the Agreement with Conoco for his leasing and occupancy of the Station and for Conoco's supply with 76-branded fuel on January 16, 2001. The Agreement was set to expire on April 30, 2004.

119.  Harara has duly performed all conditions, covenants, and promises required to be performed by him under the Agreement in accordance with its terms and conditions, except for those acts that have been prevented, delayed, or excused by acts or omissions of defendants.

120.  Harara is informed and believes, and thereon alleges, that during the early part of the year 2002, and continuously until March 1, 2004, Conoco terminated Harara's right to purchase

26

motor fuel by credit and violated other terms of payment and credit requirements terms as provided for under Article 16 (Terms of Payment/Credit card Requirements) of the Agreement.

121.  Harara is informed and believes, and thereon alleges, that during the effective term of the Expired Agreement and the effective term of the Agreement and continuously until March 1, 2004, Conoco failed to pay Harara for certain retail credit sales that were made by Harara by accepting Union 76 retail credit card system at the Station and were authorized and performed in accordance with the terms of TOSCO's Service Station Credit Card Guide ("Guide") to customers presenting a valid Union 76 credit card or a credit card issued by a company listed in the Guide. Such Conoco's failure to pay is in violation of the Credit Card Sales provisions under Article 17 (Credit Card Sales) of the Agreement.

122.  Harara is informed and believes, and thereon alleges, that during the early part of the year 2002, and continuously until March 1, 2004, Conoco terminated Harara's right to obtain his financial records showing and itemizing all retail credit sales, all Conoco's payments to Harara for such credit card sales, all Conoco's withholding of payments or refusal of payments for such credit card sales, all other sales, fuel deliveries and orders, and other electronically tabularized purchases, sales, and orders, thus preventing Harara from accurately balancing his financial books and records and making it impossible for him to effectively manage and profitably operate the Station.

123.  Harara is informed and believes, and thereon alleges, that during the early part of the year 2002, and continuously until March 1, 2004, Conoco terminated Harara's right to obtain electronic access to his account over the Internet, thus preventing Harara from accurately balancing his financial books and records and making it impossible for him to effectively manage and profitably operate the Station.

27

124.  Harara is informed and believes, and thereon alleges, that during the early part of the year 2004, and continuously until March 1, 2004, Conoco terminated Harara's right to purchase motor fuel by failing to fulfill any phone or written orders for fuel delivery to the Station and failing to communicate with Harara to accept placement of fuel orders and deliveries to the Station in violation of the terms of Article 12 (Delivery) of the Agreement.

125.  Harara is informed and believes, and thereon alleges, that all of the aforementioned breaches of covenants and obligations and lack of performance by Conoco amounted to a termination of Harara's rights and interests under the Agreement, which termination was in violation of the PMPA requirements.

126.  Harara has suffered and will continue to suffer damages, in amounts to be proven at trial, as a proximate result of Conoco's violations of the PMPA as set forth herein.

127.  Harara is entitled to all available relief under § 2801 et seq., of the PMPA.

128.  Harara is entitled to a permanent injunction restraining and enjoining Conoco, its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries from terminating the Agreement.

129.  Harara is entitled to and requests exemplary damages, in an amount sufficient to deter further violations of the PMPA, as a result of Conoco's willful and reckless disregard of the requirements of the PMPA and Harara's rights and interests.

130.  Harara is entitled to and requests attorneys' fees, experts' fees, and all other costs permitted under the PMPA in connection with bringing this action pursuant to § 2805(d) of the PMPA.

## FOURTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

28

(RETALIATORY EVICTION IN VIOLATION OF

THE PETROLEUM MARKETING PRACTICES ACT, 15 U.S.C. § 2801, ET SEQ.)

131.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

132.  Harara and Conoco are parties to the Agreement, which serves both as: (i) a lease for Harara's occupancy of the Station, and (ii) a supply agreement for Conoco's supply and delivery of 76-branded fuel.

133.  On February 6, 2004, Harara filed this action against Conoco and Masterton. On February ------ 2004, Harara personally served Conoco and Masterton with a copy of the Complaint.

134.  Harara's Complaint alleged seven (7) causes of actions for Conoco's violations of the PMPA, for Conoco's violations of California Business and Professions Code Section 21140 et seq., and Section 17200 et seq., for breach of contract, and for specific performance and declaratory relief.

135.  In response to Harara's Complaint, Conoco issued a notice of default to Harara based on its allegation of Harara's failure to stock for sale two grades of motor fuel or gasoline.

136.  In response to Harara's Complaint, on or about February 23, 2004, Conoco issued its Notice of Termination of the Agreement effective March 1, 2004, at 12:00 PM.

137.  Harara has duly performed all conditions, covenants, and promises required to be performed by him under the Agreement in accordance with its terms and conditions, except for those acts that have been prevented, delayed, or excused by acts or omissions of defendants.

138. Harara is informed and believes, and based thereon alleges, that Conoco's decision to terminate Harara's franchise and the Agreement was in retaliation for his filing of the Complaint and this case and for seeking Court relief as alleged therein.

139.    Harara is informed and believes, and thereon alleges, that Conoco's retaliatory eviction as alleged herein was in violation of the provisions of the PMPA.

140. As a proximate result of Conoco's retaliatory termination, Harara had to abandon his business and surrender the premises of the Station as required by the Notice of Termination.

141. Harara has suffered and will continue to suffer damages, in amounts to be proven at trial as a proximate result of Conoco's violations of the PMPA as set forth herein.

142. Harara is entitled to all available relief under § 2801 et seq., of the PMPA.

143. Harara is entitled to a permanent injunction obligating Conoco, its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries to return possession of the Station to Harara.

144. Harara is entitled to and requests exemplary damages, in an amount sufficient to deter further violations of the PMPA, as a result of Conoco's willful and reckless disregard of the requirements of the PMPA and Harara's rights and interests.

145. Harara is entitled to and requests attorneys' fees, experts' fees, and all other costs permitted under the PMPA in connection with bringing this action pursuant to § 2805(d) of the PMPA.

**FIFTH CLAIM FOR RELIEF**

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(ACTUAL TERMINATION IN VIOLATION OF

THE PETROLEUM MARKETING PRACTICES ACT, 15 U.S.C. § 2801, ET SEQ.)

30

146.   Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

147.   Harara entered into the Agreement with Conoco for his leasing and occupancy of the Station and for Conoco's supply with 76-branded fuel on January 16, 2001. The Agreement was set to expire on April 30, 2004.

148.   Harara has duly performed all conditions, covenants, and promises required to be performed by him under the Agreement in accordance with its terms and conditions, except for those acts that have been prevented, delayed, or excused by acts or omissions of defendants.

149.   On or about February 23, 2004, Masterton personally delivered to Harara, or his employee, Notification of Termination informing Harara of the termination of the Agreement and Conoco's intent to evict him and repossess the Station effective March 1, 2004, at 12:00 PM for failure to stock for sale motor fuel, failure to pay due balances, and failure to comply with local laws and regulations.

150.   Harara is informed and believes, and thereon alleges, that Conoco's refusals to supply and deliver Harara with motor fuel in response to his repeated phone orders and written requests for motor fuel deliveries in or around January 2004, were premeditated and precalculated as a pretext to declare Harara's breach for failure to stock and sell motor fuel as required under the Agreement.

151.   Harara is informed and believes, and thereon alleges, that Conoco's other grounds for termination as stated in the Notice of Termination were not authorized as sufficient and justifiable basis for termination of the Agreement under the PMPA.

152.   Harara is informed and believes, and thereon alleges, that Conoco was generally prohibited from issuing the Notice of Termination pursuant to the provisions of the PMPA

31

SECOND AMENDED COMPLAINT

CASE NO. C04-0515 BZ

because none of the grounds for termination as specified under §2802(b)(2) of the PMPA were found.

153. Harara is informed and believes, and thereon alleges, that Conoco issued its Notice of Termination in violation of the provisions of the PMPA.

154. As a proximate result of Conoco's termination, Harara had to abandon his business and surrender the premises of the Station as required by the Notice of Termination.

155. Harara has suffered and will continue to suffer damages, in amounts to be proven at trial, as a proximate result of Conoco's violations of the PMPA as set forth herein.

156. Harara is entitled to all available relief under § 2801 et seq., of the PMPA.

157. Harara is entitled to a permanent injunction restraining and enjoining Conoco, its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries from terminating the Agreement and obligating each and all of them to return possession of the Station to Harara.

158. Harara is entitled to and requests exemplary damages, in an amount sufficient to deter further violations of the PMPA, as a result of Conoco's willful and reckless disregard of the requirements of the PMPA and Harara's rights and interests.

159. Harara is entitled to and requests attorneys' fees, experts' fees, and all other costs permitted under the PMPA in connection with bringing this action pursuant to § 2805(d) of the PMPA.

**SIXTH CLAIM FOR RELIEF**

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(ACTUAL AND STATUTORY DAMAGES AND EQUITABLE AND

DECLARATORY RELIEF FOR VIOLATIONS OF THE EQUAL CREDIT

32

OPPORTUNITY ACT OF THE CONSUMER CREDIT PROTECTION ACT, 15

U.S.C. § 1691, ET SEQ., AND 12 CFR § 202 ET SEQ.)

160.   Harara re-alleges and incorporates into this cause of action each and every allegation

contained in this Second Amended Complaint as if the same were set out at length herein.

161.   Harara is informed and believes, and based thereon alleges, that Conoco is a "creditor"

within the meaning of the Equal Credit Opportunity Act, 15 USC § 1691 et seq. ("ECOA").

162.   Harara is informed and believes, and based thereon alleges, that Harara is a "applicant"

within the meaning of the Equal Credit Opportunity Act, 15 USC § 1691 et seq. ("ECOA").

163.   The ECOA, 15 USC § 1691(d)(2), provides in relevant parts as follows:

> Each applicant against whom adverse action is taken shall be entitled to a
> statement of reasons for such action from the creditor. A creditor satisfies
> this obligation by--
>   (A) providing statements of reasons in writing as a matter of course to
> applicants against whom adverse action is taken; or
>   (B) giving written notification of adverse action which discloses (i) the
> applicant's right to a statement of reasons within thirty days after receipt by
> the creditor of a request made within sixty days after such notification, and
> (ii) the identity of the person or office from which such statement may be
> obtained. Such statement may be given orally if the written notification
> advises the applicant of his right to have the statement of reasons confirmed
> in·writing on written request.

164.   Harara is informed and believes, and based thereon alleges, that at the time of his request

for a franchise from Conoco, he applied, by completing and signing a written application, for

an extension of credit from Conoco based on Harara's personal financial record, personal

income tax returns, personal credit history and reports, and personal credit worthiness.

165.   Harara is informed and believes, and based thereon alleges, that subsequent to submitting

his written application for credit from Conoco, Harara obtained credit and continued to use it

until the year 2002.

SECOND AMENDED COMPLAINT                                          CASE NO. C04-0515 BZ

166. Harara is informed and believes, and based thereon alleges, that in the year 2002, an adverse action within the meaning of the ECOA was taken against him by Conoco.

