GLYNN & FINLEY, LLP
CLEMENT L. GLYNN, Bar No. 57117
JONATHAN A. ELDREDGE, Bar No. 238559
One Walnut Creek Center
100 Pringle Avenue, Suite 500
Walnut Creek, CA 94596
Telephone: (925) 210-2800
Facsimile: (925) 945-1975

Attorneys for Defendants
LandAmerica Financial Group, Inc., LandAmerica
National Commercial Services,
LandAmerica Lawyers Title Company, and
LandAmerica Commercial Search Services Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARWAN A. HARARA,<br><br>Plaintiff,<br><br>vs.<br><br>LANDAMERICA FINANCIAL GROUP, INC., LANDAMERICA CORPORATION, LANDAMERICA NATIONAL COMMERCIAL SERVICES, LANDAMERICA LAWYERS TITLE COMPANY, AND LANDAMERICA COMMERCIAL SEARCH SERVICES COMPANY and DOES 2 through 100, Inclusive,<br><br>Defendants. | Case No. CO7-03999-SC<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:      September 21, 2007<br>Time:      10:00 a.m.<br>Courtroom: 1, 17th Floor<br>Judge:     Hon. Samuel Conti |

Pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6), defendants LandAmerica Financial Group, Inc. and dba LandAmerica National Commercial Services, Lawyers Title Insurance Corporation, erroneously sued as LandAmerica Lawyers Title Company, and LandAmerica Commercial Search Services Company (collectively "LandAmerica") jointly move to dismiss Plaintiff Marwan Ahmed Harara's *pro se* complaint on the ground that Plaintiff's claims are barred by the doctrine of collateral estoppel, and therefore Plaintiff has failed to state a claim upon which relief may be granted.

- 1 -
MEMO OF P&A IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## I. STATEMENT OF FACTS

This is not the first lawsuit involving Plaintiff, a lawyer and former service station owner, concerning the purchase of the service station located at 4280 Foothill Blvd., Oakland, CA 94601 ("Station"). On February 6, 2004, Plaintiff sued the franchisor for the Station, ConocoPhillips Company ("COP"), alleging multiple claims in *Harara v. ConocoPhillips Company, et al.*, Case No. C04-0515 BZ in the United States District Court, Northern District of California. The operative complaint in that action was Plaintiff's Second Amended Complaint ("SAC").

### A.    Plaintiff's Second Amended Complaint[1]

In the SAC, Plaintiff alleged 23 causes of action against COP and its employee, 11 of which were related to the purchase of the Station.[2] The gravaman of Plaintiff's SAC was that COP's refusal to sell the property to Plaintiff was wrongful. The pertinent factual allegations in the SAC were as follows:

Plaintiff had a franchise agreement with Tosco Marketing Company, a predecessor in interest to COP, through April 30, 2004. (Declaration of Jonathan A. Eldredge ("Eldredge Decl."), Exh. B at ¶ 19.) On April 22, 2003, COP sent him a notice of non-renewal of the COP franchise agreement and offered to sell Plaintiff the Station. (*Id.* at ¶ 39.) On June 6, 2003, Plaintiff accepted the offer and entered into an escrow with COP. (*Id.* at ¶ 44.) But, then, rather

---

[1] The Court shall, on a motion to dismiss, consider matters that are properly subject to judicial notice. (See Federal Rules of Evidence, § 201(d); *MGIC Indemnity Corp. v. Weisman* (9th Cir. 1986) 803 F.2d 500, 504; *Mack v. South Bay Beer Distributors, Inc.* (9th Cir. 1986) 798 F.2d 1279, 1282 ["on a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment. [Citation.]"] abrogated on other grounds in *Astoria Federal Savings and Loan Ass'n v. Solimino* (1991) 501 U.S. 104.) The principal thrust of this motion is that Plaintiff is collaterally estopped from asserting the claims alleged. To aid the Court, LandAmerica is submitting the prior legal documents demonstrating that the claims are barred. (See Defendants' Request for Judicial Notice in Support of Their Motion to Dismiss Plaintiff's Complaint.)

