# EXHIBIT B

Marwan A. Harara (CSB No. 209142)
3220 Contreras Place
Hayward, California 94542
Phone: (510)445-0932

Plaintiff Marwan A. Harara
In Pro Se

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARWAN AHMED HARARA, on behalf
of himself and the General Public of the State
of California

Plaintiff,

vs.

CONOCOPHILLIPS COMPANY, a Texas
Corporation, DEAN RICHARD
MASTERTON, [and DOES 1 through 100,
INCLUSIVE],

Defendants.

Case No: C04-0515-BZ

**SECOND AMENDED COMPLAINT FOR:**

1. VIOLATIONS OF THE PETROLEUM
   MARKETING PRACTICES ACT, 15
   U.S.C. § 2801, ET SEQ.;
2. VIOLATIONS OF THE PETROLEUM
   MARKETING PRACTICES ACT, 15
   U.S.C. § 2801, ET SEQ.;
3. CONSTRUCTIVE TERMINATION BY
   FAILING TO DELIVER MOTOR FUEL
   AND FAILING TO COMPLY WITH
   CREDIT TERMS OF PAYMENT AND
   CREDIT CARD SALES TERMS
   UNDER THE AGREEMENT IN
   VIOLATION OF THE PETROLEUM
   MARKETING PRACTICES ACT, 15
   U.S.C. § 2801, ET SEQ.;
4. RETALIATORY EVICTION IN
   VIOLATION OF THE PETROLEUM
   MARKETING PRACTICES ACT, 15
   U.S.C. § 2801, ET SEQ.;
5. ACTUAL TERMINATION IN
   VIOLATION OF THE PETROLEUM
   MARKETING PRACTICES ACT, 15
   U.S.C. § 2801, ET SEQ.;
6. ACTUAL AND STATUTORY
   DAMAGES AND EQUITABLE AND
   DECLARATORY RELIEF FOR
   VIOLATIONS OF THE EQUAL
   CREDIT OPPORTUNITY ACT OF THE
   CONSUMER CREDIT PROTECTION
   ACT, 15 U.S.C. § 1691, ET SEQ., AND
   12 CFR § 202 ET SEQ.;

7. ACTUAL AND STATUTORY DAMAGES AND EQUITABLE AND DECLARATORY RELIEF FOR VIOLATIONS OF THE EQUAL CREDIT OPPORTUNITY ACT OF THE CONSUMER CREDIT PROTECTION ACT, 15 U.S.C. § 1691, ET SEQ.;
8. ACTUAL AND STATUTORY DAMAGES FOR VIOLATIONS OF THE HOLDEN CREDIT DENIAL DISCLOSURE ACT OF 1976 – CALIFORNIA CIVIL CODE § 1787.2;
9. ACTUAL AND STATUTORY DAMAGES FOR VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §21140, ET SEQ.;
10. ACTUAL AND STATUTORY DAMAGES FOR VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §21140, ET SEQ.;
11. DAMAGES FOR BREACH OF CONTRACT;
12. DAMAGES FOR BREACH OF CONTRACT;
13. DAMAGES FOR BREACH OF CONTRACT;
14. DAMAGES FOR BREACH OF CONTRACT;
15. FRAUD AND DECEIT – INTENTIONAL MISREPRESENTATION OF FACTS;
16. FRAUD AND DECEIT – NEGLIGENT MISREPRESENTATION OF FACTS, CALIFORNIA CIVIL CODE § 1710(2);
17. BREACH OF CONTRACTUAL COVENANT OF GOOD FAITH AND FAIR DEALING;
18. DAMAGES FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;
19. DAMAGES FOR NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;
20. CONSPIRACY
21. ACTUAL AND STATUTORY DAMAGES, RESTITUTION, AND EQUITABLE AND DECLARATORY RELIEF FOR UNFAIR BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, ET SEQ.
22. SPECIFIC PERFORMANCE
23. DECLARATORY RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY TRIAL DEMANDED**

## PRELIMINARY ALLEGATIONS

1.    Plaintiff, Marwan A. Harara, ("Harara") is an individual who operated a 76-branded motor fuel gas station located at 4280 Foothill Blvd., Oakland, California 94601("Station").

2.    Harara is informed and believes, and based thereon alleges, that defendant, ConocoPhillips Company ("Conoco"), which is a successor by merger to Tosco Marketing Company, is now, and at all times mentioned in this Complaint was, a corporation doing business in the State of California.

3.    Harara is informed and believes, and based thereon alleges that, Conoco is the third-largest integrated U.S. energy company.

4.    Harara is informed and believes, and based thereon alleges, that Conoco is, on a global basis, the sixth largest publicly held energy company based on hydrocarbon reserves and production, and it is the fifth-largest global refiner.

5.    Harara is informed and believes, and based thereon alleges, that Conoco is a major international integrated energy company with operations in forty-nine (49) countries. Harara is informed and believes and thereon alleges that Conoco is headquartered in Houston, Texas and has assets of Seventy-Five Billion Dollars ($75 billion), a refining capacity of two million and six hundred (2.6 million) barrels per day, net proved reserves of eight billion and seven hundred million (8.7 billion) barrels of oil equivalent, and daily production of one million and seven hundred (1.7 million) barrels of oil equivalent.

6.    Harara is informed and believes, and thereon alleges, that Dean Richard Masterton ("Masterton") is an individual who is residing at 4024 Marcas Court, Pinole, California 94564, is working for and representing Conoco, and, during the times alleged herein, acted on behalf

of himself by misusing the rights and privileges granted to him as a Conoco employee and agent.

7.    Harara is not aware of the true names or capacities, whether individual, corporate, associate or otherwise, of defendants named herein as DOES 1 through 100, Inclusive, and therefore sues these defendants by such fictitious names. Harara shall amend this Second Amended Complaint to allege the true names and capacities of the fictitiously named defendants when ascertained. Harara is informed and believes, and on that basis alleges, that each of the fictitiously named defendants is in some manner intentionally or negligently responsible for the things herein alleged and the damages he suffered.

8.    Harara is informed and believes, and on that basis alleges, that each of the defendants, fictitious and real, are responsible in some manner for the occurrences herein alleged, and that Harara's damages as herein alleged were proximately caused by their conduct.

9.    Harara is informed and believes, and on that basis alleges, that at all times herein mentioned, each of the fictitiously named defendants was the agent, servant, employee, co-venture, and/or alter ego of each of the remaining fictitiously named defendants and were acting within the course, scope, purpose, consent, knowledge, and authorization of such agency, employment, and/or joint venture and each fictitiously named defendant has ratified and approved the acts of his, her, and/or its agents.

10.    Whenever in this Second Amended Complaint a reference is made to Conoco, Masterton, defendants, and/or each of them, such allegation shall be deemed to mean that acts of all defendants acting individually, jointly, and/or severally.

11.    Harara brings this action and files this Second Amended Complaint based on information and belief against Conoco, in both capacities, as an individual and as a private attorney general

SECOND AMENDED COMPLAINT                                CASE NO. C04-0515 BZ

action on behalf of the people of the State of California for its unabated unfair business practices as stated herein and applied to Harara, as applied to all similarly situated people in the State of California, and as applied to the general public of the State of California pursuant to California Business and Professions Code § 172000 et seq.

## JURISDICTION

12.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 as it presents a federal question and pursuant to 15 U.S.C. § 2085. The Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2085 explicitly confers jurisdiction on the United States District Courts for all civil actions brought by franchisees against franchisors, irrespective of the amount in controversy.

13.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1391(b) and 15 U.S.C. § 2085(a), which confer jurisdiction on the United States District Court over civil actions in the District where the defendants reside or where substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated.

14.    This Court has jurisdiction over the remaining causes of action of this Second Amended Complaint pursuant to 28 U.S.C. 1331, which causes of action are based on violations of federal law.

15.    This Court has jurisdiction over the remaining causes of action of this Second Amended Complaint pursuant to 28 U.S.C. § 1367, which causes of action are based on state and common law, are so related to the federal claims, and form part of the same case or controversy.

SECOND AMENDED COMPLAINT                                                                    CASE NO. C04-0515 BZ

### VENUE

16.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) and 15 U.S.C. § 2805(a) where Harara, as the franchisee, is doing business within the boundaries of the Northern District and where substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated.