167. Harara is informed and believes, and based thereon alleges, that Conoco violated the ECOA by not providing a statement of reasons as required by the ECOA.

168. Harara is informed and believes, and based thereon alleges, that in the year 2002, an action was taken by Conoco against Harara requiring a notification within the meaning and provisions of 12 CFR §202.9.

169. Harara is informed and believes, and based thereon alleges, that Conoco failed to provide Harara with such notification as required by the provisions of 12 CFR §202.9.

170. Harara is informed and believes, and based thereon alleges, that Conoco violated the provisions of 12 CFR §202.9 by failing to provide Harara with such notification.

171. Harara is informed and believes, and based thereon alleges, that Conoco has unlawfully, repeatedly, and knowingly violated the rights afforded him under the Consumer Credit Protection Act, 15 USC § 1691 et seq., and 12 CFR § 202 et seq., as stated herein by declining his repeated requests for credit and failing to provide the statutory notification.

172. As a direct result of Conoco's violation of the Consumer Credit Protection Act, 15 USC § 1691 et seq., and 12 CFR § 202 et seq., Harara has been, and will continue to be, injured and damaged in an amount to be proven at trial.

173. In accordance with provisions the Consumer Credit Protection Act, 15 USC § 1691 et seq., and 12 CFR § 202 et seq., Harara is entitled to and hereby requests, in addition to his actual damages, to recover punitive damages as prescribed under the Consumer Credit Protection Act, 15 USC § 1691 et seq., and 12 CFR § 202 et seq.,

SECOND AMENDED COMPLAINT

CASE NO. C04-0515 BZ

174.  In accordance with provisions the Consumer Credit Protection Act, 15 USC § 1691 et seq., and 12 CFR § 202 et seq., Harara is entitled and hereby requests, in addition to his actual and punitive damages, to recover costs of the action and attorney's fees.

175.  In accordance with provisions the Consumer Credit Protection Act, 15 USC § 1691 et seq., and 12 CFR § 202 et seq., Harara is entitled to and hereby requests, in addition to all remedies sought above, a declaratory relief against Conoco as is necessary to enforce the requirements imposed by 15 USC § 1691 et seq., and 12 CFR § 202 et seq., in favor of Harara and all similarly aggrieved applicants.

**EIGHTH CLAIM FOR RELIEF**

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

ACTUAL AND STATUTORY DAMAGES AND EQUITABLE AND

DECLARATORY RELIEF FOR VIOLATIONS OF THE EQUAL CREDIT

OPPORTUNITY ACT OF THE CONSUMER CREDIT PROTECTION ACT, 15

U.S.C. § 1691, ET SEQ.)

176.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

177.  Harara is informed and believes, and based thereon alleges, that Conoco is a "creditor" within the meaning of the Consumer Credit Protection Act, 15 USC § 1691 et seq.

178.  Harara is informed and believes, and based thereon alleges, that Harara is a "applicant" within the meaning of the Consumer Credit Protection Act, 15 USC § 1691 et seq.

179.  The Consumer Credit Protection Act, 15 USC § 1691 et seq., provides in relevant parts as follows:

SECOND AMENDED COMPLAINT                                              CASE NO. C04-0515 BZ

(a) Activities constituting discrimination: It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction. (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract); (2) because all or part of the applicant's income derives from any public assistance program; or (3) because the applicant has in good faith exercised any right under this chapter.

180.  Harara is informed and believes, and based thereon alleges, that at the time of his request for a franchise from Conoco, he applied, by completing and signing a written application, for an extension of credit from Conoco and provided to Conoco information relating to Harara's personal financial record, personal income tax returns, personal credit history and reports, and personal credit worthiness.

181.  Harara is informed and believes, and based thereon alleges, that subsequent to submitting his written application for credit from Conoco, Harara obtained credit and continued to use it until the year 2002.

182.  Harara is informed and believes, and based thereon alleges, that in the year 2002, an adverse action within the meaning of the ECOA was taken against him by Conoco that was not based on Harara's lack of credit qualification or an adverse change to his personal credit history or worthiness.

183.  Harara is informed and believes, and based thereon alleges, that such Conoco's adverse action was not uniformly applied against all persons in Harara's position who were of different race or religion.

184.  Harara is informed and believes, and based thereon alleges, that such Conoco's adverse action was not based on Harara's lack of credit qualification or an adverse change to his

36

SECOND AMENDED COMPLAINT                                                                CASE NO. C04-0515 BZ

personal credit history or worthiness but based on other discriminatory grounds that are impermissible within the provisions of the ECOA.

185.  Harara is informed and believes, and based thereon alleges, that Conoco unlawfully discriminated against Harara with respect to his maintenance of credit from Conoco by terminating his ongoing credit based on discriminatory grounds that are impermissible within the provisions of the ECOA.

186.  Harara is informed and believes, and based thereon alleges, that Conoco has unlawfully, repeatedly, and knowingly violated the rights afforded him under the Consumer Credit Protection Act, 15 USC § 1691 et seq., by terminating Harara's ongoing credit and/or by acting unlawfully as stated herein.

187.  As a direct result of Conoco's violation of the Consumer Credit Protection Act, 15 USC § 1691 et seq., Harara has been, and will continue to be, injured and damaged in an amount to be proven at trial.

188.  In accordance with provisions the Consumer Credit Protection Act, 15 USC § 1691 et seq., Harara is entitled to and hereby requests, in addition to his actual damages, to recover punitive damages as prescribed under the Consumer Credit Protection Act, 15 USC § 1691 et seq.

189.  In accordance with provisions the Consumer Credit Protection Act, 15 USC § 1691 et seq., Harara is entitled and hereby requests, in addition to his actual and punitive damages, to recover costs of the action and attorney's fees.

190.  In accordance with provisions the Consumer Credit Protection Act, 15 USC § 1691 et seq., Harara is entitled to and hereby requests, in addition to all remedies sought above, a

37

declaratory relief against Conoco as is necessary to enforce the requirements imposed by 15 USC § 1691 et seq., in favor of Harara and all similarly aggrieved applicants.

### EIGHTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(ACTUAL AND STATUTORY DAMAGES FOR VIOLATIONS OF THE HOLDEN CREDIT

DENIAL DISCLOSURE ACT OF 1976 – CALIFORNIA CIVIL CODE § 1787.2)

191.   Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

192.   Harara is informed and believes, and based thereon alleges, that Conoco is a "creditor" within the meaning of the California civil code § 1787.2.

193.   Harara is informed and believes, and based thereon alleges, that Harara is a "applicant" within the meaning of the California civil code § 1787.2.

194.   Harara is informed and believes, and based thereon alleges, that at the time of his request for a franchise from Conoco, he applied, by completing and signing a written application, for an extension of credit from Conoco in compliance with Conoco's requirements for its extension of credit and provided it with information relating to Harara's personal financial record, personal income tax returns, personal credit history and reports, and personal credit worthiness.

195.   Harara is informed and believes, and based thereon alleges, that subsequent to submitting his written application for credit from Conoco, Harara obtained credit and continued to use it until the year 2002.

196.   Harara is informed and believes, and based thereon alleges, that in the year 2002, Conoco terminated Harara's extended credit. Such termination was not based on Harara's lack of credit qualification or an adverse change to his personal credit history or worthiness.

38

197.  In violation of Civil Code Section 1787.2(b), such termination was not accompanied either by a statement in writing of the reasons for the termination or by a written disclosure of Harara's right to a statement of the reasons for the credit termination and denial and the identity and address of the person from whom or office from which the statement could be obtained.

198.  Harara is informed and believes, and based thereon alleges, that Conoco has unlawfully, repeatedly, and knowingly violated the rights afforded him under the California Civil Code Section 1787.2 by terminating Harara's ongoing credit, by denying his applications for renewed credit, and/or by acting unlawfully as stated herein.

199.  As a direct result of Conoco's violation of the California Civil Code § 1787.2, Harara has been, and will continue to be, injured and damaged in an amount to be proven at trial.

200.  In accordance with provisions the California Civil Code § 1787.3, Harara is entitled to and hereby requests, in addition to his actual damages, to recover punitive damages as prescribed under the California Civil Code § 1787.3.

201.  In accordance with provisions the California Civil Code § 1787.3, Harara is entitled to and hereby requests, in addition to his actual and punitive damages, to recover costs of the action and attorney's fees as prescribed under the California Civil Code § 1787.3.

## NINTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(ACTUAL AND STATUTORY DAMAGES FOR VIOLATIONS OF

CALIFORNIA BUSINESS AND PROFESSIONS CODE §21140, ET SEQ.)

202.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

SECOND AMENDED COMPLAINT                                                    CASE NO. C04-0515 BZ

203. Harara is informed and believes, and based thereon alleges, that Conoco is a "franchisor" within the meaning of California Business and Professions Code § 21140.

204. Harara is informed and believes, and based thereon alleges, that Harara is a "franchisee" within the meaning of California Business and Professions Code § 21140.

205. Harara is informed and believes, and based thereon alleges, that Harara's Station and petroleum marketing franchise is a "leased marketing premises" within the meaning of California Business and Professions Code § 21140.

206. Harara is informed and believes, and based thereon alleges, that California Business and Professions Code § 21140, et seq., prohibits a franchisor, such as Conoco, from withholding consent to sale, transfer, or assignment of a franchise, such as Harara's when such assignment is not made or intended to be made in contravention of a nonrenewal or termination that was notified pursuant to the provisions of the PMPA.

207. Harara is informed and believes, and based thereon alleges, that he intended sell his business (excluding any interest in the franchise or the Agreement) to Phan on or about December 17, 2003.

208. Harara is informed and believes, and based thereon alleges, that he intended assign the Second Offer to purchase the property of the Station pursuant to its terms to Phan on or about December 17, 2003.

209. Harara is informed and believes, and based thereon alleges, that along the above-referenced sale of the business and assignment of the Second Offer to purchased the property, Harara had to transfer his remaining interest in the unexpired portion of the nonrenewed franchise that extended from approximately December 17, 2003, to April 30, 2004.

210.  Harara is informed and believes, and based thereon alleges, that such transfer of Harara's remaining interest in the unexpired portion of the nonrenewed franchise that was not to exceed four months and was necessary in order to ensure an expeditious transfer of Harara's running business and Phan's uninterrupted possession of a continuing operation.

211.  Harara is informed and believes, and based thereon alleges, that Conoco has violated California Business and Professions Code § 21140, et seq., in that it has intentionally interfered with the sale, transfer, and assignment of Harara's remaining interest in the unexpired portion of the nonrenewed franchise.

212.  Harara is informed and believes, and based thereon alleges, that Conoco refusal to consent to Harara's assignment of the Second Offer has violated California Business and Professions Code § 21140, et seq., in that it intentionally interfered with the sale, transfer, and assignment of Harara's remaining interest in the unexpired portion of the nonrenewed franchise.

213.  Harara is informed and believes, and based thereon alleges, that by obligating Conoco to consent to the transfer of Harara's remaining interest in the unexpired portion of the nonrenewed franchise that was not exceed four months through its issuance of a temporary franchise or trial franchise or through any other acceptable measure or procedure to Conoco, California Business and Professions Code § 21140, et seq., did not impose upon Conoco limitations that would alter the PMPA's nonrenewal process or procedure as it took effect and was applied to Harara.