[2] The related causes of action include alleged violations of the Petroleum Marketing Practices Act, 15 U.S.C. sections 2801 *et seq.* (Counts 1-2), violations of California Business and Professions Code sections 21140 *et seq.* (Count 9), breach of contract (Count 14), fraud (Counts 15-16), breach of implied covenant of good faith and fair dealing (Count 17), interference torts (Counts 18-19), conspiracy (Count 20), and specific performance (Count 22).

1  than purchase the Station for himself, he solicited offers from third parties and eventually agreed
2  to sell the Station to a third party contingent on COP's consent to an assignment. (*Id.* at ¶ 48.)
3  Plaintiff then requested COP's consent to the assignment. (Eldredge Decl., Exh. B at ¶¶
4  51, 53.) COP refused to consent, and notified Plaintiff that COP intended to sell the property to
5  a different third party and that it was therefore cancelling the escrow with Plaintiff. (*Id.* at ¶ 54.)
6  Plaintiff was then notified by the escrow holder (Defendant LandAmerica National Commercial
7  Services) that it was cancelling the escrow pursuant to COP's instructions. (*Id.* at ¶ 55.)
8  Plaintiff instructed LandAmerica not to cancel the escrow (Eldredge Decl., Exh. B at ¶
9  56), after which COP informed Plaintiff that it would retain Plaintiff's deposit if he did not close
10  escrow within ten days (*id.* at ¶ 57). Plaintiff still did not close escrow and COP informed
11  Plaintiff that it was going to proceed with the sale of the property to a third party and that its
12  offer to Plaintiff was withdrawn. (*Id.* at ¶ 60.)
13  Based on these alleged facts, Plaintiff claimed:
14  • COP had defrauded Plaintiff by offering to sell the property to him, entering escrow, and
15  then selling it to a third party for a lower price. (Eldredge Decl., Exh. B at ¶ 67.)
16  • COP violated the Petroleum Marketing Practices Act, 15 U.S.C. sections 2801 *et seq.*
17  ("PMPA"), by not giving him the first right of refusal to purchase the Station. (*Id.* at ¶
18  72.)
19  • COP violated the PMPA by selling the Station to a third party for a price lower than COP
20  had offered him. (*Id.* at ¶ 73.)
21  Plaintiff requested, among other things, that the District Court specifically compel COP
22  to sell him the Station (see Eldredge Decl., Exh. B at ¶¶ 397-403, Prayer for Relief at ¶ 63), and
23  an injunction preventing COP from selling the Station to the third party (see *id.*, Prayer for Relief
24  at ¶¶ 3-4).
25  **B.    The District Court's Dispositive Rulings**
26  On July 23, 2004, COP filed a motion to dismiss the SAC. (See Eldredge Decl., Exh. C.)
27  The motion was granted in part: counts 10 and 15-20 were dismissed with prejudice, counts 9
28  ///

1    and 21 were dismissed in part with prejudice, and count 7 was dismissed with leave to amend.
2    (See *id.*)
3        On March 23, 2005, COP filed a motion for summary judgment. (See Eldredge Decl.,
4    Exh. D.) The District Court granted COP's motion in its entirety based on undisputed evidence
5    that:
6    • Plaintiff had been unable to obtain financing to purchase the station. (Eldredge Decl.,
7      Exh. D at p. 4:18-21.)
8    • Plaintiff secured an offer to purchase the property from a third party in December 2003
9      contingent on COP's consent to the assignment. (*Id.* at p. 4:27-5:6.)
10   • Plaintiff requested COP's consent to his assignment of his rights to a third party. (*Id.* at
11     p. 5:23-25.)
12   • COP refused to consent. (*Id.* at p. 5:25-28.)
13   • Plaintiff did not close escrow on time and COP instructed the escrow agent to cancel
14     escrow. (*Id.* at p. 5:20-22.)
15   • COP entered into a contract to sell the Station to a third party. (*Id.* at p. 6:2-4.)
16   • COP informed Plaintiff that unless he closed escrow on the Station within ten days of
17     January 26, 2004, its offer to sell him the Station would be withdrawn. (*Id.* at p. 6:6-9.)
18   • Plaintiff rejected COP's offer and filed suit. (*Id.* at p. 6:9-11.)
19       The Court found that COP's refusal to consent to Plaintiff's assignment of the purchase
20   rights was lawful (see Eldredge Decl., Exh. D at pp. 11:9-13:17, 26:17-27:8, 30:16-31:1), and
21   refused to specifically enforce Plaintiff's claimed right to purchase the Station (see *id.* at p. 32:2-
22   13).
23       In its conclusion, the Court stated: "[P]laintiff ultimately did not close escrow [not]
24   because of anything defendant said or did, but because he could not obtain the necessary
25   funding." (Eldredge Decl., Exh. D at p. 32:18-33:1.) Hence, the District Court granted summary
26   judgment against Plaintiff and denied his claim that he had a right to purchase the Station.
27   Plaintiff did not appeal the District Court's decision and the judgment became final.
28   ///