### COMMON ALLEGATIONS

17.    As a franchisee of a gasoline retail station, Harara is a member of the class intended to be protected by the PMPA. As a franchisor, Conoco is subject to the PMPA.

18.    On February 1, 1999, Harara bought the goodwill and leasehold of the Station.

19.    Tosco Marketing Company, a predecessor in interest to Conoco, accepted the assignment of the lease and franchise agreement ("Expired Agreement") by the former owner of the Station to Harara for occupancy of the Station and for supply with 76-branded fuel. The Expired Agreement was renewed once for a three-year period on January 16, 2001. (This renewed agreement will be referred to herein as the "Agreement"). The Agreement was set to expire on April 30, 2004. *See Agreement attached to the First Amended Complaint as Exhibit-1.*

20.    Harara is informed and believes, and based thereon alleges, that Masterton was the only representative of Conoco that Harara dealt with. At all times, Masterton communicated all issues relating to the Agreement to Harara and presented all agreements for signature to Harara. On February 1, 1999, Masterton was present to oversee the transfer of possession to Harara from the former leaseholder. At all times, Masterton presented himself as the only point of contact between Harara and Conoco and informed Harara that all contacts regarding any matter involving Conoco or the Station and property where the Station is located, had to go through

7

SECOND AMENDED COMPLAINT                                              CASE NO. C04-0515 BZ

him. At different times during the life of the Agreement, when Harara attempted to directly contact any Conoco's employee, agent, designated person, or department, other than Masterton or other than through Masterton, Harara was referred, by such Conoco's employee, agent, designated person, or department, to Masterton as the only point of contact.

21.    Harara is informed and believes, and based thereon alleges, that Masterton was informed of Harara's plans to make improvements within a few months of executing the Expired Agreement to the building and property where the Station is located.

22.    Harara is informed and believes, and based thereon alleges, that Masterton was consulted and asked about the proper procedure to obtain Conoco's approval.

23.    Harara is informed and believes, and based thereon alleges, that Masterton informed Harara that: (i) Masterton would perform all necessary internal procedures; (ii) Masterton's oversight was the only notice needed to perform the improvements to the station; and (iii) Masterton's approval was that of Conoco's.

24.    Harara is informed and believes, and based thereon alleges, that Masterton encouraged Harara to proceed with the improvement to the building and property to improve the business and increase gas sales.

25.    Harara is informed and believes, and based thereon alleges, that Masterton represented to Harara that Harara's expected long-term occupancy, as evidenced by the occupancy of Harara's predecessor at the Station, would pay for the cost of improvements.

26.    Harara is informed and believes, and based thereon alleges, that Masterton informed Harara that the former owner occupied the Station for at least 15 years before the former owner transferred possession and sold his goodwill to Harara.

27.    Harara is informed and believes, and based thereon alleges, that Masterton represented to Harara that the improvements would ensure Conoco's grant to Harara of enrollment in various incentive programs and special discounts and its providing of equipment-upgrade and other privileges, i.e., installation of credit card dispensers and periodic fresh painting and pavement.

28.    Thereafter, Harara embarked on a major improvement project that was financed by a loan for Fifty Thousand Dollars ($50,000.00) from the Oakland Business Development, a small-business lender doing business in Oakland, California, two lines of credit, and a loan from a personal friend.

29.    Under Harara's operation and after the improvements were made, the Station's sales of gas increased exponentially compared to the sales before Harara bought the Station until the economy slowed towards the end of the year 2001.

30.    With the decrease in the sales of gas, Masterton started a campaign of complaints about the management of the Station and about sales and use of non-branded and third-party-branded motor oil while repeating his threats to terminate the Agreement. His repeated threats created a hostility and tension with Harara, which hostility and tension ultimately resulted in Masterton's revocation of Harara's payment-by-credit for gasoline, Masterton's refusal to advance credit to Harara to pay for gasoline as called for under the Agreement. *See Exhibit-1 pp. 12-13.* Harara's direct requests for credit to Conoco's Credit Department were all referred to Masterton.

31.    With the cash-in-advance plan, Harara had to pay to wire and wire the cost of each gasoline load in advance of delivery. Receipt of each wire transfer had to be confirmed by Conoco's Accounting Department before it granted a release for each gas load. Such release from Conoco's Accounting Department was then communicated to Conoco's Dispatch Department to allow for the placement of the order of the gasoline load and its delivery.

9

Considering that Conoco's Accounting Department assigned one person only to administer Harara's account at all times, Conoco's Dispatch Department requirement to place orders twenty-four (24) hours in advance, Conoco's Dispatch Department prerequisite of obtaining the release from Accounting prior to placing and accepting an order, and the difference in time-zones and lack of timely communication between Conoco's Accounting and Dispatch departments, Harara's ability to run the business was completely frustrated. Harara's purchase and obtaining of consistent and timely gas deliveries became impossible.

32.    Moreover, Conoco denied Harara access to all his financial records of gasoline cash sales, all credit sales, history of gasoline orders, other vital financial information, and other requests for payments and charges, which led to substantial difficulties in creating balanced financial sheets and complete accounting records for the Station.

33.    In addition to Conoco's denial of access to all written financial records, Conoco refused to pay substantial amounts of money for Harara's credit-card sales based on customers' disputing the sales or the fact that a credit card was stolen when was used at the time of sale at the pump.

34.    Harara's complaints to Conoco' Accounting Department and Conoco' Credit Department were referred to Masterton.

35.    Harara is informed and believes, and based thereon alleges, that after repeated attempts to work with Masterton to resolve concerns related to obtaining credit, late delivery of gasoline loads, inaccessibility to financial and sales records, and Conoco's refusal to pay for its customers' credit card sales that it had authorized, on or about the end of the year 2002, Harara asked for a face-to-face meeting with Masterton. Masterton informed Harara that the only way out for Harara to capture any value from the Station in return for his initial investment and

10

SECOND AMENDED COMPLAINT

CASE NO. C04-0515 BZ

goodwill was a "firesale" of the Station. Masterton said to Harara that a "firesale meant Harara's sale of the Station within days and not weeks." Masterton informed Harara that the alternative was his loss of the business and the Station.

36.    On or about April 3, 2003, Harara received a "Notice of Nonrenewal" of the Agreement.

37.    On or about April 3, 2003, Harara received, along with the Notice of Nonrenewal, a "Bona Fide Offer" to sell the Station ("First Offer").

38.    On or about April 22, 2003, Harara received a second "Notice of Nonrenewal" of the Agreement.

39.    On or about April 22, 2003, Harara received, along with the second Notice of Nonrenewal, a second "Bona Fide Offer" to sell the Station ("Second Offer"), which stated that the deadline to accept the second bona fide offer was June 9, 2003. *See Second Offer attached to the First Amended Complaint as Exhibit-2.*

40.    On or about May 12, 2003, Harara contacted Conoco's designated contact person at Conoco Real Estate Department, Dick Mathews ("Mathews"), and scheduled a face-to-face meeting at Mathews' office in San Ramon, California. Conoco's San Ramon offices were closed and Mathews did not show up for the meeting due to illness.

41.    On or about May 22, 2003, Harara met with Mathews at Mathews' office in Sacramento to discuss the Second Offer. Harara informed Mathews that based on Harara's initial contacts with lending institutions he was informed that the proposed selling price stated in the Second Offer was high and might not be approved in a loan application. Harara raised the fact that the Station was located in an area where the real property was relatively depressed and that such factor should be taken into account by Conoco when proposing the selling price. Mathews turned to his computer and informed Harara that he was re-evaluating the formula used to

SECOND AMENDED COMPLAINT

CASE NO. C04-0515 BZ

generate the selling price proposed in the Second Offer. Mathews informed Harara that the said selling price proposed in the Second Offer seemed inflated but he had to further investigate it, obtain internal approval for any possible reduction, and would get back to Harara in a few days.