214.  Harara is informed and believes, and based thereon alleges, that by denying Harara the rights and protections afforded to him by California Business and Professions Code § 21140, et seq., which rights and protections are not in contravention with the requirements of the PMPA

41

nonrenewal process under the relevant circumstances as it took effect and was applied to Harara, Harara and all similarly situated franchisees will never be able to fully exploit and take advantage of the bona fide offer requirement to purchase the "leased marketing premises" that is afforded to them as a protection under the PMPA.

215.  By withholding its consent to assign the Second Offer under the relevant circumstances, Conoco has violated California Business and Professions Code § 21140, et seq., in that it withheld its consent to Harara's sale, transfer, or assignment of his remaining interest in the unexpired portion of the nonrenewed franchise in order to deliberately and fraudulently force Harara to abandon his business (excluding the franchise and any interest in the Agreement) at the expiration date of the Agreement for no return on his investment while, simultaneously, arranging a sale and transfer of the premises of the Station to a third party in order to appropriate the value of the goodwill of Harara's business from such third party.

216.   By withholding its consent to assign the Second Offer, Conoco has violated California Business and Professions Code § 21140, et seq., in that it withheld its consent to Harara's sale, transfer, or assignment of his remaining interest in the unexpired portion of the nonrenewed franchise in order to deliberately and fraudulently force prospective buyers of Harara's business (excluding the franchise and any interest in the Agreement) to directly contact Conoco's Real Estate Department, which in turn will arrange for the sale to such prospective buyers to occur concurrently with the expiration of Harara's franchise so as to transfer a functioning and operative business to such prospective buyers for a higher price than Conoco would have collected had it sold a non-operating business at an abandoned property.

217.  As a direct result of Conoco's violation of California Business and Professions Code § 21140, et seq., Harara has been, and will continue to be, injured and damaged in an amount to

42

be proven at trial, including, but not limited to, loss of goodwill, loss of business, loss of improvements to the Station, loss of merchandise, loss of equipment, loss of benefits of the proceeds from the sale of Harara's business and the Station, incurring further losses from the continued depletion of Harara's financial resources and the loss of ability to operate the Station, and loss due to Harara's inability to meet financial obligations and debts incurred to improve the structure of the Station.

218.  In accordance with provisions of California Business and Professions Code § 21140.4, Harara is entitled, in addition to his damages, to recover and request three times the damages he sustained as a result of Conoco's violations of California Business and Professions Code § 21140, et seq.

## TENTH CLAIM FOR RELIEF

(Against All Defendants)

(ACTUAL AND STATUTORY DAMAGES FOR VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §21140, ET SEQ.)

219.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

220.  Harara is informed and believes, and based thereon alleges, that Conoco is a "franchisor" within the meaning of California Business and Professions Code § 21140.

221.  Harara is informed and believes, and based thereon alleges, that Harara is a "franchisee" within the meaning of California Business and Professions Code § 21140.

222.   Harara is informed and believes, and based thereon alleges, that Harara's Station and petroleum marketing franchise is a "leased marketing premises" within the meaning of California Business and Professions Code § 21140.

43

223.  Harara is informed and believes, and based thereon alleges, that California Business and Professions Code § 21140, et seq., was enacted to promote the well being of California service station franchisees, which is essential to the fair and efficient of a free market economy in the petroleum industry.

224.  The California Business and Professions Code § 21140 et seq., provides in relevant parts as follows:

21140.2.  From the effective date of this section it shall be illegal for any franchisor by any action to require a franchisee to purchase only those tires, batteries, motor oil, and other automotive accessories sold by the franchisor. A franchised retail gasoline dealer may sell any tires, batteries, motor oil, and other automotive accessories as may be available to him or her for retail sale.

21140.3.  The franchisor's executive officer, representative, or agent of the franchisor who negotiates any contract in violation of this chapter or who otherwise coerces a franchisee in violation of this chapter shall be subject to a civil penalty of up to one hundred thousand dollars ($100,000) for each offense. That penalty, reasonable attorney fees and costs of the suit shall be assessed and recovered in a civil action brought by the Attorney General or by any district attorney, county counsel, or city attorney in any court of competent jurisdiction. If brought by a district attorney or county counsel, the entire amount of the penalty shall be paid to the treasurer of the county in which the judgment was entered. If brought by the Attorney General, one-half of the penalty, attorney fees, and costs of the suit shall be paid to the treasurer of the county where the action was brought and one-half shall be paid to the State Treasurer. If brought by a city attorney, one-half of the penalty, attorney fees, and costs of the suit shall be paid to the treasurer of the county and one-half to the city.

21140.4.  Any person who is injured in his business or property by reason of a violation of this chapter may sue therefor in any court having jurisdiction in the county where the defendant resides or is found, or any agent resides or is found, or where service may be obtained, without respect to the amount in controversy, and to recover three times the damages sustained by him, and shall be awarded attorneys' fees together with the costs of the suit. Any action brought pursuant to this section shall be commenced within four years after the cause of action accrued.

SECOND AMENDED COMPLAINT

CASE NO. C04-0515 BZ

225.  Harara is informed and believes, and based thereon alleges, that Conoco and its agent and representative Masterton instructed and required Harara over the past two years, in violation of the California Business and Professions Code § 21140.2, to purchase from Conoco or its retailers and offer for sale and sell to the general public only 76-branded motor oil.

226.  Harara is informed and believes, and based thereon alleges, that Conoco and its agent and representative Masterton coerced Harara over the past two years, in violation of the California Business and Professions Code § 21140 et seq., to purchase from Conoco or its retailers and offer for sale and sell to the general public only 76-branded motor oil.

227.  Harara is informed and believes, and based thereon alleges, that Masterton has directed and instructed Harara or his agents to remove from the Station's shelves Chevron-branded motor oil and replace it with only 76-branded motor oil.

228.  Harara is informed and believes, and based thereon alleges, that Masterton has informed Harara or his agents that selling Chevron-branded motor oil in a 76 franchise gas station was "unsightful, would damage and distort the image that 76 demand[ed] of its dealers, and would not be good for other 76 dealers." When informed by Harara's agent that "all brands of motor oil were of the same quality," Masterton responded by stating that "the colors did not match." Harara's agent responded by stating that "the Chevron brand had blue in it [corresponding to the blue color in the 76-logo]." Masterton replied that the motor oil containers sold at the Station should "have all colors match with the 76-logo colors and must have the ball." Harara's agent complained to Masterton about the high price of 76-branded motor oil and that the profit margin was much less than the other brands. Consequently, Masterton informed Harara's agent to contact a 76-motor oil distributor who would supply him with competitive prices.

229.  Harara is informed and believes, and based thereon alleges, that Masterton instructed Harara or his agents to contact a specific Conoco motor oil distributor to purchase 76-motor oil.

230.  Harara is informed and believes, and based thereon alleges, that the 76-motor oil distributor provided by Masterton did not offer Harara motor oil that was reasonably priced. To the contrary, such 76-branded motor oil was high priced in comparison to the price of 76-motor oil offered by other distributors and in comparison with the price of other-branded motor oil retailers who directly sold to the general public.

231.  Harara is informed and believes, and based thereon alleges, that Masterton informed Harara or his agents that Masterton would not want to see Chevron-branded motor oil  on the Station's shelves during his next visit to the Station and that all such motor oil should be replaced with only 76-branded motor oil.

232.  Except for Masterton instructions and directed orders not to stock and sell any motor oil at the Station but that of the 76-branded motor oil, Harara would have sold, and was selling, other non-76 branded motor oil.

233.  Harara felt coerced and obligated at the instructions and direction of Masterton to only (i) purchase and stock any needed motor oil from that specific retailer proposed by Masterton (ii) purchase 76-branded motor oil, and (iii) offer for sale and sell to the general public 76-branded motor oil.

234.  Harara is informed and believes, and based thereon alleges, that Masterton and Conoco unlawfully, maliciously, willfully, repeatedly, and knowingly violated the California Business and Professions Code § 21140 et seq., by requesting and coercing Harara to purchase from Conoco or its retailers and offer for sale and sell to the general public only 76-branded motor oil, and/or by acting unlawfully as stated in herein.

46

235.   As a direct result of Conoco's violation of the California Business and Professions Code § 21140 et seq., Harara has been injured and damaged in an amount to be proven at trial in his business and property for a period that is more than two years but not less than three years, including, but not limited to, loss of business, loss of merchandise, loss of the proceeds and the benefits of the proceeds from the sale of a variety of brands, loss of the proceeds and the benefits of the proceeds from the sale of cheaper products, and loss of the proceeds and the benefits of the proceeds from the sale of better products than 76-branded motor oil.

236.   Harara is informed and believes, and based thereon alleges, that Harara has suffered all of the above-listed damages, and other damages, that are causally related to the agreements, conspiracies, actions, and/or inactions of the above-named defendants in an amount to be proven at trial. Harara is further informed and believes and on that basis alleges that he will continue to suffer further damages that are causally related to the agreements, conspiracies, actions, and/or inactions of the above-named defendants in an amount that is presently unascertainable and unknown to Harara. Harara will seek a leave of Court to amend this Second Amended Complaint when such amounts are ascertained and become known to him.

237.   Harara is informed and believes, and based thereon alleges, that Conoco and Masterton are liable for all damages suffered by Harara arising from the above-mentioned statutory violations due to its conduct or the conduct of its agents.

238.   In accordance with provisions the California Business and Professions Code § 21140 et seq., Harara is entitled, in addition to his actual damages, to recover three times the damages sustained by him.

SECOND AMENDED COMPLAINT                                    CASE NO. C04-0515 BZ

239.   In accordance with provisions the California Business and Professions Code § 21140 et seq., Harara is entitled, in addition to his actual and punitive damages, to be awarded attorneys' fees together with the costs of the suit.

## ELEVENTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(DAMAGES FOR BREACH OF CONTRACT)

240.   Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

241.   Harara is a party to a Motor Fuel Station Lease (was referred to through out this document as the "Agreement") entered into with Conoco. A true and correct copy of the Agreement is attached to the First Amended Complaint and incorporated herein by reference as *Exhibit-1*.

242.   Harara is informed and believes, and based thereon alleges, that the Agreement is a contract of adhesion under California law. Bolter v. Superior Court, 87 Cal.App.4th 900 (2001).

243.   Harara has duly performed all conditions, covenants, and promises required to be performed by him under the Agreement in accordance with its terms and conditions, except for those acts that have been prevented, delayed, or excused by acts or omissions of defendants.

244.   Harara is informed and believes, and based thereon alleges, that the Agreement requires Conoco to accept Harara's payments by credit for all of his motor fuel purchases.

245.   Harara is informed and believes, and based thereon alleges, that Conoco has refused to accept Harara's payments by credit for all of his motor fuel purchases.

246.   Harara is informed and believes, and based thereon alleges, that Conoco's denial of Harara's payments by credit was not based on good faith judgment and was not made in the

normal course of business but was motivated by personal grudges and individual animosity by Conoco's representative Masterton, who directed Conoco's Credit Department to deny any request by Harara for payment by credit.