C. **Present Lawsuit**

The current lawsuit was filed on December 6, 2006, but not served until recently, against the escrow agent involved in the sale of the Station. Plaintiff alleges seven counts, including negligence, breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, conspiracy and unfair business practices. The gravaman of Plaintiff's complaint is that he opened escrow to purchase the Station from COP, but that Defendants carried out COP's instructions to cancel the escrow. (See Eldredge Decl., Exh. A at ¶¶ 7-8, 10, 16, 19, 26, 30, 34 and 38.) According to Plaintiff, this wrongfully denied him his opportunity to purchase the Station. (See *id.* at ¶¶ 12, 17, 22, 27, 31, 36 and 39.)

Specifically, Plaintiff alleges that he was damaged because: (1) he was not able to close the escrow and purchase the Station; (2) he lost the benefit of the bargain that was negotiated with COP; (3) he lost his escrow deposit; and (4) he sustained losses for his inability to hold the property in trust with LandAmerica as the escrow holder until the full performance by all parties of all escrow instructions and terms of the "Sale Contract." (See Eldredge Decl., Exh. A at ¶¶ 12, 17, 22 and 31.) His alleged damages include loss of goodwill, loss of investment in the Station, loss of business, loss of improvements to the Station, loss of merchandise, loss of equipment and loss of the benefit of the proceeds from the sale of the business and Station. (See *id.* at ¶ 36.)

None of these claims may proceed as the matters subject to judicial notice show Plaintiff's first lawsuit determined fully and finally that: (1) he did not have the right to purchase the Station, and (2) COP did not act improperly when it cancelled the escrow with Plaintiff and instead sold the Station to a third party. Hence, Defendants' cancellation of the purchase escrow at COP's request could not, as a matter of law, be wrongful or cause Plaintiff damages.

/ / /

/ / /

/ / /

/ / /

/ / /

MEMO OF P&A IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## II. ARGUMENT

### A. Applicable Law[3]

California law is clear that a party who has litigated an issue in a prior proceeding is barred from relitigating that issue in a later proceeding. (*Campbell v. Scripps Bank* (2000) 78 Cal.App.4th 1328, 1334.) A non-party to the prior proceeding may assert collateral estoppel as a "shield" in the later proceeding. (*Ibid* ["[A] stranger to the prior judgment may assert defensive issue preclusion . . . ."].) In this case, LandAmerica is entitled to assert the collateral estoppel bar against Plaintiff.

"Generally res judicata is an affirmative defense to be pleaded in the defendant's answer. [Citation.] However, when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer. [Citation.]" (*Day v. Moscow* (2nd Cir. 1992) 955 F.2d 807, 811; see also *Frommhagen v. Board of Supervisors of Santa Cruz County* (1987) 197 Cal.App.3d 1292, 1299 ["If all of the facts necessary to show that an action is barred by res judicata are within the complaint or subject to judicial notice, a trial court may properly sustain a general demurrer. [Citation.]"]; *Lazzarone v. Bank of America* (1986) 181 Cal.App.3d 581, 590.)

The *Frommhagen* court described res judicata as follows:

> The doctrine of res judicata has a double aspect. First, it precludes parties or their privies from relitigating *the same cause of action* that has been finally determined by a court of competent jurisdiction. Second, although a second suit between the same parties on a different cause of action is not precluded by a prior judgment, the first judgment operates as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action. [Citations.] This second aspect of res judicata is commonly referred to as collateral estoppel. [Citations.]