42.    Moreover, during Harara's meeting with Mathews on May 22, 2003, Harara informed Mathews that Harara had improved the real property and structure of the Station and that Harara expected not to pay Conoco for the work he had done and had paid for already. Mathews informed Harara that he would check with Masterton and Masterton's superiors to determine if additional reductions in the proposed selling price of the Second Offer due to Harara's improvements were warranted.

43.    On or about May 28, 2003, Harara called Mathews regarding the reduction in the selling price proposed in the Second Offer. Mathews stated to Harara over the phone that, after an investigation and internal review, the selling price proposed in the Second Offer was in fact inflated by Seventy-Five Thousand Dollars ($75,000.00) and that Conoco would credit such amount to Harara upon the consummation of the sale. Mathews informed Harara that he had not obtained a response regarding a credit for the improvements Harara had made to the Station and that he was still working on it.

44.    On or about June 6, 2003, based on the representation made by Mathews on May 28, 2003, Harara accepted the Second Offer and continued to work with Mathews to obtain a credit for the improvements made to the Station.

45.    On or about August 7, 2003, Harara met face-to-face with Mathews at Mathews' office in Sacramento for the second time to determine how Harara would obtain credit for the improvements made. Harara submitted an appraisal of the cost of the improvements made to the Station in order to deduct such cost from the selling price proposed in the Second Offer.

12

SECOND AMENDED COMPLAINT                                        CASE NO. C04-0515 BZ

Mathews informed Harara that Masterton or his superior, Douglas E, Bergman ("Bergman"), had to approve any credits for improvements.

46.    On or about December 15, 2003, Harara requested Bergman and Masterton in writing to approve credit or reimbursement for the improvement he made to the Station.

47.    On or about December 17, 2003, since Harara had not received a response from either Bergman or Masterton, Harara called Mathews to check on whether the credit for improvement was approved. Mathews informed Harara that his best option was to contact Bergman's superior, Don Kaplan; however, Mathews asked Harara to wait a few days before Harara "ruffled anyone's feathers" and till Mathews had a last chance to discuss the issue with Bergman.

48.    On or about December 17, 2003, Harara accepted an offer to sell Harara's goodwill, merchandise, equipment, and other property in the Station to Wurn Waa Phan ("Phan"), who was represented by Martin Hendren ("Hendren"), an agent of a business brokerage firm called Business Team. The offer was contingent on Harara's assignment, and Conoco's consent to Harara's assignment, of the Second Offer.

49.    On or about December 18, 2003, Bergman responded to Harara in writing. Bergman informed Harara that he can be reimbursed for depreciated actual dollar amounts spent based on invoices shown to Masterton.

50.    On or about December 22, 2003, Harara replied to Bergman and informed him that the appraisal of the cost of improvement that was already submitted to Mathews was the only measure that Harara considered accurate for determining the cost of improvements made to the Station.

51.    On or about January 16, 2004, Harara called Mathews and asked whether he was aware of the status of approval of his request for credit for improvements made to the Station. Mathews informed Harara that it was likely that it had been denied. Harara, then asked Mathews about how the inflated Seventy-Five Thousand Dollars ($75,000.00) that Mathews promised and communicated to Harara would be credited. Mathews denied that he promised to reduce the selling price, denied that he had any discussion about inaccurate application of special formula to compute the selling price, and denied that he had any discussion with Harara about the inflated selling price proposed in the Second Offer. Subsequently, Harara informed Mathews that he would be assigning the Second Offer to a third party for consideration and that Harara expected and arranged to sell to such third party, along with the assignment of the Second Offer, all property and goodwill Harara had in the Station; therefore, Harara requested Conoco's consent to his assignment of the Second Offer. Mathews asked Harara to make such request in writing.

52.    On or about January 16, 2004, Bergman responded to Harara's letter of December 22, 2003, by rejecting the appraisal and denying any credits for any of the improvements Harara made to the Station.

53.    On or about January 18, 2004, Harara requested, via an electronic message, facsimile, and mail to Mathews, Conoco's consent to Harara's assignment of the Second Offer to a known third party.

54.    On or about January 19, 2004, Mathews sent an electronic mail to Harara informing Harara that: (i) the intent of the PMPA was to allow the dealer an opportunity to purchase a site and not to market it; (ii) Mathews had received "a full priced offer on [the] site in hand from an outside buyer since 11/8/03 [and that he] intend[ed] to pursue this matter with the buyer;" and

14

(iii) Mathews had instructed Conoco's Real Estate Department to cancel the escrow on 1/16/2004, two days before Mathews asked Harara to reduce to a writing his phone request, as alleged in ¶ 51 herein, for Conoco's consent to assign the Second Offer.

55.    On or about January 20, 2004, Harara received a facsimile from the escrow holder, LandAmerica National Commercial Services ("LandAmerica"), requesting the parties' consent to cancel the escrow and release all claims arising from the Second Offer in consideration for refund of Harara's escrow deposit.

56.    On or about January 22, 2004, Harara instructed LandAmerica to maintain the escrow open until the parties resolved their differences.

57.    On or about January 26, 2004, Harara received a letter from Mathews stating that Harara refused to close escrow and that unless Harara did so within ten (10)-day therefrom, the Second Offer would be null and void and Conoco would retain Harara's escrow deposit.

58.    After requesting gas delivery by phone several times during the month of January and receiving none, on or about January 26, 2004, Harara requested in writing that Conoco perform under the Agreement and supply the Station with gasoline.

59.    On or about February 3, 2004, Harara responded to Mathews' letter of January 26, 2004, and rejected Mathews' misconstruction of events and Mathews' ten (10)-day's notice, which was to expire on February 6, 2004.

60.    On or about February 5, 2004, Harara received a phone call from Hendren informing him that Phan was able to conclude the purchase of the Station within days based on a Seven Hundred Thousand Dollars ($700,000.00) sum in cash and Five Hundred Thousand Dollars ($500,000.00) loan from his personal bank. Hendren informed Harara that Phan, after Harara had informed Hendren of Conoco's refusal to consent to assignment of the Second Offer and

cancellation of escrow, had contacted Mathews and that Mathews told him that the property of

the Station was for sale for One Million and Forty-Five Thousand Dollars ($1,045,000.00), less

Seventy-Five Thousand Dollars ($75,000.00) than what was offered to Harara in the Second

Offer. Hendren informed Harara that Mathews was to consummate a deal that Mathews had

initiated with a third party, other than Harara, in November of 2003. Hendren informed Harara

that Mathews had stated that Harara's original offer was to be cancelled the following day,

February 6, 2004.

61.    On February 6, 2004, Harara filed this action against Conoco and Masterton. On

February ------ 2004, Harara personally served Conoco and Masterton with a copy of the

Complaint.

62.    On or about February 11, 2004, Conoco issued a notice of default to Harara based on its

allegation of Harara's failure to stock for sale two grades of motor fuel or gasoline.

63.    On or about February 23, 2004, Masterton personally delivered to Harara, or his

employee, a notice of termination, eviction, and repossession of the Station effective March 1,

2004, at 12:00 PM for failure to stock for sale motor fuel, failure to pay due balances, and

failure to comply with local laws and regulations ("Notification of Termination").

64.    On or about February 23, 2004, Harara sent by facsimile and certified mail a notice of

surrender of the Station on March 1, 2004, at 9:00 AM, to Conoco based on its breach of the

Agreement and failure to supply Harara with motor fuel pursuant to its terms.

65.    Harara is informed and believes, and based thereon alleges, that Conoco has defrauded

him by intentionally and negligently misrepresenting facts about reducing and crediting part of

the selling price proposed in the Second Offer to entice him to accept the Second Offer, thus

SECOND AMENDED COMPLAINT                                    CASE NO. C04-0515 BZ

foreclosing any claim to the fact that the Second Offer was not a bona fide offer in compliance with the requirements of the PMPA.

66.    Harara is informed and believes, and based thereon alleges, that Conoco has defrauded him by intentionally and negligently misrepresenting facts about crediting or deducting the cost of improvements made to the Station by Harara from the selling price proposed in the Second Offer to entice him to accept the Second Offer, thus foreclosing any claim to the fact that the Second Offer was not a bona fide offer in compliance with the requirements of the PMPA.

67.    Harara is informed and believes, and based thereon alleges, that Conoco has defrauded him by intentionally offering to sell the property of the Station, while an escrow to sell the same to Harara was in effect, to a third party for a price that was less than the selling price proposed in the Second Offer.