247.  Harara is informed and believes, and based thereon alleges, that Conoco has demanded cash payment in advance for all deliveries of motor fuel purchases while it continued to retain Harara's substantial security deposit.

248.  Harara is informed and believes, and thereon alleges, Conoco's termination of Harara's right to purchase motor fuel by credit violated the terms and requirements of Article 16 (Terms of Payment/Credit card Requirements) of the Agreement.

249.  Harara is informed and believes, and thereon alleges, that, in addition to the above refusal to accept Harara's payments by credit, Conoco terminated Harara's right to obtain electronic access to his account over the Internet, thus preventing Harara from accurately balancing his financial books and records and making it impossible for him to effectively manage and profitably operate the Station.

250.  Harara is informed and believes, and based thereon alleges, that Conoco's denial of payment by credit and cancellation of his online access to his account to review his history of purchases, payments, disbursements, and other vital financial information to maintain books and records relating to his account that were collected and complied by Conoco was a material breach of the Agreement.

251.  Although Harara has made repeated requests to Conoco to cure said breach, Conoco failed and refused to extend credit, restore his online access to his financial information, or provide him with the necessary financial information to maintain accurate books and records.

49

252.  As a direct and proximate result of Conoco's failure to cure such breach, Harara suffered damages, in an amount to be determined according to proof.

## TWELFTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(DAMAGES FOR BREACH OF CONTRACT)

253.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

254.  Harara is a party to a Motor Fuel Station Lease (was referred to through out this document as the "Agreement") entered into with Conoco. A true and correct copy of the Agreement is attached to the First Amended Complaint and incorporated herein by reference as *Exhibit-1.*

255.  Harara is informed and believes, and based thereon alleges, that the Agreement is a contract of adhesion under California law. Bolter v. Superior Court, 87 Cal.App.4th 900 (2001).

256.  Harara has duly performed all conditions, covenants, and promises required to be performed by him under the Agreement in accordance with its terms and conditions, except for those acts that have been prevented, delayed, or excused by acts or omissions of defendants.

257.  Harara is informed and believes, and based thereon alleges, that the Agreement requires Conoco to timely deliver upon Harara's order motor to the Station.

258.  Harara is informed and believes, and based thereon alleges, that Conoco has refused to timely deliver motor fuel to the Station upon Harara's order.

259.  On or about January 26, 2004, after repeated denial of prior phone orders for delivery, Harara placed a written order for motor fuel delivery. Conoco failed to deliver any such motor fuel.

260.  Harara is informed and believes, and based thereon alleges, that Conoco's refusal to deliver motor fuel was not excused or unintentional, was not caused by negligence, and was not made in the normal course of business.

261.  Harara is informed and believes, and based thereon alleges, that Conoco's refusal to deliver motor fuel was intentional, was based on bad faith, and was motivated by personal grudges and individual animosity by Conoco's representative Masterton, who directed Conoco's agents and representatives to refuse providing Harara with any explanation for Conoco's requested advanced payments, demand payments before due dates, delay releasing fully-paid orders of motor fuel, continue demanding advanced payments for unknown, uncorroborated, unsubstantiated, or unidentified purposes.

262.  In response to Conoco's continued the aforementioned unfair and unlawful practices for months, on or about January 26, 2004, Harara requested in writing that Conoco perform under the Agreement and supply the Station with motor fuel.

263.  Harara is informed and believes, and based thereon alleges, that Conoco refused to deliver motor fuel in response to Harara written request of January 26, 2004.

264.  On or about February 11, 2004, Conoco issued a notice of default to Harara based on its allegation of Harara's failure to stock for sale two grades of motor fuel.

265.  On or about February 23, 2004, Conoco sent to Harara by personal service a notice of repossession of the Station on March 1, 2004, at 12:00 PM for the alleged failure to stock for sale motor fuel, pay due balances, and comply with local laws and regulations.

51

266.  On or about February 23, 2004, Harara sent by facsimile and certified mail a notice of surrender of the Station on March 1, 2004, at 9:00 AM, to Conoco pursuant to the terms of the Agreement and based on Conoco's failure to supply Harara with motor fuel.

267.  Harara is informed and believes, and based thereon alleges, that Conoco's acts as described herein and as carried out by its representative Masterton and others were in furtherance of a scheme to drive Harara out of business and appropriate his business goodwill.

268.   Harara is informed and believes, and based thereon alleges, that Conoco's refusal to deliver motor fuel to Harara was a material breach of the Agreement.

269.  Although Harara has made repeated requests to Conoco to cure said breach, Conoco failed and refused to do so. As a direct and proximate result of Conoco's failure to cure such breach, Harara suffered damages, in an amount to be determined according to proof.

### THIRTEENTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(DAMAGES FOR BREACH OF CONTRACT)

270.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

271.  Harara entered into the Agreement with Conoco for his leasing and occupancy of the Station and for Conoco's supply with 76-branded fuel on January 16, 2001, which was set to expire on April 30, 2004.

272.  Harara has duly performed all conditions, covenants, and promises required to be performed by him under the Agreement in accordance with its terms and conditions, except for those acts that have been prevented, delayed, or excused by acts or omissions of defendants.

SECOND AMENDED COMPLAINT                                      CASE NO. C04-0515 BZ

273.   Harara is informed and believes, and thereon alleges, that during the effective term of the Expired Agreement and the effective term of the Agreement and continuously until March 1, 2004, Conoco failed to pay Harara for certain retail credit sales that were made by Harara by accepting Union 76 retail credit card system at the Station and were authorized and performed in accordance with the terms of TOSCO's Service Station Credit Card Guide ("Guide") to customers presenting a valid Union 76 credit card or a credit card issued by a company listed in the Guide. Such Conoco's failure to pay is in violation of the Credit Card Sales provisions under Article 17 (Credit Card Sales) of the Agreement.

274.   Harara is informed and believes, and thereon alleges, that Conoco's failure to pay Harara for certain credit sales as alleged herein was a material breach of the Agreement and the Expired Agreement.

275.   Although Harara has made repeated requests to Conoco to cure said breach, Conoco failed and refused to do so.

276.   As a direct and proximate result of Conoco's failure to cure such breach, Harara suffered damages, in an amount to be determined according to proof.

## FOURTEENTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(DAMAGES FOR BREACH OF CONTRACT)

277.   Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

278.   Harara is a party to the Second Offer.

53

279.  Pursuant to the Second Offer and amendments thereto changing the amount of cash required to be deposited in the escrow and extending the closing date of the escrow, an escrow was opened with LandAmerica.

280.  Harara is informed and believes, and based thereon alleges, that the Second Offer is a contract of adhesion under California law. Bolter v. Superior Court, 87 Cal.App.4th 900 (2001).

281.  Harara is informed and believes, and based thereon alleges, that the Second Contract is assignable in accordance with its terms.

282.  In accordance with the terms of the Second Offer, on January 16, 2004, Harara called Real Estate Manager, Mathews, to inform him that he would be assigning the Second Offer to a third party for consideration and that Harara expected and arranged to sell to such third party, along with the assignment of the Second Offer, all property and goodwill Harara had in the Station; therefore, Harara requested Mathews to obtain Conoco's consent to Harara's assignment of the Second Offer. Mathews asked Harara to make such request in writing.

283.  In accordance with the terms of the Second Offer and at Mathews' directions, on January 18, 2004, Harara requested in writing Conoco's consent to Harara's assignment of the Second Offer based on the circumstances alleged herein.  In response, Conoco refused to grant such requested consent.

284.  As such, Harara informed Phan through his agent Hendren that Harara would not be able to move forward with the sale of the Station and assignment of the Second Offer due to Conoco's refusal to consent to such assignment.

285.  Harara is informed and believes, and thereon alleges, that Conoco informed him that it cancelled the escrow on two different dates, the first was on January 16, 2004, and the second was on February 6, 2004.

54

SECOND AMENDED COMPLAINT                                          CASE NO. C04-0515 BZ

286.  As a direct and proximate result of Conoco's cancellation of escrow, Harara suffered damages, in an amount to be determined according to proof.

## FIFTEENTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(FRAUD AND DECEIT – INTENTIONAL MISREPRESENTATION OF FACTS)

287.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

288.  On or about May 28, 2003, Mathews informed Harara that the selling price proposed in the Second Offer was in fact inflated by Seventy-Five Thousand Dollars ($75,000.00) and that Conoco would credit such amount to Harara.

289.  Harara is informed and believes, and based thereon alleges, that on May 22, 2003, and August 7, 2003, Mathews represented to Harara that the Second Offer was assignable and that Conoco's consent to the assignability of such Conoco's offers for the sale of real property was common and had been done by Conoco repeatedly in the past.

290.  Harara reasonably relied on Conoco's representations that : (i) the selling price proposed in the Second Offer was to be reduced by Conoco by Seventy-Five Thousand Dollars ($75,000.00) and (ii) the Second Offer would be assignable by him, and was induced to suspend his efforts to seek financing to purchase or purchase the Station in accordance with the terms of the Second Offer.

291.  Harara is informed and believes, and based thereon alleges, that when Mathews made the representations described herein, he knew such representations were not going to be performed by Conoco as he promised to Harara.

292.  Harara is informed and believes, and based thereon alleges, that when Mathews made the representations described herein, he made these representations with the intention to deceive and defraud Harara and to induce Harara to act in reliance on these representations in the manner alleged herein and/or with the expectation that Harara would so act.

293.  Harara is informed and believes, and based thereon alleges, that Mathews' representations as set forth herein were in fact false.

294.  Harara is informed and believes, and based thereon alleges, that, at that time when Harara acted as alleged herein, he, was ignorant of the falsity of said representations, did not know that them to be false, and believed them to be true.

295.  Harara was induced to act and acted in justifiable reliance upon Mathews' conduct and the truth of his representations as described above.

296.  Had Harara known of the falsity of Mathews' representations as described above, he would not have taken the actions or acted in the manner herein alleged.

297.  Harara's reliance upon Mathews' conduct and the truth of his representations as described in above was justified because Mathews was an agent of Conoco who appeared to have and actually had the authority to decide and implement the statements made to Harara.

298.  As a direct and proximate result of Mathews' fraudulent conduct as herein alleged, Harara was induced to and did suspend his efforts to seek financing or seek lesser financing to purchase or purchase the Station in accordance with the terms of the Second Offer, by reason of which Harara suffered damages, and continue to suffer damages, in an amount to be determined according to proof.

299.  Mathews' aforementioned conducts constituted intentional misrepresentation, deceit, and concealment of a material facts known to them that were made with the intention to deprive

56

Harara of property and his legal rights and cause injury. Each of Mathews' representations subjected Harara to a cruel and unjust hardship in conscious disregard of his rights, so as to justify an award of exemplary and punitive damages.

### SIXTEENTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(FRAUD AND DECEIT – NEGLIGENT MISREPRESENTATION OF FACTS,

CALIFORNIA CIVIL CODE § 1710(2))

300.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

301.  On or about May 28, 2003, Mathews informed Harara that the selling price proposed in the Second Offer was in fact inflated by Seventy-Five Thousand Dollars ($75,000.00) and that Conoco would credit such amount to Harara.