(*Supra*, 197 Cal.App.3d at p. 1299.)

/ / /

/ / /

---

[3] Federal jurisdiction in this matter is based on diversity of citizenship. Thus, the Court "must apply the substantive law of the forum state, the State of [California] . . .[, which] includes the law pertaining to res judicata . . . [and] the law pertaining to collateral estoppel." (*Priest v. American Smelting & Refining Co.* (9th Cir. 1969) 409 F.2d 1229, 1231 [internal citations omitted]; see also *Centennial Ins. Co. v. Miller* (E.D. Cal. 1967) 264 F.Supp. 431, 433 ["In

More specifically, the court described the effect of collateral estoppel as follows:

> "The collateral estoppel aspect of res judicata will apply as to all issue which were involved in the prior case even though some *factual* matters or *legal* arguments which could have been presented in the prior case in support of such issues were not presented. [Citation.] Thus, where two lawsuits are brought and they arise out of the same alleged factual situation, and although the causes of action or forms of relief may be different, the prior determination of an issue in the first lawsuit becomes conclusive in the subsequent lawsuit between the same parties with respect to that issue and also with respect to every matter which might have been urged to sustain or defeat its determination. [Citation.] If the legal principle were otherwise, litigation would end finally only when a party could no longer find counsel whose knowledge and imagination could conceive of different theories of relief based upon the same factual background. [Citation]." [Citation.]

(*Frommhagen, supra,* 197 Cal.App.3d at p. 1301.)

"The doctrine of collateral estoppel precludes relitigation of an issue previously adjudicated if: (1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the plea is asserted was a party, or in privity with a party, to the previous suit. [Citation.]" (*Campbell, supra,* 78 Cal.App.4th at p. 1334.)

### B. Plaintiff's Claims against LandAmerica are Precluded by Collateral Estoppel

There can be no dispute that Plaintiff was a party to the prior litigation (see Eldredge Decl., Exh. B) and that the judgment rejecting Plaintiff's claim that he had a right to purchase the Station is a final judgment on the merits (see *id.*, Exhs. C and D). Thus, the question is whether "the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated" in this suit. (See *Campbell, supra,* 78 Cal.App.4th at p. 1334.) In the former case against COP, as in the present case, Plaintiff has asserted the identical contention that he had a right to purchase the Station. The District Court rejected that foundational contention, and Plaintiff may not seek a different outcome in this proceeding.

*Campbell v. Scripps Bank* is on point. In *Campbell*, the plaintiff sold a piece of property to Hall for $650,000. (*Campbell, supra,* 78 Cal.App.4th at p. 1331.) Hall financed the purchase by borrowing $450,000 from Sachs and $200,000 from the plaintiff. (*Ibid.*) Sach's loan was

---

diversity actions, the forum state's rules on res judicata and collateral estoppel are controlling in the federal courts as an aspect of the doctrine of Erie R.R. Co. v. Tompkins . . . ."].)

conditional upon it being a first deed of trust. (*Ibid.*) Plaintiff and Hall then entered into a subordination agreement whereby plaintiff agreed to subordinate his position as Hall's secured creditor in favor of other lenders who would provide financing to Hall for improvement of the property. (*Ibid.*) Plaintiff and Hall hired defendant Scripps Bank to act as the escrow company. (*Ibid.*) When the sale was finalized, Scripps Bank notified the title company that Sachs' loan would be a first deed of trust, and plaintiff's would be a second deed of trust with the subordination agreement also recorded. (*Ibid.*)

The development of the property failed and Sachs foreclosed. (*Campbell, supra,* 78 Cal.App.4th at p. 1331.) The sale of the proceeds did not cover plaintiff's second deed of trust and he sued Sachs for declaratory and injunctive relief to stop the foreclosure and determine the priorities of the deeds of trust (hereinafter the "First Action"). (*Id.* at p. 1332) The First Action was resolved in Sachs' favor, as the trial court ruled "the parties intended the Sachs trust deed to have priority over the Campbell trust deed . . . ." (*Ibid.*)