68.    Harara is informed and believes, and based thereon alleges, that Conoco had known that the selling price proposed in the Second Offer was inflated and above the fair market value, therefore, such Second Offer was not a bona fide offer pursuant to the requirements of the PMPA.

69.    Harara is informed ad believes, and based thereon alleges, that the Second Offer was fraudulent.

70.    Harara is informed ad believes, and based thereon alleges, that the Second Offer was not bona fide pursuant to the provisions of the PMPA.

71.    Harara is informed ad believes, and based thereon alleges, that the Second Offer was not bona fide and was not made in good faith and in the normal course of business in that Conoco recognized that it was inflated and exceeded the fair market value of the land, improvements, and equipment located therein.

SECOND AMENDED COMPLAINT

CASE NO. C04-0515 BZ

72.    Harara is informed and believes, and based thereon alleges, that Conoco's offer to sell the Station to a third party for a price that is less than the selling price proposed in the Second Offer violated the provisions of the PMPA in that Harara was not giving a first right of refusal.

73.    Harara is informed and believes, and based thereon alleges, that Conoco's offer to sell the Station to a third party for a price that is less than the selling price proposed in the Second Offer, while an escrow for the sale of the Station pursuant to the terms of the Second Offer was pending, violated the provisions of the PMPA.

74.    Conoco's refusal to sell the Station to Harara at the reduced the price that was offered by Conoco to other third parties and its refusal to credit him for the improvements he made to the Station deprived Harara of his business, entire investment and goodwill, and denied him the ability to pay off the debt he accumulated to improve the Station; all of which is contrary to the purpose and intent of the PMPA.

75.    Harara is informed and believes, and based thereon alleges, that pursuant to Section 2802(b)(3)(D)(iii)(I) of the PMPA, Conoco is obligated, upon furnishing notification of nonrenewal to Harara, to make a bona fide offer that is within the fair market value and is not over and above other offers made concurrently by Conoco to third parties for the same property while escrow for the sale of such property to Harara is pending. Harara is informed and believes, and based thereon alleges, that Conoco failed to convey such bona fide offer to Harara.

76.    Harara is informed and believes, and based thereon alleges, that the defendants, and each of them, proceeded with a course of conduct that caused, and will continue to cause, Harara substantial hardship and irreparable harm.

SECOND AMENDED COMPLAINT                                                    CASE NO. C04-0515 BZ

77.    Due to Conoco's and each of the defendants' actions, Harara and his family lost their primary means of support, his franchise, and his substantial investment therein.

## FIRST CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(VIOLATIONS OF THE PETROLEUM

MARKETING PRACTICES ACT, 15 U.S.C. § 2801, ET SEQ.)

78.    Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

79.    Harara is informed and believes, and based thereon alleges, that Conoco's decision to nonrenew Harara's franchise and the Agreement was not made in good faith or in the normal course of business thus damaging and injuring Harara's rights and interests.

80.    Pursuant to Section 2802(b)(3)(D) of the PMPA, Conoco was obligated, at the time when it served its Notice of Nonrenewal of the Agreement, to make a bona fide offer of all of its interest in the premises of the Station, which offer must have included the equipment and improvements located at the property of Station at fair market value. Greco v. Mobil Corp., 597 F. Supp. 468; Roberts v. Amoco Oil Co., 740 F.2d 602 (8th Cir. 1984); Ellis v. Mobil Oil Co., 969 F.2d 784 (9th Cir. 1992).

81.    Harara is informed and believes, and based thereon alleges, that Conoco failed to make a bona fide offer of its entire interest in the premises of the Station by requiring, among other things, as non-negotiable conditions of the Second Offer that Harara purchase the property of the Station at an inflated price that is in excess of fair market value and is above the price Conoco offered to other third parties.

19

82.    Harara is informed and believes, and based thereon alleges, that Conoco failed to make a bona fide offer of its entire interest in the premises of the Station by offering Harara a selling price in the Second Offer that was in excess of one or more selling prices Conoco offered concurrently to other third parties during the pendency of escrow between Harara and Conoco to purchase the same property.

83.    Harara is informed and believes, and based thereon alleges, that Conoco failed to make a bona fide offer of its entire interest in the premises of the Station by offering Harara the Second Offer and opening an escrow with Harara while intending not to perform.

84.    Harara is informed and believes, and based thereon alleges, that Conoco failed to make a bona fide offer of its entire interest in the premises of the Station by offering Harara the Second Offer and opening an escrow with Harara while (i) offering the same property for sale and to others for a lesser selling price, and (ii) accepting, entertaining, inviting, or entertaining other offers for the sale of the same property for a lesser selling price.

85.    Harara is informed and believes, and based thereon alleges, that Conoco failed to make a bona fide offer of its entire interest in the premises of the Station by offering Harara the Second Offer and opening an escrow with Harara while Conoco continued to market the same property of the Station, continued to engage third parties' offers to purchase, and continued to offer the same property of the Station to third parties at a price that was less than the selling price proposed by Conoco in the Second Offer.

86.    Harara is informed and believes, and based thereon alleges, that Conoco's offer to sell the Station to a third party for a price that is less than the selling price proposed in the Second Offer violated the provisions of the PMPA in that Harara was not giving a first right of refusal.

SECOND AMENDED COMPLAINT                                    CASE NO. C04-0515 BZ

87.    Pursuant to Section 2802(b)(3)(D) of the PMPA, before deciding not to renew Harara's franchise and the Agreement, Conoco was obligated to reach a prerequisite determination in good faith and in the normal course of business to sell the premises of the Station.

88.    Harara is informed and believes, and based thereon alleges, that Conoco's decision to nonrenew Harara's franchise and the Agreement was not made in good faith and was not made in the normal course of business thus damaging and injuring Harara's rights and interests.

89.    Harara is informed and believes, and thereon alleges, that Conoco violated Section 2802(b)(3)(D) of the PMPA because its decision to sell the premises of the Station was not made in good faith and in the normal course of business.

90.    Harara is informed and believes, and based thereon alleges, that Conoco's Second Offer to Harara was intended as a sham and was made in fraud and that Conoco had never intended to perform in accordance with its terms.

91.    Harara is informed and believes, and thereon alleges, that Conoco violated Section 2804(c)(3)(A) of the PMPA by nonrenewing the Agreement and failing to give proper notice of its intention nonrenew in that it failed to adequately set forth the true grounds for termination and nonrenewal.

92.    Harara is informed and believes, and thereon alleges, that Conoco intended to eliminate him individually as a franchisee and a retailer of gasoline and that its decision to terminate and nonrenew the Agreement was not made in good faith and in the normal course of business.

93.    Harara is informed and believes, and thereon alleges, that Conoco's actions surrounding its First Offer, its Second Offer, its inflated selling price proposed to Harara in the Second Offer, its continued marketing of the property of the Station while an escrow is pending for sale of the same, its continued discussions with third parties about sale of the property of the Station

SECOND AMENDED COMPLAINT                                                    CASE NO. C04-0515 BZ

to such third parties while the escrow is pending, its offer to sell the same property to third parties for a price that is lesser than the price offered to Harara in the Second Offer, its refusal to credit Harara for the cost of improvement he made to the same property, and its refusal to consent to Harara's assignment of the Second Offer to a known party raise serious questions about the legality of Conoco's actions under the PMPA and constitute justifiable grounds for litigation..

94.    Harara is, therefore, entitled to a permanent injunction restraining and enjoining Conoco, its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries from entering into, offering, or accepting any offers or purchase and sale agreements to sell the property of the Station to any third party, from terminating or nonrenewing the Agreement and Harara's franchise and lease agreement until Conoco comes forward with and offers Harara a bona fide offer to sell the property of the Station so and let Harara exercise all of his rights in accordance with the terms of such bona fide offer, and from forcing Harara to surrender the Station, his improvements made therein at his cost, and other rights and interests he has there in accordance with the PMPA, federal law, and state law.

95.    Harara has suffered and will continue to suffer damages, in amounts to be proven at trial, as a proximate result of Conoco's violations of the PMPA as set forth herein.