302.  Harara is informed and believes, and based thereon alleges, that on May 22, 2003, and August 7, 2003, Mathews represented to Harara that the Second Offer was assignable and that Conoco's consent to the assignability of such Conoco's offers for the sale of real property was common and had been done by Conoco repeatedly in the past.

303.  Harara reasonably relied on Conoco's representations that : (i) the selling price proposed in the Second Offer was to be reduced by Conoco by Seventy-Five Thousand Dollars ($75,000.00) and (ii) the Second Offer would be assignable by him, and was induced to suspend his efforts to seek financing to purchase or purchase the Station in accordance with the terms of the Second Offer.

SECOND AMENDED COMPLAINT                                        CASE NO. C04-0515 BZ

304.   Harara is informed and believes, and based thereon alleges, that when Mathews made the representations described herein, he did not have any reasonable grounds for believing that such representations were true.

305.   Harara is informed and believes, and based thereon alleges, that when Mathews made the representations described herein, he made these representations with the intention to deceive and defraud Harara and to induce Harara to act in reliance on these representations in the manner alleged herein and/or with the expectation that Harara would so act.

306.   Harara is informed and believes, and based thereon alleges, that Mathews' representations set forth above, were in fact false.

307.   Harara is informed and believes, and based thereon alleges, that, at that time when Harara acted as alleged herein, he, was ignorant of the falsity of said representations, did not know that them to be false, and believed them to be true.

308.   Harara was induced to act and acted in justifiable reliance upon Mathews' conduct and the truth of his representations as described in Paragraphs 244 through 253 above.

309.   Had Harara known of the falsity of Mathews' representations as described above, he would not have taken the actions or acted in the manner herein alleged.

310.   Harara's reliance upon Mathews' conduct and the truth of his representations as described in above was justified because Mathews was an agent of Conoco who appeared to have and actually had the authority to decide and implement the statements made to Harara.

311.   As a direct and proximate result of Mathews' negligent misrepresentations as herein alleged, Harara was induced to and did suspend his efforts to seek financing or seek financing for a lesser amount to purchase or purchase the Station in accordance with the terms of the

SECOND AMENDED COMPLAINT                                                    CASE NO. C04-0515 BZ

Second Offer, by reason of which Harara suffered damages, and continue to suffer damages, in an amount to be determined according to proof.

## SEVENTEENTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(BREACH OF CONTRACTUAL

COVENANT OF GOOD FAITH AND FAIR DEALING)

312.   Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

313.   Harara is a party to a Motor Fuel Station Lease (was referred to through out this document as the "Agreement") entered into with Conoco.

314.   Under Section 22 (Major Repairs) and Section 23 (Alterations and Business Changes) of the Agreement, Conoco was required to make all changes or replacements to the Station that were necessary for its continued profitable operations.

315.   Based on Conoco' representations, and with Conoco's prior consent. Harara has performed improvements, changes, and replacements to the Station that resulted in substantial increase to Conoco's income derived from the Station.

316.   Based on Conoco's representations at the time of making the improvements, Harara had a choice of getting all his costs for the improvements, changes, and replacements made to the Station be reimbursed immediately or recouping the same value from an unchanged and fixed monthly rent over a period of time until the full value of the cost of improvements was returned.

SECOND AMENDED COMPLAINT                                              CASE NO. C04-0515 BZ

317.  Harara is informed and believes, and based thereon alleges, that before Harara was able to recoup the value of the cost of improvements he made to the property of the Station, Conoco decided to nonrenew the Agreement.

318.  Harara is informed and believes, and based thereon alleges, that in response to Conoco's decision to nonrenew, Harara requested to be reimbursed for the full cost of the improvements, changes, and replacements he made to the property of the Station as was required under the terms of the Agreement and pursuant to the parties' agreement as alleged herein.

319.  Harara is informed and believes, and based thereon alleges, that Conoco, on January 16, 2004, refused to reimburse Harara for the costs of the improvements, changes, and replacements he made to the property of the Station.

320.  Conoco breached its contractual covenant of good faith and fair dealing by acting arbitrarily and in bad faith in refusing to reimburse Harara for the cost of the improvements he made to the property of the Station after having failed to return the value of such cost based on an unchanged monthly rent.

321.  Conoco has failed to act in good faith, in accordance with the reasonable commercial standards of fair dealings in the trade, and in accordance with the covenants and promises under the Agreement.

322.  Harara has duly performed all conditions, covenants, and promises required to be performed under the Agreement, except for those acts that have been prevented, delayed, or excused by Conoco's acts or omissions.

323.  By engaging in the conduct set forth herein, Conoco has breached its contractual covenant of good faith and fair dealing.

SECOND AMENDED COMPLAINT                                          CASE NO. C04-0515 BZ

324.  As a direct and proximate result of this breach of Conoco's contractual covenant of good faith and fair dealing as herein alleged, Harara lost the value of the cost of improvements he made to the property of the Station in an amount to be proven at trial.

325.  Harara is entitled to and requests attorneys' fees, interest at the prevailing legal rate from the time when the improvements were completed, costs of suit, and all further relief as the Court may deem proper.

### EIGHTEENTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(DAMAGES FOR INTENTIONAL INTERFERENCE

WITH PROSPECTIVE ECONOMIC ADVANTAGE)

326.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

327.  In or about December 2003, Harara initiated significant efforts to sell his business goodwill, equipment, and inventory at the Station to several potential purchasers.

328.  On or about December 17, 2003, Harara accepted an offer to sell his business goodwill, equipment, and inventory at the Station to Phan, who was represented by Hendren, an agent of a business brokerage firm called Business Team. The offer was contingent on Harara's assignment, and Conoco's consent to Harara's assignment, of the Second Offer, which was to be performed in accordance with its terms.

329.  Harara is informed and believes, and thereon alleges, that Phan was aware of Conoco's nonrenewal of the Agreement effective April 30, 2004, and did not seek to be a franchisee of Conoco.

61

330.  Harara is informed and believes, and thereon alleges, that Phan planned to operate as an independent motor fuel retailer upon his purchase of Harara's business.

331.  Harara and Phan executed agreements for the sale of the business goodwill, equipment, and inventory at the Station to be consummated with the concurrent assignment of the Second Offer upon Conoco's consent.

332.  Harara informed Conoco that he was suspending his efforts to personally finance the purchase or purchase the Station pursuant to the Second Offer and, instead, he sought to assign the Second Offer pursuant to its terms and sell his business goodwill, inventory, and equipment to a third party.

333.  During several conversation in the months of December 2003 and January 2004, Harara informed Mathews of his intent to assign the Second Offer and sell his business goodwill, inventory, and equipment to a third party.  Mathews represented to Harara that the Second Offer was assignable and that Conoco's consent to the assignability of such Conoco's offers for the sale of real property was common and had been done by Conoco repeatedly in the past.

334.  On or about January 16, 2004, Harara called Mathews and informed him that Harara would be assigning the Second Offer to a known third party for consideration and that Harara expected and arranged to sell to such known third party, along with the assignment of the Second Offer, all property and goodwill Harara had in the business good will, equipment, and inventory at the Station. Harara asked Mathews to obtain Conoco's consent to Harara's assignment. Mathews asked Harara to make such request in writing.

335.  On or about January 18, 2004, Harara requested, via an electronic message, facsimile, and mail to Mathews, Conoco's consent to Harara's assignment of the Second Offer to a known third party.

62

336.  On or about January 19, 2004, Conoco, through its employee Mathews, refused to consent to such assignment in violation of the terms of the Second Offer.

337.  Conoco intentionally engaged in wrongful conduct that was designed to interfere with and disrupt Harara's relationship with Phan by withholding consent to Harara's assignment of the Second Offer, thus depriving Harara from the sale of his business goodwill, inventory, and equipment at the Station.

338.  Conoco's planned, deliberate, and calculated refusal to consent to Harara's assignment of the Second Offer was designed to force, and did in fact force, Phan to approach Conoco in order to purchase the Station directly from Conoco.

339.  Conoco's planned, deliberate, and calculated refusal to consent to Harara's assignment of the Second Offer was designed to force Harara to abandon the Station and his goodwill, which were to be appropriated and transferred by Conoco for consideration to Phan or other third parties and would force Harara to abandon his attempts for reimbursements from Conoco for the improvements he made to the Station.

340.  The economic relationship between Phan and Harara was actually interfered and disrupted leading to substantial suffering of economic harm and loss of business opportunity to Harara, which harm and loss were proximately caused by Conoco's acts and its intentional interference with Harara's prospective economic advantage. Conoco's aforementioned acts and its intentional interference with Harara's prospective economic advantage injured and damaged Harara in an amount to be determined according to proof, including, but not limited to, loss of his investment, loss of goodwill, loss of business, loss of improvements to the Station, loss of merchandise, loss of equipment, loss of benefits of the proceeds from the sale of Harara's business and the Station, incurring further losses from continued depletion of Harara's financial

63

resources and from his inability to operate the Station, loss due to Harara's inability to meet

financial obligations and debts incurred to improve the structure of the Station, and loss to all

third parties for failing to promptly and timely pay unpaid balances, and all and any

consequential damages resulting from Conoco's unlawful actions.

341.   At all times herein, Conoco's conduct was malicious, oppressive, fraudulent, and

designed to deprive Harara of his right to sell and convey the Station. Accordingly, Harara is

entitled to punitive damages in an amount sufficient to deter further conduct as alleged herein

according to proof.

### NINETEENTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(DAMAGES FOR NEGLIGENT INTERFERENCE

WITH PROSPECTIVE ECONOMIC ADVANTAGE)

342.   Harara re-alleges and incorporates into this cause of action each and every allegation

contained in this Second Amended Complaint as if the same were set out at length herein.

343.   In or about December 2003, Harara initiated significant efforts to sell his business good

will, equipment, and inventory at the Station to several potential purchasers.

344.   On or about December 17, 2003, Harara accepted an offer to sell his business goodwill,

equipment, and inventory at the Station to Phan. who was represented by Hendren, an agent of

a business brokerage firm called Business Team. The offer was contingent on Harara's

assignment, and Conoco's consent to Harara's assignment, of the Second Offer, which was to

be performed in accordance with its terms.

SECOND AMENDED COMPLAINT                                                    CASE NO. C04-0515 BZ

345.  Harara is informed and believes, and thereon alleges, that Phan was aware of Conoco's nonrenewal of the Agreement effective April 30, 2004, and did not seek to be a franchisee of Conoco.

346.  Harara is informed and believes, and thereon alleges, that Phan planned to operate as an independent motor fuel retailer upon his purchase of Harara's business.

347.  Harara and Phan executed agreements for the sale of the business goodwill, equipment, and inventory at the Station to be consummated with the concurrent assignment of the Second Offer upon Conoco's consent.

348.  Harara informed Conoco that he was suspending his efforts to personally finance the purchase or purchase the Station pursuant to the Second Offer and, instead, he sought to assign the Second Offer pursuant to its terms and sell his business goodwill, inventory, and equipment to a third party.