After the First Action, plaintiff sued Scripps Bank for negligence and declaratory relief, alleging that Scripps Bank had "negligently caused the escrow to close with the loan terms not complying with the terms of the subordination agreement." (*Campbell, supra,* 78 Cal.App.4th at p. 1332.) The trial court granted Scripps Bank's motion for summary judgment on the ground that plaintiff's lawsuit was barred by collateral estoppel. (*Ibid.*) The court of appeal affirmed the judgment, stating:

> [Plaintiff's] cause of action for breach of contract here seeking relief for Scripps Bank's closing of escrow without obtaining compliance with the terms of the subordination agreement lacks the potential of damages to [plaintiff.] Because the subordination agreement had no legal effect on the relative priority of the two trust deeds (as it was not intended to apply to the Sachs loan), [plaintiff] could not have been damaged by Scripps Bank's alleged failure "to obtain compliance with the terms of the subordination agreement."

(*Id.* at p. 1334.)

Plaintiff's case is indistinguishable from *Campbell v. Scripps Bank*. The gravamen of Plaintiff's current lawsuit is that but for LandAmerica's conduct in agreeing to cancel the purchase escrow pursuant to COP's request, he would have been able to purchase the Station. (See Eldredge Decl., Exh. A at ¶¶ 12, 17, 22, 27, 31, 36 and 39.) Plaintiff has already fully

1  litigated—and lost—his claim that he was entitled to purchase the Station. He sued COP,
2  alleging in 11 separate claims that COP's decision to cancel escrow, deny consent to assignment
3  and sell the Station to a third party were legally wrongful. The District Court adjudicated all of
4  those claims *against* Plaintiff. The foundation of those determinations was a flat rejection of
5  Plaintiff's core contention that he was entitled to purchase the Station.
6        The District Court determined that Plaintiff had no such right because: (1) COP lawfully
7  cancelled escrow because Plaintiff could not personally finance the purchase of the Station; (2)
8  COP lawfully refused to consent to Plaintiff's assignment of this right to a third party; and (3)
9  COP lawfully sold the Station to a different third party after Plaintiff failed to acquire the
10  necessary financing to close the purchase. Plaintiff may not, in the current suit, proceed on
11  claims premised on the notion that he had a right to purchase the Station and would have done so
12  but for LandAmerica's cancellation of the purchase escrow as that premise is directly contrary to
13  the District Court's judgment against him.
14        As in *Campbell v. Scripps Bank*, even had LandAmerica done what Plaintiff alleges
15  should have been done, Plaintiff still would not have been able to purchase the Station, and
16  therefore, he could not have been damaged by LandAmerica's alleged conduct. Plaintiff could
17  not finance the purchase of the Station (see Eldredge Decl., Exh. D at pp. 4:18-21, 32:15-33:1),
18  COP rightly refused to consent to an assignment (see *id.* at pp. 11:9-13:17, 26:17-27:8, 30:16-
19  31:1 and 32:2-13) and COP rightly directed that the escrow with Plaintiff be cancelled by the
20  escrow agent (see *ibid*). The District Court made those determinations in the prior lawsuit.
21  Plaintiff had his day in court and lost. He can not relitigate the issues with new "counsel whose
22  knowledge and imagination could conceive of different theories of relief based upon the same
23  factual background." (*Frommhagen, supra,* 197 Cal.App.3d at p. 1301.)
24  ///
25  ///
26  ///
27  ///
28  ///

### III. CONCLUSION

Plaintiff's complaint is barred by the doctrine of collateral estoppel. There is no way that Plaintiff could amend the complaint to avoid the collateral estoppel bar, so the Court should grant LandAmerica's motion to dismiss without leave to amend.

Dated: August 8, 2007

GLYNN & FINLEY, LLP
CLEMENT L. GLYNN
JONATHAN A. ELDREDGE
One Walnut Creek Center
100 Pringle Avenue, Suite 500
Walnut Creek, CA 94596

By _____
Attorneys for Defendants
LandAmerica Financial Group, Inc.,
LandAmerica National Commercial
Services, LandAmerica Lawyers Title
Company, and LandAmerica Commercial
Search Services Company