96.    Harara is entitled to the above-requested relief under § 2801 et seq., of the PMPA and further requests an order by the Court compelling Conoco to make a bona fide offer of its entire interest in the Station and its premises to Harara.

SECOND AMENDED COMPLAINT

CASE NO. C04-0515 BZ

97.    Harara is entitled to and requests exemplary damages, in an amount sufficient to deter further violations of the PMPA, as a result of Conoco's willful and reckless disregard of the requirements of the PMPA and Harara's rights and interests.

98.    Harara is entitled to and requests attorneys' fees, experts' fees, and all other costs permitted under the PMPA in connection with bringing this action pursuant to § 2805(d) of the PMPA.

**SECOND CLAIM FOR RELIEF**

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(VIOLATIONS OF THE PETROLEUM

MARKETING PRACTICES ACT, 15 U.S.C. § 2801, ET SEQ.)

99.    Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

100.    Harara is a party to the Second Offer with Conoco. A true and correct copy of the Agreement is attached to the First Amended Complaint and incorporated herein by reference as *Exhibit-2.*

101.    On or about May 28, 2003, Mathews informed Harara that the selling price proposed in the Second Offer was in fact inflated by Seventy-Five Thousand Dollars ($75,000.00) and that Conoco would credit such amount to Harara.

102.    On or about June 6, 2003, based on the representation made by Mathews as alleged herein, Harara accepted the Second Offer and continued to work with Mathews to obtain a credit for the improvements made to the Station.

103.    Harara considered as conditions to his acceptance of the Second Offer Conoco's representations made by its agent Mathews that: (i) the selling price proposed in the Second

23

Offer was to be reduced by Seventy-Five Thousand Dollars ($75,000.00) and (ii) the value of the improvements was to be reimbursed.

104.   Harara is informed and believes, and based thereon alleges, that Conoco's representations were false and were made in fraud to secure Harara's acceptance of the Second Offer.

105.   Harara is informed and believes, and based thereon alleges, that Conoco's representations were false and were made in fraud to secure Harara's acceptance that the Second Offer was a bona fide offer.

106.   Harara is informed and believes, and based thereon alleges, that Conoco failed to make a bona fide offer of its entire interest in the premises of the Station by offering Harara a selling price in the Second Offer that was in excess of one or more selling prices Conoco offered concurrently to other third parties during the pendency of escrow between Harara and Conoco to purchase the same property.

107.   Harara is informed and believes, and based thereon alleges, that on May 22, 2003, and August 7, 2003, Mathews represented to Harara that the Second Offer was assignable and that Conoco's consent to such assignability was common and had been done by Conoco repeatedly in the past.

108.   Harara reasonably relied on Conoco's representations that the Second Offer would be assignable by him and that Conoco would consent to such assignability upon his request as conditions precedent to his acceptance of the Second Offer.

109.   Harara is informed and believes, and based thereon alleges, that Conoco's representations were false and were made in fraud to secure Harara's acceptance of the Second Offer.

110.  Harara is informed and believes, and based thereon alleges, that Conoco's representations were false and were made in fraud to secure Harara's acceptance that the Second Offer was a bona fide offer.

111.  Harara is informed and believes, and based thereon alleges, that Conoco's Second Offer to Harara was intended as a sham and was made in fraud and that Conoco had never intended to perform in accordance with its terms.

112.  Harara is, therefore, entitled to a permanent injunction restraining and enjoining Conoco, its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries from entering into, offering, or accepting any offers or purchase and sale agreements to sell the property of the Station to any third party, from terminating or nonrenewing the Agreement and Harara's franchise and lease agreement until Conoco comes forward with and offers Harara a bona fide offer to sell the property of the Station so and let Harara exercise all of his rights in accordance with the terms of such bona fide offer, and from forcing Harara to surrender the Station, his improvements made therein at his cost, and other rights and interests he has there in accordance with the PMPA, federal law, and state law.

113.  Harara has suffered and will continue to suffer damages, in amounts to be proven at trial, as a proximate result of Conoco's violations of the PMPA as set forth herein.

114.  Harara is entitled to the above-requested relief under § 2801 et seq., of the PMPA and further requests an order by the Court compelling Conoco to make a bona fide offer of its entire interest in the Station and its premises to Harara.

CASE NO. C04-0515 BZ

115.  Harara is entitled to and requests exemplary damages, in an amount sufficient to deter further violations of the PMPA, as a result of Conoco's willful and reckless disregard of the requirements of the PMPA and Harara's rights and interests.

116.  Harara is entitled to and requests attorneys' fees, experts' fees, and all other costs permitted under the PMPA in connection with bringing this action pursuant to § 2805(d) of the PMPA.

### THIRD CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(CONSTRUCTIVE TERMINATION BY FAILING TO DELIVER MOTOR FUEL

AND FAILING TO COMPLY WITH CREDIT TERMS OF PAYMENT AND CREDIT

CARD SALES TERMS UNDER THE AGREEMENT IN VIOLATION OF THE

PETROLEUM MARKETING PRACTICES ACT, 15 U.S.C. § 2801, ET SEQ.)

117.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

118.  Harara entered into the Agreement with Conoco for his leasing and occupancy of the Station and for Conoco's supply with 76-branded fuel on January 16, 2001. The Agreement was set to expire on April 30, 2004.

119.  Harara has duly performed all conditions, covenants, and promises required to be performed by him under the Agreement in accordance with its terms and conditions, except for those acts that have been prevented, delayed, or excused by acts or omissions of defendants.

120.  Harara is informed and believes, and thereon alleges, that during the early part of the year 2002, and continuously until March 1, 2004, Conoco terminated Harara's right to purchase

SECOND AMENDED COMPLAINT                                                    CASE NO. C04-0515 BZ

motor fuel by credit and violated other terms of payment and credit requirements terms as

provided for under Article 16 (Terms of Payment/Credit card Requirements) of the Agreement.

121.   Harara is informed and believes, and thereon alleges, that during the effective term of the

Expired Agreement and the effective term of the Agreement and continuously until March 1,

2004, Conoco failed to pay Harara for certain retail credit sales that were made by Harara by

accepting Union 76 retail credit card system at the Station and were authorized and performed

in accordance with the terms of TOSCO's Service Station Credit Card Guide ("Guide") to

customers presenting a valid Union 76 credit card or a credit card issued by a company listed in

the Guide. Such Conoco's failure to pay is in violation of the Credit Card Sales provisions

under Article 17 (Credit Card Sales) of the Agreement.

122.   Harara is informed and believes, and thereon alleges, that during the early part of the year

2002, and continuously until March 1, 2004, Conoco terminated Harara's right to obtain his

financial records showing and itemizing all retail credit sales, all Conoco's payments to Harara

for such credit card sales, all Conoco's withholding of payments or refusal of payments for

such credit card sales, all other sales, fuel deliveries and orders, and other electronically

tabularized purchases, sales, and orders, thus preventing Harara from accurately balancing his

financial books and records and making it impossible for him to effectively manage and

profitably operate the Station.

123.   Harara is informed and believes, and thereon alleges, that during the early part of the year

2002, and continuously until March 1, 2004, Conoco terminated Harara's right to obtain

electronic access to his account over the Internet, thus preventing Harara from accurately

balancing his financial books and records and making it impossible for him to effectively

manage and profitably operate the Station.

SECOND AMENDED COMPLAINT                                                    CASE NO. C04-0515 BZ

124. Harara is informed and believes, and thereon alleges, that during the early part of the year 2004, and continuously until March 1, 2004, Conoco terminated Harara's right to purchase motor fuel by failing to fulfill any phone or written orders for fuel delivery to the Station and failing to communicate with Harara to accept placement of fuel orders and deliveries to the Station in violation of the terms of Article 12 (Delivery) of the Agreement.

125. Harara is informed and believes, and thereon alleges, that all of the aforementioned breaches of covenants and obligations and lack of performance by Conoco amounted to a termination of Harara's rights and interests under the Agreement, which termination was in violation of the PMPA requirements.

126. Harara has suffered and will continue to suffer damages, in amounts to be proven at trial, as a proximate result of Conoco's violations of the PMPA as set forth herein.