349.  During several conversation in the months of December 2003 and January 2004, Harara informed Mathews of his intent to assign the Second Offer and sell his business goodwill, inventory, and equipment to a third party.  Mathews represented to Harara that the Second Offer was assignable and that Conoco's consent to the assignability of such Conoco's offers for the sale of real property was common and had been done by Conoco repeatedly in the past.

350.  On or about January 16, 2004, Harara called Mathews and informed him that Harara would be assigning the Second Offer to a known third party for consideration and that Harara expected and arranged to sell to such known third party, along with the assignment of the Second Offer, all property and goodwill Harara had in the business good will, equipment, and inventory at the Station. Harara asked Mathews to obtain Conoco's consent to Harara's assignment. Mathews asked Harara to make such request in writing.

351.  On or about January 18, 2004, Harara requested, via an electronic message, facsimile, and mail to Mathews, Conoco's consent to Harara's assignment of the Second Offer to a known third party.

352.  On or about January 19, 2004, Conoco, through its employee Mathews, refused to consent to such assignment in violation of the terms of the Second Offer.

353.  Conoco intentionally engaged in wrongful conduct that was designed to interfere with and disrupt Harara's relationship with Phan by withholding consent to Harara's assignment of the Second Offer, thus depriving Harara from the sale of his business goodwill, inventory, and equipment at the Station.

354.  Conoco's planned, deliberate, and calculated refusal to consent to Harara's assignment of the Second Offer was designed to force, and did in fact force, Phan to approach Conoco in order to purchase the Station directly from Conoco.

355.  Conoco's planned, deliberate, and calculated refusal to consent to Harara's assignment of the Second Offer was designed to force Harara to abandon the Station and his goodwill, which were to be appropriated and transferred by Conoco for consideration to Phan or other third parties and would force Harara to abandon his attempts for reimbursements from Conoco for the improvements he made to the Station.

356.  Harara is informed and believes, and thereon alleges, that Conoco failed to exercise reasonable care and engaged in such wrongful conduct that was designed to interfere with and disrupt Harara's relationship with Phan by withholding consent to Harara's assignment of the Second Offer, thus depriving Harara from the sale of his business good will, inventory, and equipment at the Station.

66

SECOND AMENDED COMPLAINT

CASE NO. C04-0515 BZ

357. Conoco was negligent in its conduct in that it failed to exercise due care by engaging in the aforementioned wrongful conduct.

358. The economic relationship between Phan and Harara was actually interfered and disrupted leading to substantial suffering of economic harm and loss of business opportunity to Harara, which harm and loss were proximately caused by Conoco's acts and its negligent interference with Harara's prospective economic advantage. Conoco's aforementioned acts and its negligent interference with Harara's prospective economic advantage injured and damaged Harara in an amount to be determined according to proof, including, but not limited to, loss of his investment, loss of goodwill, loss of business, loss of improvements to the Station, loss of merchandise, loss of equipment, loss of benefits of the proceeds from the sale of Harara's business and the Station, incurring further losses from continued depletion of Harara's financial resources and from his inability to operate the Station, loss due to Harara's inability to meet financial obligations and debts incurred to improve the structure of the Station, and loss to all third parties for failing to promptly and timely pay unpaid balances, and all and any consequential damages resulting from Conoco's unlawful actions.

## **TWENTIETH CLAIM FOR RELIEF**

### (Against All Defendants)

### (CONSPIRACY)

359. Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

360. Harara is informed and believes, and thereon alleges, that Masterton during the times alleged herein acted on behalf of himself by misusing the rights and privileges granted to him as a Conoco employee and agent.

67

361.  Harara is informed and believes, and based thereon alleges, that Conoco is a corporation doing business in the State of California with a principal place of business in Houston, Texas, was formed through successive mergers and acquisitions among the following corporations: Phillips 66, Conoco Inc., Union 76, and Tosco Marketing Company.

362.  Harara is informed and believes, and based thereon alleges, that, due to such successive mergers and acquisitions, Conoco's Bay Area local offices were closed and the local corporate hierarchy was shifted to a different location.

363.  Harara is informed and believes, and based thereon alleges, that, due to such closure, Conoco's Bay Area certain Conoco employees, including Masterton, operated from their homes with little immediate supervision or reporting requirements.

364.  Harara is informed and believes, and based thereon alleges, that Masterton's employment duties, as a dealer's representative, in the normal course of business, afforded him extraordinary discretion and authorities that led to his ability to interfere in the business and daily operations of dealers and franchisees.

365.  Harara is informed and believes, and based thereon alleges, that, in addition to the normal extraordinary discretion and authorities afforded to Masterton, due to the successive mergers and the closure of Conoco's local offices, little, if any, immediate supervision of Masterton was exercised and insufficient reporting by Masterton was required.

366.  Harara is informed and believes, and based thereon alleges, that such lack of local corporate structure, lack of local offices and corporate hierarchy to refer to beyond Masterton, lack of immediate supervisory control and governance, and lack of reporting requirements, led to Masterton's unfettered and unchallenged exercise of discretion, that was outside of Masterton's protocolled scope of employment, in matters relating to Conoco's performance of

68

the terms of the Agreement and in matters relating to Conoco's exercise of the franchise relationship with Harara.

367.  Harara is informed and believes, and based thereon alleges, that Masterton misused the rights and privileges granted to him by Conoco, and acted with no supervision outside his scope of employment, to achieve personal and individual purposes in that he sought to drive Harara out of business and force him to abandon and lose his business goodwill and the value of his improvements.

368.  Harara is informed and believes, and based thereon alleges, that based on the unfettered authorities given to Masterton as a dealer's representative and based on Conoco's failure to supervise his employment duties and actions, Masterton interfered with and caused damages to the running and daily activities of Harara's business and operation in areas relating to credit payments, access to Harara's financial records, orders, purchases and payments, timely deliveries, maintenance, reimbursements for credit card sales, and other accounting, deliveries, and sales activities.

369.  Harara is informed and believes, and based thereon alleges, that, due to the lack of a local corporate structure and based on Conoco's failed management procedures and reporting requirements, Harara's complaints and requests for Conoco's supervisory review were declined and Harara was referred to Masterton in every instant.

370.  Harara is informed and believes, and based thereon alleges, that Conoco's declining to act on behalf of its franchisee afforded Masterton unrestricted authority to interfere with Harara's business  and operation and convinced Masterton that he was able to drive Harara out of business.

SECOND AMENDED COMPLAINT                                                    CASE NO. C04-0515 BZ

371. Harara is informed and believes, and based thereon alleges, that Conoco sought, through its Wholesale and Marketing Department, not to reimburse Harara for the improvements made to the Station.

372. Harara is informed and believes, and based thereon alleges, that Conoco, through its Real Estate Department, refused to credit Harara for the reduction in the selling price agreed to by the parties, cancelled Harara's escrow, and refused to consent to Harara's assignment of the Second Offer in an effort to drive Harara out of business.

373. Harara is informed and believes, and based thereon alleges, that Conoco sought, through its Wholesale and Marketing Department, refused to allow Harara to place orders for motor fuel and refused to deliver and supply Harara with motor fuel in order to use Harara's inability to retail motor fuel as a pretext for terminating his Agreement.

374. Towards the end of the year 2003, the defendants and each of them knowingly and willfully conspired, engaged in a scheme, and agreed among themselves to drive Harara out of business, terminate the contract, appropriate his goodwill and the value of improvements made to the Station, and repossess the Station by doing the following:

    a.    terminating Harara's rights to obtain credit in accordance with the terms of the Agreement;

    b.    demanding that Harara pay cash in advance for all deliveries of motor fuel while retaining other sizable sums of cash advanced by Harara as a collateral;

    c.    failing to timely release delivery of motor fuel that had been paid for in advanced cash payments;

70

d.    terminating Harara's rights to access invoices, billings, and other pertinent financial information relating to purchases, costs, and sales, which are necessary for accurate reporting and for running a profitable business;

e.    denying Harara's repeated requests and applications for credit without providing Harara with a statement specifying the grounds of denial;

f.    demanding cash payments in advance for rent and other costs before any matures or becomes due;

g.    demanding cash payments in advance for unknown, uncorroborated, unsubstantiated, unidentified, and unexplained items and refusal to specify what such payments were due for;

h.    refusal to discuss any financial details of the due amounts with Harara, refusal to explain the financial records submitted for payments, refusal to explain the accounting practices showing how Conoco's financial officers calculated and reached the due amounts;

i.    referring all inquiries relating to credit and financial information to Masterton, who would refuse to answer any questions or deny any request;

j.    Conoco's refusal to reimburse Harara for the costs of the improvements;

k.    Conoco's refusal to credit Harara for the reduction in the selling price as agreed to by the parties;

l.    Conoco's refusal to assign the Second Offer;

m.    Conoco's refusal to accept Harara's orders for motor fuel, and its refusal to deliver and supply the same;

SECOND AMENDED COMPLAINT

CASE NO. C04-0515 BZ

n.  Conoco's termination of the Agreement in violation of the terms of the PMPA and its repossession of the property of the Station;

o.  Conoco's marketing and offer to sell the Station to third parties while it had a pending escrow open for the sale of the same to Harara; Conoco's offer to sell the Station to third parties, communicate offers for sale of the Station to third parties, and advertise the Station for sale to third parties while an escrow for sale of the same Station was pending and in effect with Harara; and

p.  Conoco's marketing and offer to sell the Station to third parties for a price less than that stated in the Second Offer, communicate offers for sale of the Station to third parties for a price less than that stated in the Second Offer, and advertise the Station for sale to third parties for a price less than that stated in the Second Offer while an escrow for sale of the same Station was pending and in effect with Harara.

375.  Defendants and each of them did the acts and things herein alleged pursuant to, and furtherance of, the conspiracy and above-alleged agreement

376.  Defendants and each of them furthered the conspiracy by cooperation with or lent aid and encouragement to or ratified and adopted the acts of Masterton as set forth herein by deferring all decisions relating to credit, financing, delivery of motor fuel, and all other matters relating to the Station to Masterton and cooperated, aided, encouraged, ratified, and adopted all of his decisions and conclusions without further questionings or investigations.

377.  Harara is informed and believes, and thereon alleges, that the last overt act in pursuance of the above-described conspiracy occurred on or about February 23, 2004, on which date Conoco delivered to Harara its Notice of Termination.

SECOND AMENDED COMPLAINT

CASE NO. C04-0515 BZ

378.  As a direct and proximate result of Masterton's and Conoco's fraudulent conduct as herein alleged, Harara has been, and will continue to be, injured and damaged in an amount to be proven at trial, including, but not limited to, loss of his investment, loss of goodwill, loss of business, loss of improvements to the Station, loss of merchandise, loss of equipment, loss of benefits of the proceeds from the sale of Harara's business and the Station, incurring further losses from continued depletion of Harara's financial resources and his inability to operate the Station, loss due to Harara's inability to meet financial obligations and debts incurred to improve the structure of the Station, and loss to all third parties for failing to promptly and timely pay unpaid balances, and all and any consequential damages resulting from Conoco's unlawful actions.