127. Harara is entitled to all available relief under § 2801 et seq., of the PMPA.

128. Harara is entitled to a permanent injunction restraining and enjoining Conoco, its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries from terminating the Agreement.

129. Harara is entitled to and requests exemplary damages, in an amount sufficient to deter further violations of the PMPA, as a result of Conoco's willful and reckless disregard of the requirements of the PMPA and Harara's rights and interests.

130. Harara is entitled to and requests attorneys' fees, experts' fees, and all other costs permitted under the PMPA in connection with bringing this action pursuant to § 2805(d) of the PMPA.

## FOURTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

28

(RETALIATORY EVICTION IN VIOLATION OF

THE PETROLEUM MARKETING PRACTICES ACT, 15 U.S.C. § 2801, ET SEQ.)

131.   Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

132.   Harara and Conoco are parties to the Agreement, which serves both as: (i) a lease for Harara's occupancy of the Station, and (ii) a supply agreement for Conoco's supply and delivery of 76-branded fuel.

133.   On February 6, 2004, Harara filed this action against Conoco and Masterton. On February ------ 2004, Harara personally served Conoco and Masterton with a copy of the Complaint.

134.   Harara's Complaint alleged seven (7) causes of actions for Conoco's violations of the PMPA, for Conoco's violations of California Business and Professions Code Section 21140 et seq., and Section 17200 et seq., for breach of contract, and for specific performance and declaratory relief.

135.   In response to Harara's Complaint, Conoco issued a notice of default to Harara based on its allegation of Harara's failure to stock for sale two grades of motor fuel or gasoline.

136.   In response to Harara's Complaint, on or about February 23, 2004, Conoco issued its Notice of Termination of the Agreement effective March 1, 2004, at 12:00 PM.

137.   Harara has duly performed all conditions, covenants, and promises required to be performed by him under the Agreement in accordance with its terms and conditions, except for those acts that have been prevented, delayed, or excused by acts or omissions of defendants.

SECOND AMENDED COMPLAINT                                             CASE NO. C04-0515 BZ

138.  Harara is informed and believes, and based thereon alleges, that Conoco's decision to terminate Harara's franchise and the Agreement was in retaliation for his filing of the Complaint and this case and for seeking Court relief as alleged therein.

139.  Harara is informed and believes, and thereon alleges, that Conoco's retaliatory eviction as alleged herein was in violation of the provisions of the PMPA.

140.  As a proximate result of Conoco's retaliatory termination, Harara had to abandon his business and surrender the premises of the Station as required by the Notice of Termination.

141.  Harara has suffered and will continue to suffer damages, in amounts to be proven at trial as a proximate result of Conoco's violations of the PMPA as set forth herein.

142.  Harara is entitled to all available relief under § 2801 et seq., of the PMPA.

143.  Harara is entitled to a permanent injunction obligating Conoco, its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries to return possession of the Station to Harara.

144.  Harara is entitled to and requests exemplary damages, in an amount sufficient to deter further violations of the PMPA, as a result of Conoco's willful and reckless disregard of the requirements of the PMPA and Harara's rights and interests.

145.  Harara is entitled to and requests attorneys' fees, experts' fees, and all other costs permitted under the PMPA in connection with bringing this action pursuant to § 2805(d) of the PMPA.

## FIFTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(ACTUAL TERMINATION IN VIOLATION OF

THE PETROLEUM MARKETING PRACTICES ACT, 15 U.S.C. § 2801, ET SEQ.)

SECOND AMENDED COMPLAINT                                        CASE NO. C04-0515 BZ

146.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

147.  Harara entered into the Agreement with Conoco for his leasing and occupancy of the Station and for Conoco's supply with 76-branded fuel on January 16, 2001. The Agreement was set to expire on April 30, 2004.

148.  Harara has duly performed all conditions, covenants, and promises required to be performed by him under the Agreement in accordance with its terms and conditions, except for those acts that have been prevented, delayed, or excused by acts or omissions of defendants.

149.  On or about February 23, 2004, Masterton personally delivered to Harara, or his employee, Notification of Termination informing Harara of the termination of the Agreement and Conoco's intent to evict him and repossess the Station effective March 1, 2004, at 12:00 PM for failure to stock for sale motor fuel, failure to pay due balances, and failure to comply with local laws and regulations.

150.  Harara is informed and believes, and thereon alleges, that Conoco's refusals to supply and deliver Harara with motor fuel in response to his repeated phone orders and written requests for motor fuel deliveries in or around January 2004, were premeditated and precalculated as a pretext to declare Harara's breach for failure to stock and sell motor fuel as required under the Agreement.

151.  Harara is informed and believes, and thereon alleges, that Conoco's other grounds for termination as stated in the Notice of Termination were not authorized as sufficient and justifiable basis for termination of the Agreement under the PMPA.

152.  Harara is informed and believes, and thereon alleges, that Conoco was generally prohibited from issuing the Notice of Termination pursuant to the provisions of the PMPA

31

because none of the grounds for termination as specified under §2802(b)(2) of the PMPA were found.

153.   Harara is informed and believes, and thereon alleges, that Conoco issued its Notice of Termination in violation of the provisions of the PMPA.

154.   As a proximate result of Conoco's termination, Harara had to abandon his business and surrender the premises of the Station as required by the Notice of Termination.

155.   Harara has suffered and will continue to suffer damages, in amounts to be proven at trial, as a proximate result of Conoco's violations of the PMPA as set forth herein.

156.   Harara is entitled to all available relief under § 2801 et seq., of the PMPA.

157.   Harara is entitled to a permanent injunction restraining and enjoining Conoco, its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries from terminating the Agreement and obligating each and all of them to return possession of the Station to Harara.

158.   Harara is entitled to and requests exemplary damages, in an amount sufficient to deter further violations of the PMPA, as a result of Conoco's willful and reckless disregard of the requirements of the PMPA and Harara's rights and interests.

159.   Harara is entitled to and requests attorneys' fees, experts' fees, and all other costs permitted under the PMPA in connection with bringing this action pursuant to § 2805(d) of the PMPA.

## SIXTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(ACTUAL AND STATUTORY DAMAGES AND EQUITABLE AND

DECLARATORY RELIEF FOR VIOLATIONS OF THE EQUAL CREDIT

32

OPPORTUNITY ACT OF THE CONSUMER CREDIT PROTECTION ACT, 15

U.S.C. § 1691, ET SEQ., AND 12 CFR § 202 ET SEQ.)

160.  Harara re-alleges and incorporates into this cause of action each and every allegation

contained in this Second Amended Complaint as if the same were set out at length herein.

161.  Harara is informed and believes, and based thereon alleges, that Conoco is a "creditor"

within the meaning of the Equal Credit Opportunity Act, 15 USC § 1691 et seq. ("ECOA").

162.  Harara is informed and believes, and based thereon alleges, that Harara is a "applicant"

within the meaning of the Equal Credit Opportunity Act, 15 USC § 1691 et seq. ("ECOA").

163.  The ECOA, 15 USC § 1691(d)(2), provides in relevant parts as follows:

> Each applicant against whom adverse action is taken shall be entitled to a
> statement of reasons for such action from the creditor. A creditor satisfies
> this obligation by--
>     (A) providing statements of reasons in writing as a matter of course to
> applicants against whom adverse action is taken; or
>     (B) giving written notification of adverse action which discloses (i) the
> applicant's right to a statement of reasons within thirty days after receipt by
> the creditor of a request made within sixty days after such notification, and
> (ii) the identity of the person or office from which such statement may be
> obtained. Such statement may be given orally if the written notification
> advises the applicant of his right to have the statement of reasons confirmed
> in·writing on written request.

164.  Harara is informed and believes, and based thereon alleges, that at the time of his request

for a franchise from Conoco, he applied, by completing and signing a written application, for

an extension of credit from Conoco based on Harara's personal financial record, personal

income tax returns, personal credit history and reports, and personal credit worthiness.

165.  Harara is informed and believes, and based thereon alleges, that subsequent to submitting

his written application for credit from Conoco, Harara obtained credit and continued to use it

until the year 2002.