379.  Defendants' intentional misrepresentations, which were made with the intent to damage Harara and cause irreparable injuries, as alleged herein constituted malice, oppression, and fraud as defined under California Civil Code § 3294(c). Defendants are therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

## TWENTY-FIRST CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(ACTUAL AND STATUTORY DAMAGES, RESTITUTION, AND EQUITABLE AND DECLARATORY RELIEF FOR UNFAIR BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, ET SEQ.)

380.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

73

381. At all times relevant herein, Conoco was conducting, and continue to conduct, business under the laws of the State of California. In conducting such business, Conoco was obligated to comply with the laws of the State of California. Harara brings this action under California Business and Professions Code § 17200, et seq., on his behalf as an injured person affected by Conoco's acts described herein and on behalf of other similarly situated franchisees and the general public of California.

382. Harara is informed and believes, and based thereon alleges, that based on Conoco's conduct described above, Conoco has engaged in unfair and/or fraudulent practices against Harara, other similarly situated franchisees, and the people of California within the meaning and provisions of California Business and Professions Code § 17200, et seq.

383. Harara is informed and believes, and based thereon alleges, that Conoco's violations of California Business and Professions Code § 21140.2 and § 21140.3 in that it instructed and required Harara over the past two years to purchase from Conoco or its retailers and offer for sale and sell to the general public only 76-branded motor oil also constitute a violation of California Business and Professions Code § 17200, et seq.

384. Harara is informed and believes, and based thereon alleges, that Conoco's violations of the terms of payment and credit requirements terms as provided for under Article 16 (Terms of Payment/Credit card Requirements) of the Agreement constitute unfair and/or fraudulent practices against Harara, other similarly situated franchisees, and the people of California within the meaning and provisions of California Business and Professions Code § 17200, et seq.

385. Harara is informed and believes, and based thereon alleges, that Conoco's violations of the terms of TOSCO's Service Station Credit Card Guide ("Guide") that is referred to in Credit

74

Card Sales provisions under Article 17 (Credit Card Sales) of the Agreement constitute unfair and/or fraudulent practices against Harara, other similarly situated franchisees, and the people of California within the meaning and provisions of California Business and Professions Code § 17200, et seq.

386. Harara is informed and believes, and based thereon alleges, that Conoco's termination of Harara's right to obtain his financial records showing and itemizing all retail credit sales, all Conoco's payments to Harara for such credit card sales, all Conoco's withholding of payments or refusal of payments for such credit card sales, all other sales, fuel deliveries and orders, and other electronically tabularized purchases, sales, and orders, thus preventing Harara from accurately balancing his financial books and records and making it impossible for him to effectively manage and profitably operate the Station constitute unfair and/or fraudulent practices against Harara, other similarly situated franchisees, and the people of California within the meaning and provisions of California Business and Professions Code § 17200, et seq.

387. Harara is informed and believes, and thereon alleges, that that Conoco's termination of Harara's right to obtain electronic access to his account over the Internet, thus preventing Harara from accurately balancing his financial books and records and making it impossible for him to effectively manage and profitably operate the Station constitute unfair and/or fraudulent practices against Harara, other similarly situated franchisees, and the people of California within the meaning and provisions of California Business and Professions Code § 17200, et seq.

388. Harara is informed and believes, and thereon alleges, that that Conoco's violations of the Equal Credit Opportunity Act of the Consumer Credit Protection Act, 15 U.S.C. § 1691, et seq.,

75

and 12 CFR § 202 et seq., as alleged herein, also constitute unfair and/or fraudulent practices against Harara, other similarly situated franchisees, and the people of California within the meaning and provisions of California Business and Professions Code § 17200, et seq.

389. Harara is informed and believes, and thereon alleges, that that Conoco's violations of the Holden Credit Denial Disclosure Act of 1976, California Civil Code § 1787.2, as alleged herein, also constitute unfair and/or fraudulent practices against Harara, other similarly situated franchisees, and the people of California within the meaning and provisions of California Business and Professions Code § 17200, et seq.

390. Harara is informed and believes, and based thereon alleges, that Conoco violated California Corporation Code § 31201 when it continued to market and offer the Station to others at the same time when an escrow was open for sale of the Station between Harara and Conoco, thus making untrue statements and/or omitting material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

391. Such omissions were unlawful under California Corporation Code § 31201 in that such facts were omitted from communications with Harara, were material, in that they were necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Conoco' violations as stated herein also constitute a violation of California Business and Professions Code § 17200, et seq.

392. Harara is informed and believes, and based thereon alleges, that Conoco violated California Corporation Code § 31201 by failing to disclose material information to Harara regarding Harara's rights as franchisee and Conoco's obligations as franchisor.

76

393.  Harara has suffered special, general, and consequential damages as a result of Conoco's unlawful conduct in an amount to be proven at the time of trial and is entitled to recover such damages pursuant to California Corporation Code § 31300.

394.  Harara is informed and believes, and based thereon alleges, that other Conoco's franchisees have suffered special, general, and consequential damages as a result of Conoco's unlawful conduct in an amount to be proven at the time of trial and are entitled to recover such damages action pursuant to California Business and Professions Code § 17200, et seq., predicated on California Corporation Code § 31300.

395.  Harara is informed and believes, and based thereon alleges, that each of Conoco' violations as stated herein under each cause of action also constitutes a violation of California Business and Professions Code § 17200, et seq.

396.  Harara is entitled to and requests restitution, in an amount according to proof at the time of trial, incurred as a result of each of Conoco's violations of California Business and Professions Code § 17200, et seq.

## TWENTY-SECOND CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(SPECIFIC PERFORMANCE)

397.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

398.  Harara is a party to the Second Offer, a Real Estate Sales Contract, for the conveyance of the land and property of the Station.

399.  Harara is informed and believes, and based thereon alleges, that he and Conoco were engaged in a negotiation before and after the execution of the Second Offer to amend, and did

77

amend. its terms and modify, orally and in writing, the consideration and other terms set forth therein to be fair, just, and reasonable.

400.  Harara has duly performed all conditions, covenants, and promises required to be performed by him under the Second Contract in accordance with its terms and conditions, except for those acts that have been prevented, delayed, or excused by acts or omissions of defendants.

401.  Conoco has failed and refused, and continues to fail and refuse, to perform the conditions of the Second Offer in that it refused to credit Harara for the reduction in the selling price as agreed to by the parties and in that it refused to consent to Harara's assignment of the Second Offer and convey the property of the Station as provided for under the Second Offer.

402.  Harara is informed and believes, and based thereon alleges, that Conoco is estopped from relying on the statute of frauds because he partially performed the Second Offer by opening escrow and signing escrow documents, depositing an initial escrow deposit, conducting the Buyer's investigation, conducting the environmental compliance, securing financing to purchase the property, and securing an assignee.

403.  Since the Second Offer is an agreement involving interests in real property, Harara prays judgment against Conoco as follows: specific performance of the Second Offer according to its original and modified terms, Conoco's execution and delivery to Harara a sufficient conveyance of the property of the Station, cost of suit, and other relief as the Court may deem proper.

## TWENTY-THIRD CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(DECLARATORY RELIEF)

78

404.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this First Amended Complaint as if the same were set out at length herein.

405.  A dispute has arisen and an actual controversy exists with respect to the rights of the parties and their obligations with respect to the following:

a.   The rights and obligations of the parties under the provisions of 15 U.S.C. § 2801 et seq.;

b.   Whether Conoco's Second Offer to Harara is a "bona fide offer" within the meaning of the PMPA;

c.   Whether the selling price proposed in the Second Offer reflects the fair market value and meets other requirements to make it a "bona Fide offer;"

d.   Whether Conoco's offer to sell the same property of the Station for a price less that the selling price proposed in the Second Offer renders the Second Offer non-bona fide;

e.   Whether Conoco's Notice of Nonrenewal was in violation of the PMPA.

f.   Whether Conoco's Notice of Termination was in violation of the PMPA

g.   Whether Conoco's grounds for termination of the Agreement are valid under the PMPA under the relevant facts and circumstances and whether such grounds are sufficient to prematurely terminate Harara's franchise;

h.   By filing this action, Harara has preserved his rights under both the PMPA and the Second Offer;

i.   Any other controversy of the parties relating to the agreements entered into between them, the validity of their actions, or proper interpretation of the

79

statutory claims at issue in this action, which the Court determines is a genuine controversy in need of resolution.

406.   Therefore, Harara seeks a declaration of his and Conoco's rights and obligations with respect to the controversies referred to above.

WHEREFORE, Harara prays for judgment as follows:

With respect to the First, Second, Third, Fourth, and Fifth Claims for Relief, an order granting:

1.   A permanent injunction (i) restraining and enjoining Conoco and its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries from attempting termination and/or nonrenewal of Harara's franchise and the Agreement and from taking any further steps towards the termination and/or nonrenewal of Harara's franchise pursuant to the PMPA, federal law, and/or California law;

2.   An award of compensatory damages as allowed under the PMPA that were incurred as a proximate result of Conoco's violations of the PMPA;

3.   An equitable relief restraining and enjoining Conoco and its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries from transferring, conveying, or selling the premises of the Station any third party;

4.   An equitable relief requiring Conoco and its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries to offer

SECOND AMENDED COMPLAINT                                          CASE NO. C04-0515 BZ

Harara a first right of refusal for before attempting to transfer, convey, or sell the premises of the Station any third party pursuant to the PMPA;

5.  Any other equitable relief that the Court determines is necessary in order to redress and remedy the effect of Conoco's willful failure to comply with Sections 2801 et seq., of the PMPA, including, but not limited to, compelling Conoco to make a bona fide offer of its interest in the property of the Station;

6.  An award of exemplary damages in an amount to deter further violations of the PMPA as a result of Conoco's willful disregard of the requirements of the PMPA and Harara's rights;

7.  An award of attorneys fees, expert fees, and other costs allowed under the PMPA in connection with bringing this action; and

8.  Any other and further relief the Court deems just and proper;


With respect to the Sixth and Seventh Claims for Relief, an order granting:

9.  Actual damages in an amount to be proven at the time of trial for violations of the Equal Credit Opportunity Act of the Consumer Credit Protection Act, 15 U.S.C. § 1691 et seq.;

10. Any equitable relief that the Court determines is necessary in order to redress and remedy the effect of Conoco's willful violations of the Equal Credit Opportunity Act of the Consumer Credit Protection Act, 15 U.S.C. § 1691 et seq. and deter such future violations of the same;

11. An award of punitive and exemplary damages, attorneys fees, expert fees, and other costs allowed under the Equal Credit Opportunity Act of the Consumer Credit Protection Act, 15 U.S.C. § 1691 et seq.;

SECOND AMENDED COMPLAINT                                      CASE NO. C04-0515 BZ

12. An award of attorneys fees, expert fees, and other costs allowed under the Equal Credit Opportunity Act of the Consumer Credit Protection Act, 15 U.S.C. § 1691 et seq.; and

13. Any other and further relief the Court deems just and proper;

With respect to the Eighth Claim for Relief, an order granting:

14. Actual damages in an amount to be proven at the time of trial for violations of the Holden Credit Denial Disclosure Act of 1976 – California Civil Code § 1787.2;