SECOND AMENDED COMPLAINT                                          CASE NO. C04-0515 BZ

166. Harara is informed and believes, and based thereon alleges, that in the year 2002, an adverse action within the meaning of the ECOA was taken against him by Conoco.

167. Harara is informed and believes, and based thereon alleges, that Conoco violated the ECOA by not providing a statement of reasons as required by the ECOA.

168. Harara is informed and believes, and based thereon alleges, that in the year 2002, an action was taken by Conoco against Harara requiring a notification within the meaning and provisions of 12 CFR §202.9.

169. Harara is informed and believes, and based thereon alleges, that Conoco failed to provide Harara with such notification as required by the provisions of 12 CFR §202.9.

170. Harara is informed and believes, and based thereon alleges, that Conoco violated the provisions of 12 CFR §202.9 by failing to provide Harara with such notification.

171. Harara is informed and believes, and based thereon alleges, that Conoco has unlawfully, repeatedly, and knowingly violated the rights afforded him under the Consumer Credit Protection Act, 15 USC § 1691 et seq., and 12 CFR § 202 et seq., as stated herein by declining his repeated requests for credit and failing to provide the statutory notification.

172. As a direct result of Conoco's violation of the Consumer Credit Protection Act, 15 USC § 1691 et seq., and 12 CFR § 202 et seq., Harara has been, and will continue to be, injured and damaged in an amount to be proven at trial.

173. In accordance with provisions the Consumer Credit Protection Act, 15 USC § 1691 et seq., and 12 CFR § 202 et seq., Harara is entitled to and hereby requests, in addition to his actual damages, to recover punitive damages as prescribed under the Consumer Credit Protection Act, 15 USC § 1691 et seq., and 12 CFR § 202 et seq.,

174.  In accordance with provisions the Consumer Credit Protection Act, 15 USC § 1691 et seq., and 12 CFR § 202 et seq., Harara is entitled and hereby requests, in addition to his actual and punitive damages, to recover costs of the action and attorney's fees.

175.  In accordance with provisions the Consumer Credit Protection Act, 15 USC § 1691 et seq., and 12 CFR § 202 et seq., Harara is entitled to and hereby requests, in addition to all remedies sought above, a declaratory relief against Conoco as is necessary to enforce the requirements imposed by 15 USC § 1691 et seq., and 12 CFR § 202 et seq., in favor of Harara and all similarly aggrieved applicants.

## EIGHTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

ACTUAL AND STATUTORY DAMAGES AND EQUITABLE AND DECLARATORY RELIEF FOR VIOLATIONS OF THE EQUAL CREDIT OPPORTUNITY ACT OF THE CONSUMER CREDIT PROTECTION ACT, 15 U.S.C. § 1691, ET SEQ.)

176.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

177.  Harara is informed and believes, and based thereon alleges, that Conoco is a "creditor" within the meaning of the Consumer Credit Protection Act, 15 USC § 1691 et seq.

178.  Harara is informed and believes, and based thereon alleges, that Harara is a "applicant" within the meaning of the Consumer Credit Protection Act, 15 USC § 1691 et seq.

179.  The Consumer Credit Protection Act, 15 USC § 1691 et seq., provides in relevant parts as follows:

SECOND AMENDED COMPLAINT                                              CASE NO. C04-0515 BZ

(a) Activities constituting discrimination: It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction. (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract); (2) because all or part of the applicant's income derives from any public assistance program; or (3) because the applicant has in good faith exercised any right under this chapter.

180.   Harara is informed and believes, and based thereon alleges, that at the time of his request for a franchise from Conoco, he applied, by completing and signing a written application, for an extension of credit from Conoco and provided to Conoco information relating to Harara's personal financial record, personal income tax returns, personal credit history and reports, and personal credit worthiness.

181.   Harara is informed and believes, and based thereon alleges, that subsequent to submitting his written application for credit from Conoco, Harara obtained credit and continued to use it until the year 2002.

182.   Harara is informed and believes, and based thereon alleges, that in the year 2002, an adverse action within the meaning of the ECOA was taken against him by Conoco that was not based on Harara's lack of credit qualification or an adverse change to his personal credit history or worthiness.

183.   Harara is informed and believes, and based thereon alleges, that such Conoco's adverse action was not uniformly applied against all persons in Harara's position who were of different race or religion.

184.   Harara is informed and believes, and based thereon alleges, that such Conoco's adverse action was not based on Harara's lack of credit qualification or an adverse change to his

36

personal credit history or worthiness but based on other discriminatory grounds that are impermissible within the provisions of the ECOA.

185. Harara is informed and believes, and based thereon alleges, that Conoco unlawfully discriminated against Harara with respect to his maintenance of credit from Conoco by terminating his ongoing credit based on discriminatory grounds that are impermissible within the provisions of the ECOA.

186. Harara is informed and believes, and based thereon alleges, that Conoco has unlawfully, repeatedly, and knowingly violated the rights afforded him under the Consumer Credit Protection Act, 15 USC § 1691 et seq., by terminating Harara's ongoing credit and/or by acting unlawfully as stated herein.

187. As a direct result of Conoco's violation of the Consumer Credit Protection Act, 15 USC § 1691 et seq., Harara has been, and will continue to be, injured and damaged in an amount to be proven at trial.

188. In accordance with provisions the Consumer Credit Protection Act, 15 USC § 1691 et seq., Harara is entitled to and hereby requests, in addition to his actual damages, to recover punitive damages as prescribed under the Consumer Credit Protection Act, 15 USC § 1691 et seq.

189. In accordance with provisions the Consumer Credit Protection Act, 15 USC § 1691 et seq., Harara is entitled and hereby requests, in addition to his actual and punitive damages, to recover costs of the action and attorney's fees.

190. In accordance with provisions the Consumer Credit Protection Act, 15 USC § 1691 et seq., Harara is entitled to and hereby requests, in addition to all remedies sought above, a

37

declaratory relief against Conoco as is necessary to enforce the requirements imposed by 15 USC § 1691 et seq., in favor of Harara and all similarly aggrieved applicants.

## EIGHTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(ACTUAL AND STATUTORY DAMAGES FOR VIOLATIONS OF THE HOLDEN CREDIT

DENIAL DISCLOSURE ACT OF 1976 – CALIFORNIA CIVIL CODE § 1787.2)

191.   Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

192.   Harara is informed and believes, and based thereon alleges, that Conoco is a "creditor" within the meaning of the California civil code § 1787.2.

193.   Harara is informed and believes, and based thereon alleges, that Harara is a "applicant" within the meaning of the California civil code § 1787.2.

194.   Harara is informed and believes, and based thereon alleges, that at the time of his request for a franchise from Conoco, he applied, by completing and signing a written application, for an extension of credit from Conoco in compliance with Conoco's requirements for its extension of credit and provided it with information relating to Harara's personal financial record, personal income tax returns, personal credit history and reports, and personal credit worthiness.

195.   Harara is informed and believes, and based thereon alleges, that subsequent to submitting his written application for credit from Conoco, Harara obtained credit and continued to use it until the year 2002.

196.   Harara is informed and believes, and based thereon alleges, that in the year 2002, Conoco terminated Harara's extended credit. Such termination was not based on Harara's lack of credit qualification or an adverse change to his personal credit history or worthiness.

38

197.  In violation of Civil Code Section 1787.2(b), such termination was not accompanied either by a statement in writing of the reasons for the termination or by a written disclosure of Harara's right to a statement of the reasons for the credit termination and denial and the identity and address of the person from whom or office from which the statement could be obtained.

198.  Harara is informed and believes, and based thereon alleges, that Conoco has unlawfully, repeatedly, and knowingly violated the rights afforded him under the California Civil Code Section 1787.2 by terminating Harara's ongoing credit, by denying his applications for renewed credit, and/or by acting unlawfully as stated herein.

199.  As a direct result of Conoco's violation of the California Civil Code § 1787.2, Harara has been, and will continue to be, injured and damaged in an amount to be proven at trial.

200.  In accordance with provisions the California Civil Code § 1787.3, Harara is entitled to and hereby requests, in addition to his actual damages, to recover punitive damages as prescribed under the California Civil Code § 1787.3.