15. Any equitable relief that the Court determines is necessary in order to redress and remedy the effect of Conoco's willful violations of the Holden Credit Denial Disclosure Act of 1976 – California Civil Code § 1787.2. and deter such future violations of the same;

16. An award of punitive and exemplary damages, attorneys fees, expert fees, and other costs allowed under the Holden Credit Denial Disclosure Act of 1976 – California Civil Code § 1787.2;

17. An award of attorneys fees, expert fees, and other costs allowed under the Holden Credit Denial Disclosure Act of 1976 – California Civil Code § 1787.2; and

18. Any other and further relief the Court deems just and proper;

With respect to the Ninth Claim for Relief, an order granting:

19. Actual damages in an amount to be proven at the time of trial for violations of California Business and Professions Code § 21140, et seq.;

20. In accordance with California Business and Professions Code § 21140.4. Harara requests that judgment be entered for three times the amount of Harara's assessed damages;

SECOND AMENDED COMPLAINT

CASE NO. C04-0515 BZ

21. An award of attorneys fees, expert fees, and other costs allowed under California

Business and Professions Code § 21140, et seq.; and

22. Any other and further relief the Court deems just and proper;


With respect to the Tenth Claim for Relief, an order granting:

23. Actual damages in an amount to be proven at the time of trial for violations of California

Business and Professions Code § 21140, et seq.;

24. In accordance with California Business and Professions Code § 21140.4, Harara requests

that judgment be entered for three times the amount of Harara's assessed damages;

25. An award of attorneys fees, expert fees, and other costs allowed under California

Business and Professions Code § 21140, et seq.; and

26. Any other and further relief the Court deems just and proper;


With respect to the Eleventh, Twelfth, Thirteenth, and Fourteenth Claims for Relief, an order

granting:

27. General damages in an amount to be proven at trial;

28. Special damages in an amount to be proven at trial;

29. Compensatory damages in an amount to be proven at trial; and

30. Any other and further relief the Court deems just and proper;


With respect to the Fifteenth Claims for Relief, an order granting:

31. General damages in an amount to be proven at trial;

32. Special damages in an amount to be proven at trial;

SECOND AMENDED COMPLAINT

CASE NO. C04-0515 BZ

33. Compensatory damages in an amount to be proven at trial;

34. Punitive damages in an amount to be proven at trial;

35. Costs incurred herein; and

36. Any other and further relief the Court deems just and proper;


With respect to the Sixteenth Claim for Relief, an order granting:

37. General damages in an amount to be proven at trial;

38. Special damages in an amount to be proven at trial;

39. Compensatory damages in an amount to be proven at trial;

40. Punitive damages in an amount to be proven at trial;

41. Costs incurred herein; and

Any other and further relief the Court deems just and proper;


With respect to the Seventeenth Claim for Relief, an order granting:

42. General damages in an amount to be proven at trial;

43. Special damages in an amount to be proven at trial;

44. Compensatory damages in an amount to be proven at trial; and

45. Any other and further relief the Court deems just and proper;


With respect to the Eighteenth Claim for Relief, an order granting:

46. General damages in an amount to be proven at trial;

47. Special damages in an amount to be proven at trial;

48. Compensatory damages in an amount to be proven at trial;

84

49. Punitive damages in an amount to be proven at trial;

50. Costs incurred herein; and

51. Any other and further relief the Court deems just and proper;


With respect to the Nineteenth Claim for Relief, an order granting:

52. General damages in an amount to be proven at trial;

53. Special damages in an amount to be proven at trial; and

54. Any other and further relief the Court deems just and proper;


With respect to the Twentieth Claim for Relief, an order granting:

55. General damages in an amount to be proven at trial;

56. Special damages in an amount to be proven at trial;

57. Compensatory damages in an amount to be proven at trial;

58. Punitive or exemplary damages in an amount to be proven at trial;

59. Costs incurred herein; and

60. Any other and further relief the Court deems just and proper;


With respect to the Twenty-First Claim for Relief, an order granting:

61. A permanent injunction (i) restraining and enjoining Conoco and its agents, employees,

representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates,

and subsidiaries from engaging in any further unfair and fraudulent business practices

against Harara, (ii) restraining and enjoining Conoco and its agents, employees,

representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates,

85

SECOND AMENDED COMPLAINT

CASE NO. C04-0515 BZ

and subsidiaries from engaging in any further unfair and fraudulent business practices against members of the California general public, (iii) prohibiting Conoco and its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries from engaging in any retaliatory conduct for bringing the instant action, and (iv) compelling Conoco to institute changes in order to show compliance with the California statutory requirements forbidding unfair and fraudulent business practices;

62. Restitution for Harara and members of the California general public, in an amount according to proof at the time of trial, incurred as a result of each of Conoco's violations of California Business and Professions Code § 17200, et seq. against Harara and against each member of the California general public;

With respect to the Twenty-Second Claim for Relief, an order granting:

63. An order obligating Conoco's specific performance of the Second Offer;

With respect to the Twenty-Third Claim for Relief, an order granting:

64. A declaration of rights and obligations of the parties as set forth in this Complaint;

With respect to All Claims of Relief:

65. An award of attorneys fees, expert fees, and other costs in an amount determined by the Court to be reasonable as authorized by law; and

66. Any other and further relief the Court deems just and proper.

86

SECOND AMENDED COMPLAINT

CASE NO. C04-0515 BZ

DATED: June 25, 2004

By: _____

Marwan A. Harara

Plaintiff

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure, Rule 38, Harara hereby demands a trial by jury of all claims herein that are properly the subject of a trial by jury.

DATED: June 25, 2004

By: _____

Marwan A. Harara

Plaintiff

SECOND AMENDED COMPLAINT

87

CASE NO. C04-0515 BZ

1  Marwan A. Harara (CSB No. 209142)
2  3220 Contreras Place
   Hayward, California 94542
3  Phone: (510)445-0932

4  Plaintiff Marwan A. Harara
   In Pro Se

5

6

7

8                  UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  MARWAN AHMED HARARA, on behalf          CASE NO. C04-0515 BZ
    of himself and the General Public of the State
12  of California                           **PROOF OF SERVICE**

13  Plaintiff,

14  vs.

15  CONOCOPHILLIPS COMPANY, a Texas
    Corporation,  DEAN  RICHARD
16  MASTERTON, [and DOES 1 through 100,
    INCLUSIVE],
17
18  Defendants.

19

20

21

22

23

24

25

26

27

28

    PROOF OF SERVICE                              CASE NO. C04-0515 BZ

I, the undersigned, declare:

(i) I am over 18 years of age; (ii) I am not a party in the above-captioned action;, and (iii) that on the date indicated below I served by facsimile and by depositing in the mail a sealed envelop with the postage thereon fully prepaid a true and correct copy of:

* SECOND AMENDED COMPLAINT

on the following parties addressed as follows:

      Jeffery L. Podawiltz, Esq.
      Glynn & Finley, LLP
      One Walnut Creek Center, Suite 500
      100 Pringle Avenue
      Walnut Creek, California 94596


I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.


DATED:        June 25, 2004


                              By: S. l. Ghli

                                  Soulieman Ghali


                    Phone = 925-210-2800
                    Fax = 925-945-1975

**EXHIBIT C**

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

**ENDORSED**
**FILED**
**ALAMEDA COUNTY**

DEC - 6 2006

CLERK OF THE SUPERIOR COURT
By BARBARA LAMOTTE
Deputy

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
LANDAMERICA FINANCIAL GROUP, INC., LANDAMERICA
CORPORATION, LANDAMERICA NATIONAL COMMERCIAL
SERVICES, LANDAMERICA LAWYERS TITLE COMPANY, et al.

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTA DEMANDANDO EL DEMANDANTE):**
MARWAN A. HARARA

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.

| | CASE NUMBER: (Número del Caso): |
|---|---|
| The name and address of the court is: (El nombre y dirección de la corte es): | 06 30 1 1 1 6 |

Superior Court of California, County of Alameda
1225 Fallon Street
Oakland, California 94612

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Marwan A. Harara
3220 Contreras Place, Hayward, California 94542, Phone: (510) 885-9511

| DATE: (Fecha) | DEC - 6 2006 | PAT S. SWEETEN | Clerk, by (Secretario) | Barbara M. Lamotte | , Deputy (Adjunto) |
|---|---|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citation use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [✓] as the person sued under the fictitious name of (specify): DOE I
3. [✓] on behalf of (specify): LANDAMERICA COMMERCIAL SEARCH SERVICES

   under: [✓] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
        [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
        [ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)
        [ ] other (specify):

4. [ ] by personal delivery on (date):                    Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

# EXHIBIT D

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
LANDAMERICA FINANCIAL GROUP, INC., LANDAMERICA
CORPORATION, LANDAMERICA NATIONAL COMMERCIAL
SERVICES, LANDAMERICA LAWYERS TITLE COMPANY, et al.

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
MARWAN A. HARARA

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/español), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/español) o poniéndose en contacto con la corte o el colegio de abogados locales.

The name and address of the court is:
(El nombre y dirección de la corte es):
Superior Court of California, County of Alameda
1225 Fallon Street
Oakland, California 94612

CASE NUMBER: **RG 06301116**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Marwan A. Harara
3220 Contreras Place, Hayward, California 94542, Phone: (510)888-9511

DATE: **DEC - 6 2006**    PAT S. SWEETEN, Clerk, by **BARBARA LAMOTTE**, Deputy
(Fecha)    (Secretario) Executive Officer/Clerk of the Superior Court    (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):
   under: ☑ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

**EXHIBIT E**

# California Business Portal

**Secretary of State DEBRA BOWEN**

SECRETARY OF STATE | ELECTIONS & VOTER INFO | POLITICAL REFORM | CA BUSINESS PORTAL | ARCHIVES & MUSEUM | OTHER SERVICES

**Business Search
Corporations**

- Printer Friendly Page
- New Search
- Search Tips
- Field Definitions
- Status Definitions
- Name Availability
- Corporate Records
- **Business Entities
Records Order Form**
  - Certificates
  - Copies
  - Status Reports
- FAQS
- Corporations Main Page
- Site Search

# Corporations

The information displayed here is current as of "JUL 27, 2007" and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation | | |
|---|---|---|
| LANDAMERICA, CORPORATION | | |
| **Number:** C2532120 | **Date Filed:** 5/22/2003 | **Status:** suspended |
| **Jurisdiction:** California | | |
| **Address** | | |
| 909 E CHAVY CHASE DR ST 04 | | |
| GLENDALE, CA 91205 | | |
| **Agent for Service of Process** | | |
| MARIA TERESA ESCOBAR | | |
| 3072 E CHAVY CAHSE DR | | |
| GLENDALE, CA 91205 | | |

Printer Friendly

**New Search**

- For information about certification of corporate records or for additional corporate information, please refer to **Corporate Records**.
- Blank fields indicate the information is not contained in the computer file.
- If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code **Section 2114** for information relating to service upon corporations that have surrendered.

Copyright ©2001 California Secretary of State. **Privacy Statement**.