201.  In accordance with provisions the California Civil Code § 1787.3, Harara is entitled to and hereby requests, in addition to his actual and punitive damages, to recover costs of the action and attorney's fees as prescribed under the California Civil Code § 1787.3.

**NINTH CLAIM FOR RELIEF**

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(ACTUAL AND STATUTORY DAMAGES FOR VIOLATIONS OF

CALIFORNIA BUSINESS AND PROFESSIONS CODE §21140, ET SEQ.)

202.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

SECOND AMENDED COMPLAINT                                    CASE NO. C04-0515 BZ

203.  Harara is informed and believes, and based thereon alleges, that Conoco is a "franchisor" within the meaning of California Business and Professions Code § 21140.

204.  Harara is informed and believes, and based thereon alleges, that Harara is a "franchisee" within the meaning of California Business and Professions Code § 21140.

205.   Harara is informed and believes, and based thereon alleges, that Harara's Station and petroleum marketing franchise is a "leased marketing premises" within the meaning of California Business and Professions Code § 21140.

206.  Harara is informed and believes, and based thereon alleges, that California Business and Professions Code § 21140, et seq., prohibits a franchisor, such as Conoco, from withholding consent to sale, transfer, or assignment of a franchise, such as Harara's when such assignment is not made or intended to be made in contravention of a nonrenewal or termination that was notified pursuant to the provisions of the PMPA.

207.  Harara is informed and believes, and based thereon alleges, that he intended sell his business (excluding any interest in the franchise or the Agreement) to Phan on or about December 17, 2003.

208.  Harara is informed and believes, and based thereon alleges, that he intended assign the Second Offer to purchase the property of the Station pursuant to its terms to Phan on or about December 17, 2003.

209.  Harara is informed and believes, and based thereon alleges, that along the above-referenced sale of the business and assignment of the Second Offer to purchased the property, Harara had to transfer his remaining interest in the unexpired portion of the nonrenewed franchise that extended from approximately December 17, 2003, to April 30, 2004.

40

210.  Harara is informed and believes, and based thereon alleges, that such transfer of Harara's remaining interest in the unexpired portion of the nonrenewed franchise that was not to exceed four months and was necessary in order to ensure an expeditious transfer of Harara's running business and Phan's uninterrupted possession of a continuing operation.

211.  Harara is informed and believes, and based thereon alleges, that Conoco has violated California Business and Professions Code § 21140, et seq., in that it has intentionally interfered with the sale, transfer, and assignment of Harara's remaining interest in the unexpired portion of the nonrenewed franchise.

212.  Harara is informed and believes, and based thereon alleges, that Conoco refusal to consent to Harara's assignment of the Second Offer has violated California Business and Professions Code § 21140, et seq., in that it intentionally interfered with the sale, transfer, and assignment of Harara's remaining interest in the unexpired portion of the nonrenewed franchise.

213.  Harara is informed and believes, and based thereon alleges, that by obligating Conoco to consent to the transfer of Harara's remaining interest in the unexpired portion of the nonrenewed franchise that was not exceed four months through its issuance of a temporary franchise or trial franchise or through any other acceptable measure or procedure to Conoco, California Business and Professions Code § 21140, et seq., did not impose upon Conoco limitations that would alter the PMPA's nonrenewal process or procedure as it took effect and was applied to Harara.

214.  Harara is informed and believes, and based thereon alleges, that by denying Harara the rights and protections afforded to him by California Business and Professions Code § 21140, et seq., which rights and protections are not in contravention with the requirements of the PMPA

41

nonrenewal process under the relevant circumstances as it took effect and was applied to Harara, Harara and all similarly situated franchisees will never be able to fully exploit and take advantage of the bona fide offer requirement to purchase the "leased marketing premises" that is afforded to them as a protection under the PMPA.

215.   By withholding its consent to assign the Second Offer under the relevant circumstances, Conoco has violated California Business and Professions Code § 21140, et seq., in that it withheld its consent to Harara's sale, transfer, or assignment of his remaining interest in the unexpired portion of the nonrenewed franchise in order to deliberately and fraudulently force Harara to abandon his business (excluding the franchise and any interest in the Agreement) at the expiration date of the Agreement for no return on his investment while, simultaneously, arranging a sale and transfer of the premises of the Station to a third party in order to appropriate the value of the goodwill of Harara's business from such third party.

216.   By withholding its consent to assign the Second Offer, Conoco has violated California Business and Professions Code § 21140, et seq., in that it withheld its consent to Harara's sale, transfer, or assignment of his remaining interest in the unexpired portion of the nonrenewed franchise in order to deliberately and fraudulently force prospective buyers of Harara's business (excluding the franchise and any interest in the Agreement) to directly contact Conoco's Real Estate Department, which in turn will arrange for the sale to such prospective buyers to occur concurrently with the expiration of Harara's franchise so as to transfer a functioning and operative business to such prospective buyers for a higher price than Conoco would have collected had it sold a non-operating business at an abandoned property.

217.   As a direct result of Conoco's violation of California Business and Professions Code § 21140, et seq., Harara has been, and will continue to be, injured and damaged in an amount to

42

be proven at trial, including, but not limited to, loss of goodwill, loss of business, loss of improvements to the Station, loss of merchandise, loss of equipment, loss of benefits of the proceeds from the sale of Harara's business and the Station, incurring further losses from the continued depletion of Harara's financial resources and the loss of ability to operate the Station, and loss due to Harara's inability to meet financial obligations and debts incurred to improve the structure of the Station.

218.  In accordance with provisions of California Business and Professions Code § 21140.4, Harara is entitled, in addition to his damages, to recover and request three times the damages he sustained as a result of Conoco's violations of California Business and Professions Code § 21140, et seq.

### TENTH CLAIM FOR RELIEF

(Against All Defendants)

(ACTUAL AND STATUTORY DAMAGES FOR VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §21140, ET SEQ.)

219.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

220.  Harara is informed and believes, and based thereon alleges, that Conoco is a "franchisor" within the meaning of California Business and Professions Code § 21140.

221.  Harara is informed and believes, and based thereon alleges, that Harara is a "franchisee" within the meaning of California Business and Professions Code § 21140.

222.  Harara is informed and believes, and based thereon alleges, that Harara's Station and petroleum marketing franchise is a "leased marketing premises" within the meaning of California Business and Professions Code § 21140.

43

223.   Harara is informed and believes, and based thereon alleges, that California Business and Professions Code § 21140, et seq., was enacted to promote the well being of California service station franchisees, which is essential to the fair and efficient of a free market economy in the petroleum industry.

224.   The California Business and Professions Code § 21140 et seq., provides in relevant parts as follows:

> 21140.2.  From the effective date of this section it shall be illegal for any franchisor by any action to require a franchisee to purchase only those tires, batteries, motor oil, and other automotive accessories sold by the franchisor.  A franchised retail gasoline dealer may sell any tires, batteries, motor oil, and other automotive accessories as may be available to him or her for retail sale.

> 21140.3.  The franchisor's executive officer, representative, or agent of the franchisor who negotiates any contract in violation of this chapter or who otherwise coerces a franchisee in violation of this chapter shall be subject to a civil penalty of up to one hundred thousand dollars ($100,000) for each offense. That penalty, reasonable attorney fees and costs of the suit shall be assessed and recovered in a civil action brought by the Attorney General or by any district attorney, county counsel, or city attorney in any court of competent jurisdiction. If brought by a district attorney or county counsel, the entire amount of the penalty shall be paid to the treasurer of the county in which the judgment was entered.  If brought by the Attorney General, one-half of the penalty, attorney fees, and costs of the suit shall be paid to the treasurer of the county where the action was brought and one-half shall be paid to the State Treasurer.  If brought by a city attorney, one-half of the penalty, attorney fees, and costs of the suit shall be paid to the treasurer of the county and one-half to the city.

> 21140.4.  Any person who is injured in his business or property by reason of a violation of this chapter may sue therefor in any court having jurisdiction in the county where the defendant resides or is found, or any agent resides or is found, or where service may be obtained, without respect to the amount in controversy, and to recover three times the damages sustained by him, and shall be awarded attorneys' fees together with the costs of the suit. Any action brought pursuant to this section shall be commenced within four years after the cause of action accrued.