225. Harara is informed and believes, and based thereon alleges, that Conoco and its agent and representative Masterton instructed and required Harara over the past two years, in violation of the California Business and Professions Code § 21140.2, to purchase from Conoco or its retailers and offer for sale and sell to the general public only 76-branded motor oil.

226. Harara is informed and believes, and based thereon alleges, that Conoco and its agent and representative Masterton coerced Harara over the past two years, in violation of the California Business and Professions Code § 21140 et seq., to purchase from Conoco or its retailers and offer for sale and sell to the general public only 76-branded motor oil.

227. Harara is informed and believes, and based thereon alleges, that Masterton has directed and instructed Harara or his agents to remove from the Station's shelves Chevron-branded motor oil and replace it with only 76-branded motor oil.

228. Harara is informed and believes, and based thereon alleges, that Masterton has informed Harara or his agents that selling Chevron-branded motor oil in a 76 franchise gas station was "unsightful, would damage and distort the image that 76 demand[ed] of its dealers, and would not be good for other 76 dealers." When informed by Harara's agent that "all brands of motor oil were of the same quality," Masterton responded by stating that "the colors did not match." Harara's agent responded by stating that "the Chevron brand had blue in it [corresponding to the blue color in the 76-logo]." Masterton replied that the motor oil containers sold at the Station should "have all colors match with the 76-logo colors and must have the ball." Harara's agent complained to Masterton about the high price of 76-branded motor oil and that the profit margin was much less than the other brands. Consequently, Masterton informed Harara's agent to contact a 76-motor oil distributor who would supply him with competitive prices.

45

229.  Harara is informed and believes, and based thereon alleges, that Masterton instructed Harara or his agents to contact a specific Conoco motor oil distributor to purchase 76-motor oil.

230.  Harara is informed and believes, and based thereon alleges, that the 76-motor oil distributor provided by Masterton did not offer Harara motor oil that was reasonably priced. To the contrary, such 76-branded motor oil was high priced in comparison to the price of 76-motor oil offered by other distributors and in comparison with the price of other-branded motor oil retailers who directly sold to the general public.

231.  Harara is informed and believes, and based thereon alleges, that Masterton informed Harara or his agents that Masterton would not want to see Chevron-branded motor oil on the Station's shelves during his next visit to the Station and that all such motor oil should be replaced with only 76-branded motor oil.

232.  Except for Masterton instructions and directed orders not to stock and sell any motor oil at the Station but that of the 76-branded motor oil, Harara would have sold, and was selling, other non-76 branded motor oil.

233.  Harara felt coerced and obligated at the instructions and direction of Masterton to only (i) purchase and stock any needed motor oil from that specific retailer proposed by Masterton (ii) purchase 76-branded motor oil, and (iii) offer for sale and sell to the general public 76-branded motor oil.

234.  Harara is informed and believes, and based thereon alleges, that Masterton and Conoco unlawfully, maliciously, willfully, repeatedly, and knowingly violated the California Business and Professions Code § 21140 et seq., by requesting and coercing Harara to purchase from Conoco or its retailers and offer for sale and sell to the general public only 76-branded motor oil, and/or by acting unlawfully as stated in herein.

SECOND AMENDED COMPLAINT                                                    CASE NO. C04-0515 BZ

235.  As a direct result of Conoco's violation of the California Business and Professions Code § 21140 et seq., Harara has been injured and damaged in an amount to be proven at trial in his business and property for a period that is more than two years but not less than three years, including, but not limited to, loss of business, loss of merchandise, loss of the proceeds and the benefits of the proceeds from the sale of a variety of brands, loss of the proceeds and the benefits of the proceeds from the sale of cheaper products, and loss of the proceeds and the benefits of the proceeds from the sale of better products than 76-branded motor oil.

236.  Harara is informed and believes, and based thereon alleges, that Harara has suffered all of the above-listed damages, and other damages, that are causally related to the agreements, conspiracies, actions, and/or inactions of the above-named defendants in an amount to be proven at trial. Harara is further informed and believes and on that basis alleges that he will continue to suffer further damages that are causally related to the agreements, conspiracies, actions, and/or inactions of the above-named defendants in an amount that is presently unascertainable and unknown to Harara. Harara will seek a leave of Court to amend this Second Amended Complaint when such amounts are ascertained and become known to him.

237.  Harara is informed and believes, and based thereon alleges, that Conoco and Masterton are liable for all damages suffered by Harara arising from the above-mentioned statutory violations due to its conduct or the conduct of its agents.

238.  In accordance with provisions the California Business and Professions Code § 21140 et seq., Harara is entitled, in addition to his actual damages, to recover three times the damages sustained by him.

239.  In accordance with provisions the California Business and Professions Code § 21140 et seq., Harara is entitled, in addition to his actual and punitive damages, to be awarded attorneys' fees together with the costs of the suit.

## ELEVENTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(DAMAGES FOR BREACH OF CONTRACT)

240.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

241.  Harara is a party to a Motor Fuel Station Lease (was referred to through out this document as the "Agreement") entered into with Conoco. A true and correct copy of the Agreement is attached to the First Amended Complaint and incorporated herein by reference as *Exhibit-1*.

242.  Harara is informed and believes, and based thereon alleges, that the Agreement is a contract of adhesion under California law. Bolter v. Superior Court, 87 Cal.App.4th 900 (2001).

243.  Harara has duly performed all conditions, covenants, and promises required to be performed by him under the Agreement in accordance with its terms and conditions, except for those acts that have been prevented, delayed, or excused by acts or omissions of defendants.

244.  Harara is informed and believes, and based thereon alleges, that the Agreement requires Conoco to accept Harara's payments by credit for all of his motor fuel purchases.

245.  Harara is informed and believes, and based thereon alleges, that Conoco has refused to accept Harara's payments by credit for all of his motor fuel purchases.

246.  Harara is informed and believes, and based thereon alleges, that Conoco's denial of Harara's payments by credit was not based on good faith judgment and was not made in the

48

normal course of business but was motivated by personal grudges and individual animosity by Conoco's representative Masterton, who directed Conoco's Credit Department to deny any request by Harara for payment by credit.

247. Harara is informed and believes, and based thereon alleges, that Conoco has demanded cash payment in advance for all deliveries of motor fuel purchases while it continued to retain Harara's substantial security deposit.

248. Harara is informed and believes, and thereon alleges, Conoco's termination of Harara's right to purchase motor fuel by credit violated the terms and requirements of Article 16 (Terms of Payment/Credit card Requirements) of the Agreement.

249. Harara is informed and believes, and thereon alleges, that, in addition to the above refusal to accept Harara's payments by credit, Conoco terminated Harara's right to obtain electronic access to his account over the Internet, thus preventing Harara from accurately balancing his financial books and records and making it impossible for him to effectively manage and profitably operate the Station.

250. Harara is informed and believes, and based thereon alleges, that Conoco's denial of payment by credit and cancellation of his online access to his account to review his history of purchases, payments, disbursements, and other vital financial information to maintain books and records relating to his account that were collected and complied by Conoco was a material breach of the Agreement.

251. Although Harara has made repeated requests to Conoco to cure said breach, Conoco failed and refused to extend credit, restore his online access to his financial information, or provide him with the necessary financial information to maintain accurate books and records.

SECOND AMENDED COMPLAINT                                    CASE NO. C04-0515 BZ

252.  As a direct and proximate result of Conoco's failure to cure such breach, Harara suffered

damages, in an amount to be determined according to proof.


### TWELFTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(DAMAGES FOR BREACH OF CONTRACT)

253.  Harara re-alleges and incorporates into this cause of action each and every allegation

contained in this Second Amended Complaint as if the same were set out at length herein.

254.  Harara is a party to a Motor Fuel Station Lease (was referred to through out this

document as the "Agreement") entered into with Conoco. A true and correct copy of the

Agreement is attached to the First Amended Complaint and incorporated herein by reference as

*Exhibit-1.*

255.  Harara is informed and believes, and based thereon alleges, that the Agreement is a

contract of adhesion under California law. Bolter v. Superior Court, 87 Cal.App.4th 900 (2001).

256.  Harara has duly performed all conditions, covenants, and promises required to be

performed by him under the Agreement in accordance with its terms and conditions, except for

those acts that have been prevented, delayed, or excused by acts or omissions of defendants.

257.  Harara is informed and believes, and based thereon alleges, that the Agreement requires

Conoco to timely deliver upon Harara's order motor to the Station.

258.  Harara is informed and believes, and based thereon alleges, that Conoco has refused to

timely deliver motor fuel to the Station upon Harara's order.

50

259. On or about January 26, 2004, after repeated denial of prior phone orders for delivery, Harara placed a written order for motor fuel delivery. Conoco failed to deliver any such motor fuel.

260. Harara is informed and believes, and based thereon alleges, that Conoco's refusal to deliver motor fuel was not excused or unintentional, was not caused by negligence, and was not made in the normal course of business.

261. Harara is informed and believes, and based thereon alleges, that Conoco's refusal to deliver motor fuel was intentional, was based on bad faith, and was motivated by personal grudges and individual animosity by Conoco's representative Masterton, who directed Conoco's agents and representatives to refuse providing Harara with any explanation for Conoco's requested advanced payments, demand payments before due dates, delay releasing fully-paid orders of motor fuel, continue demanding advanced payments for unknown, uncorroborated, unsubstantiated, or unidentified purposes.

262. In response to Conoco's continued the aforementioned unfair and unlawful practices for months, on or about January 26, 2004, Harara requested in writing that Conoco perform under the Agreement and supply the Station with motor fuel.

263. Harara is informed and believes, and based thereon alleges, that Conoco refused to deliver motor fuel in response to Harara written request of January 26, 2004.

264. On or about February 11, 2004, Conoco issued a notice of default to Harara based on its allegation of Harara's failure to stock for sale two grades of motor fuel.

265. On or about February 23, 2004, Conoco sent to Harara by personal service a notice of repossession of the Station on March 1, 2004, at 12:00 PM for the alleged failure to stock for sale motor fuel, pay due balances, and comply with local laws and regulations.

51

266. On or about February 23, 2004, Harara sent by facsimile and certified mail a notice of surrender of the Station on March 1, 2004, at 9:00 AM, to Conoco pursuant to the terms of the Agreement and based on Conoco's failure to supply Harara with motor fuel.

267. Harara is informed and believes, and based thereon alleges, that Conoco's acts as described herein and as carried out by its representative Masterton and others were in furtherance of a scheme to drive Harara out of business and appropriate his business goodwill.

268. Harara is informed and believes, and based thereon alleges, that Conoco's refusal to deliver motor fuel to Harara was a material breach of the Agreement.

269. Although Harara has made repeated requests to Conoco to cure said breach, Conoco failed and refused to do so. As a direct and proximate result of Conoco's failure to cure such breach, Harara suffered damages, in an amount to be determined according to proof.

## THIRTEENTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(DAMAGES FOR BREACH OF CONTRACT)

270. Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

271. Harara entered into the Agreement with Conoco for his leasing and occupancy of the Station and for Conoco's supply with 76-branded fuel on January 16, 2001, which was set to expire on April 30, 2004.

272. Harara has duly performed all conditions, covenants, and promises required to be performed by him under the Agreement in accordance with its terms and conditions, except for those acts that have been prevented, delayed, or excused by acts or omissions of defendants.

52

273.  Harara is informed and believes, and thereon alleges, that during the effective term of the Expired Agreement and the effective term of the Agreement and continuously until March 1, 2004, Conoco failed to pay Harara for certain retail credit sales that were made by Harara by accepting Union 76 retail credit card system at the Station and were authorized and performed in accordance with the terms of TOSCO's Service Station Credit Card Guide ("Guide") to customers presenting a valid Union 76 credit card or a credit card issued by a company listed in the Guide. Such Conoco's failure to pay is in violation of the Credit Card Sales provisions under Article 17 (Credit Card Sales) of the Agreement.

274.  Harara is informed and believes, and thereon alleges, that Conoco's failure to pay Harara for certain credit sales as alleged herein was a material breach of the Agreement and the Expired Agreement.

275.  Although Harara has made repeated requests to Conoco to cure said breach, Conoco failed and refused to do so.

276.  As a direct and proximate result of Conoco's failure to cure such breach, Harara suffered damages, in an amount to be determined according to proof.

## FOURTEENTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(DAMAGES FOR BREACH OF CONTRACT)

277.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

278.  Harara is a party to the Second Offer.

53

SECOND AMENDED COMPLAINT                                              CASE NO. C04-0515 BZ

279. Pursuant to the Second Offer and amendments thereto changing the amount of cash required to be deposited in the escrow and extending the closing date of the escrow, an escrow was opened with LandAmerica.

280. Harara is informed and believes, and based thereon alleges, that the Second Offer is a contract of adhesion under California law. Bolter v. Superior Court, 87 Cal.App.4th 900 (2001).

281. Harara is informed and believes, and based thereon alleges, that the Second Contract is assignable in accordance with its terms.

282. In accordance with the terms of the Second Offer, on January 16, 2004, Harara called Real Estate Manager, Mathews, to inform him that he would be assigning the Second Offer to a third party for consideration and that Harara expected and arranged to sell to such third party, along with the assignment of the Second Offer, all property and goodwill Harara had in the Station; therefore, Harara requested Mathews to obtain Conoco's consent to Harara's assignment of the Second Offer. Mathews asked Harara to make such request in writing.

283. In accordance with the terms of the Second Offer and at Mathews' directions, on January 18, 2004, Harara requested in writing Conoco's consent to Harara's assignment of the Second Offer based on the circumstances alleged herein. In response, Conoco refused to grant such requested consent.

284. As such, Harara informed Phan through his agent Hendren that Harara would not be able to move forward with the sale of the Station and assignment of the Second Offer due to Conoco's refusal to consent to such assignment.

285. Harara is informed and believes, and thereon alleges, that Conoco informed him that it cancelled the escrow on two different dates, the first was on January 16, 2004, and the second was on February 6, 2004.

54

286. As a direct and proximate result of Conoco's cancellation of escrow, Harara suffered damages, in an amount to be determined according to proof.

### FIFTEENTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(FRAUD AND DECEIT – INTENTIONAL MISREPRESENTATION OF FACTS)

287. Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

288. On or about May 28, 2003, Mathews informed Harara that the selling price proposed in the Second Offer was in fact inflated by Seventy-Five Thousand Dollars ($75,000.00) and that Conoco would credit such amount to Harara.

289. Harara is informed and believes, and based thereon alleges, that on May 22, 2003, and August 7, 2003, Mathews represented to Harara that the Second Offer was assignable and that Conoco's consent to the assignability of such Conoco's offers for the sale of real property was common and had been done by Conoco repeatedly in the past.

290. Harara reasonably relied on Conoco's representations that : (i) the selling price proposed in the Second Offer was to be reduced by Conoco by Seventy-Five Thousand Dollars ($75,000.00) and (ii) the Second Offer would be assignable by him, and was induced to suspend his efforts to seek financing to purchase or purchase the Station in accordance with the terms of the Second Offer.

291. Harara is informed and believes, and based thereon alleges, that when Mathews made the representations described herein, he knew such representations were not going to be performed by Conoco as he promised to Harara.

SECOND AMENDED COMPLAINT                                      CASE NO. C04-0515 BZ

292.  Harara is informed and believes, and based thereon alleges, that when Mathews made the representations described herein, he made these representations with the intention to deceive and defraud Harara and to induce Harara to act in reliance on these representations in the manner alleged herein and/or with the expectation that Harara would so act.

293.  Harara is informed and believes, and based thereon alleges, that Mathews' representations as set forth herein were in fact false.

294.  Harara is informed and believes, and based thereon alleges, that, at that time when Harara acted as alleged herein, he, was ignorant of the falsity of said representations, did not know that them to be false, and believed them to be true.

295.  Harara was induced to act and acted in justifiable reliance upon Mathews' conduct and the truth of his representations as described above.

296.  Had Harara known of the falsity of Mathews' representations as described above, he would not have taken the actions or acted in the manner herein alleged.

297.  Harara's reliance upon Mathews' conduct and the truth of his representations as described in above was justified because Mathews was an agent of Conoco who appeared to have and actually had the authority to decide and implement the statements made to Harara.

298.  As a direct and proximate result of Mathews' fraudulent conduct as herein alleged, Harara was induced to and did suspend his efforts to seek financing or seek lesser financing to purchase or purchase the Station in accordance with the terms of the Second Offer, by reason of which Harara suffered damages, and continue to suffer damages, in an amount to be determined according to proof.

299.  Mathews' aforementioned conducts constituted intentional misrepresentation, deceit, and concealment of a material facts known to them that were made with the intention to deprive

56

Harara of property and his legal rights and cause injury. Each of Mathews' representations subjected Harara to a cruel and unjust hardship in conscious disregard of his rights, so as to justify an award of exemplary and punitive damages.

### SIXTEENTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(FRAUD AND DECEIT – NEGLIGENT MISREPRESENTATION OF FACTS,

CALIFORNIA CIVIL CODE § 1710(2))

300.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

301.  On or about May 28, 2003, Mathews informed Harara that the selling price proposed in the Second Offer was in fact inflated by Seventy-Five Thousand Dollars ($75,000.00) and that Conoco would credit such amount to Harara.

302.  Harara is informed and believes, and based thereon alleges, that on May 22, 2003, and August 7, 2003, Mathews represented to Harara that the Second Offer was assignable and that Conoco's consent to the assignability of such Conoco's offers for the sale of real property was common and had been done by Conoco repeatedly in the past.

303.  Harara reasonably relied on Conoco's representations that : (i) the selling price proposed in the Second Offer was to be reduced by Conoco by Seventy-Five Thousand Dollars ($75,000.00) and (ii) the Second Offer would be assignable by him, and was induced to suspend his efforts to seek financing to purchase or purchase the Station in accordance with the terms of the Second Offer.

SECOND AMENDED COMPLAINT                                              CASE NO. C04-0515 BZ

304. Harara is informed and believes, and based thereon alleges, that when Mathews made the representations described herein, he did not have any reasonable grounds for believing that such representations were true.

305. Harara is informed and believes, and based thereon alleges, that when Mathews made the representations described herein, he made these representations with the intention to deceive and defraud Harara and to induce Harara to act in reliance on these representations in the manner alleged herein and/or with the expectation that Harara would so act.

306. Harara is informed and believes, and based thereon alleges, that Mathews' representations set forth above, were in fact false.

307. Harara is informed and believes, and based thereon alleges, that, at that time when Harara acted as alleged herein, he, was ignorant of the falsity of said representations, did not know that them to be false, and believed them to be true.

308. Harara was induced to act and acted in justifiable reliance upon Mathews' conduct and the truth of his representations as described in Paragraphs 244 through 253 above.

309. Had Harara known of the falsity of Mathews' representations as described above, he would not have taken the actions or acted in the manner herein alleged.

310. Harara's reliance upon Mathews' conduct and the truth of his representations as described in above was justified because Mathews was an agent of Conoco who appeared to have and actually had the authority to decide and implement the statements made to Harara.

311. As a direct and proximate result of Mathews' negligent misrepresentations as herein alleged, Harara was induced to and did suspend his efforts to seek financing or seek financing for a lesser amount to purchase or purchase the Station in accordance with the terms of the

58

Second Offer, by reason of which Harara suffered damages, and continue to suffer damages, in an amount to be determined according to proof.

## SEVENTEENTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(BREACH OF CONTRACTUAL

COVENANT OF GOOD FAITH AND FAIR DEALING)

312.    Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

313.    Harara is a party to a Motor Fuel Station Lease (was referred to through out this document as the "Agreement") entered into with Conoco.

314.    Under Section 22 (Major Repairs) and Section 23 (Alterations and Business Changes) of the Agreement, Conoco was required to make all changes or replacements to the Station that were necessary for its continued profitable operations.

315.    Based on Conoco' representations, and with Conoco's prior consent, Harara has performed improvements, changes, and replacements to the Station that resulted in substantial increase to Conoco's income derived from the Station.

316.    Based on Conoco's representations at the time of making the improvements, Harara had a choice of getting all his costs for the improvements, changes, and replacements made to the Station be reimbursed immediately or recouping the same value from an unchanged and fixed monthly rent over a period of time until the full value of the cost of improvements was returned.

SECOND AMENDED COMPLAINT                                    CASE NO. C04-0515 BZ

317. Harara is informed and believes, and based thereon alleges, that before Harara was able to recoup the value of the cost of improvements he made to the property of the Station, Conoco decided to nonrenew the Agreement.

318. Harara is informed and believes, and based thereon alleges, that in response to Conoco's decision to nonrenew, Harara requested to be reimbursed for the full cost of the improvements, changes, and replacements he made to the property of the Station as was required under the terms of the Agreement and pursuant to the parties' agreement as alleged herein.

319. Harara is informed and believes, and based thereon alleges, that Conoco, on January 16, 2004, refused to reimburse Harara for the costs of the improvements, changes, and replacements he made to the property of the Station.

320. Conoco breached its contractual covenant of good faith and fair dealing by acting arbitrarily and in bad faith in refusing to reimburse Harara for the cost of the improvements he made to the property of the Station after having failed to return the value of such cost based on an unchanged monthly rent.

321. Conoco has failed to act in good faith, in accordance with the reasonable commercial standards of fair dealings in the trade, and in accordance with the covenants and promises under the Agreement.

322. Harara has duly performed all conditions, covenants, and promises required to be performed under the Agreement, except for those acts that have been prevented, delayed, or excused by Conoco's acts or omissions.

323. By engaging in the conduct set forth herein, Conoco has breached its contractual covenant of good faith and fair dealing.

324. As a direct and proximate result of this breach of Conoco's contractual covenant of good faith and fair dealing as herein alleged, Harara lost the value of the cost of improvements he made to the property of the Station in an amount to be proven at trial.

325. Harara is entitled to and requests attorneys' fees, interest at the prevailing legal rate from the time when the improvements were completed, costs of suit, and all further relief as the Court may deem proper.

## EIGHTEENTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(DAMAGES FOR INTENTIONAL INTERFERENCE

WITH PROSPECTIVE ECONOMIC ADVANTAGE)

326. Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

327. In or about December 2003, Harara initiated significant efforts to sell his business goodwill, equipment, and inventory at the Station to several potential purchasers.

328. On or about December 17, 2003, Harara accepted an offer to sell his business goodwill, equipment, and inventory at the Station to Phan, who was represented by Hendren, an agent of a business brokerage firm called Business Team. The offer was contingent on Harara's assignment, and Conoco's consent to Harara's assignment, of the Second Offer, which was to be performed in accordance with its terms.

329. Harara is informed and believes, and thereon alleges, that Phan was aware of Conoco's nonrenewal of the Agreement effective April 30, 2004, and did not seek to be a franchisee of Conoco.

61

330.  Harara is informed and believes, and thereon alleges, that Phan planned to operate as an independent motor fuel retailer upon his purchase of Harara's business.

331.  Harara and Phan executed agreements for the sale of the business goodwill, equipment, and inventory at the Station to be consummated with the concurrent assignment of the Second Offer upon Conoco's consent.

332.  Harara informed Conoco that he was suspending his efforts to personally finance the purchase or purchase the Station pursuant to the Second Offer and, instead, he sought to assign the Second Offer pursuant to its terms and sell his business goodwill, inventory, and equipment to a third party.

333.  During several conversation in the months of December 2003 and January 2004, Harara informed Mathews of his intent to assign the Second Offer and sell his business goodwill, inventory, and equipment to a third party.  Mathews represented to Harara that the Second Offer was assignable and that Conoco's consent to the assignability of such Conoco's offers for the sale of real property was common and had been done by Conoco repeatedly in the past.

334.  On or about January 16, 2004, Harara called Mathews and informed him that Harara would be assigning the Second Offer to a known third party for consideration and that Harara expected and arranged to sell to such known third party, along with the assignment of the Second Offer, all property and goodwill Harara had in the business good will, equipment, and inventory at the Station. Harara asked Mathews to obtain Conoco's consent to Harara's assignment. Mathews asked Harara to make such request in writing.

335.  On or about January 18, 2004, Harara requested, via an electronic message, facsimile, and mail to Mathews, Conoco's consent to Harara's assignment of the Second Offer to a known third party.

SECOND AMENDED COMPLAINT                                      CASE NO. C04-0515 BZ

336. On or about January 19, 2004, Conoco, through its employee Mathews, refused to consent to such assignment in violation of the terms of the Second Offer.

337. Conoco intentionally engaged in wrongful conduct that was designed to interfere with and disrupt Harara's relationship with Phan by withholding consent to Harara's assignment of the Second Offer, thus depriving Harara from the sale of his business goodwill, inventory, and equipment at the Station.

338. Conoco's planned, deliberate, and calculated refusal to consent to Harara's assignment of the Second Offer was designed to force, and did in fact force, Phan to approach Conoco in order to purchase the Station directly from Conoco.

339. Conoco's planned, deliberate, and calculated refusal to consent to Harara's assignment of the Second Offer was designed to force Harara to abandon the Station and his goodwill, which were to be appropriated and transferred by Conoco for consideration to Phan or other third parties and would force Harara to abandon his attempts for reimbursements from Conoco for the improvements he made to the Station.

340. The economic relationship between Phan and Harara was actually interfered and disrupted leading to substantial suffering of economic harm and loss of business opportunity to Harara, which harm and loss were proximately caused by Conoco's acts and its intentional interference with Harara's prospective economic advantage. Conoco's aforementioned acts and its intentional interference with Harara's prospective economic advantage injured and damaged Harara in an amount to be determined according to proof, including, but not limited to, loss of his investment, loss of goodwill, loss of business, loss of improvements to the Station, loss of merchandise, loss of equipment, loss of benefits of the proceeds from the sale of Harara's business and the Station, incurring further losses from continued depletion of Harara's financial

63

resources and from his inability to operate the Station, loss due to Harara's inability to meet financial obligations and debts incurred to improve the structure of the Station, and loss to all third parties for failing to promptly and timely pay unpaid balances, and all and any consequential damages resulting from Conoco's unlawful actions.

341.   At all times herein, Conoco's conduct was malicious, oppressive, fraudulent, and designed to deprive Harara of his right to sell and convey the Station. Accordingly, Harara is entitled to punitive damages in an amount sufficient to deter further conduct as alleged herein according to proof.

## NINETEENTH CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(DAMAGES FOR NEGLIGENT INTERFERENCE

WITH PROSPECTIVE ECONOMIC ADVANTAGE)

342.   Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

343.   In or about December 2003, Harara initiated significant efforts to sell his business good will, equipment, and inventory at the Station to several potential purchasers.

344.   On or about December 17, 2003, Harara accepted an offer to sell his business goodwill, equipment, and inventory at the Station to Phan, who was represented by Hendren, an agent of a business brokerage firm called Business Team. The offer was contingent on Harara's assignment, and Conoco's consent to Harara's assignment, of the Second Offer, which was to be performed in accordance with its terms.

SECOND AMENDED COMPLAINT                                                     CASE NO. C04-0515 BZ

345.  Harara is informed and believes, and thereon alleges, that Phan was aware of Conoco's nonrenewal of the Agreement effective April 30, 2004, and did not seek to be a franchisee of Conoco.

346.  Harara is informed and believes, and thereon alleges, that Phan planned to operate as an independent motor fuel retailer upon his purchase of Harara's business.

347.  Harara and Phan executed agreements for the sale of the business goodwill, equipment, and inventory at the Station to be consummated with the concurrent assignment of the Second Offer upon Conoco's consent.

348.  Harara informed Conoco that he was suspending his efforts to personally finance the purchase or purchase the Station pursuant to the Second Offer and, instead, he sought to assign the Second Offer pursuant to its terms and sell his business goodwill, inventory, and equipment to a third party.

349.  During several conversation in the months of December 2003 and January 2004, Harara informed Mathews of his intent to assign the Second Offer and sell his business goodwill, inventory, and equipment to a third party.  Mathews represented to Harara that the Second Offer was assignable and that Conoco's consent to the assignability of such Conoco's offers for the sale of real property was common and had been done by Conoco repeatedly in the past.

350.  On or about January 16, 2004, Harara called Mathews and informed him that Harara would be assigning the Second Offer to a known third party for consideration and that Harara expected and arranged to sell to such known third party, along with the assignment of the Second Offer, all property and goodwill Harara had in the business good will, equipment, and inventory at the Station. Harara asked Mathews to obtain Conoco's consent to Harara's assignment. Mathews asked Harara to make such request in writing.

SECOND AMENDED COMPLAINT                                          CASE NO. C04-0515 BZ

351.  On or about January 18, 2004, Harara requested, via an electronic message, facsimile, and mail to Mathews, Conoco's consent to Harara's assignment of the Second Offer to a known third party.

352.  On or about January 19, 2004, Conoco, through its employee Mathews, refused to consent to such assignment in violation of the terms of the Second Offer.

353.  Conoco intentionally engaged in wrongful conduct that was designed to interfere with and disrupt Harara's relationship with Phan by withholding consent to Harara's assignment of the Second Offer, thus depriving Harara from the sale of his business goodwill, inventory, and equipment at the Station.

354.  Conoco's planned, deliberate, and calculated refusal to consent to Harara's assignment of the Second Offer was designed to force, and did in fact force, Phan to approach Conoco in order to purchase the Station directly from Conoco.

355.  Conoco's planned, deliberate, and calculated refusal to consent to Harara's assignment of the Second Offer was designed to force Harara to abandon the Station and his goodwill, which were to be appropriated and transferred by Conoco for consideration to Phan or other third parties and would force Harara to abandon his attempts for reimbursements from Conoco for the improvements he made to the Station.

356.  Harara is informed and believes, and thereon alleges, that Conoco failed to exercise reasonable care and engaged in such wrongful conduct that was designed to interfere with and disrupt Harara's relationship with Phan by withholding consent to Harara's assignment of the Second Offer, thus depriving Harara from the sale of his business good will, inventory, and equipment at the Station.

SECOND AMENDED COMPLAINT                                    CASE NO. C04-0515 BZ

357.  Conoco was negligent in its conduct in that it failed to exercise due care by engaging in the aforementioned wrongful conduct.

358.  The economic relationship between Phan and Harara was actually interfered and disrupted leading to substantial suffering of economic harm and loss of business opportunity to Harara, which harm and loss were proximately caused by Conoco's acts and its negligent interference with Harara's prospective economic advantage. Conoco's aforementioned acts and its negligent interference with Harara's prospective economic advantage injured and damaged Harara in an amount to be determined according to proof, including, but not limited to, loss of his investment, loss of goodwill, loss of business, loss of improvements to the Station, loss of merchandise, loss of equipment, loss of benefits of the proceeds from the sale of Harara's business and the Station, incurring further losses from continued depletion of Harara's financial resources and from his inability to operate the Station, loss due to Harara's inability to meet financial obligations and debts incurred to improve the structure of the Station, and loss to all third parties for failing to promptly and timely pay unpaid balances, and all and any consequential damages resulting from Conoco's unlawful actions.

## TWENTIETH CLAIM FOR RELIEF

### (Against All Defendants)

### (CONSPIRACY)

359.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

360.  Harara is informed and believes, and thereon alleges, that Masterton during the times alleged herein acted on behalf of himself by misusing the rights and privileges granted to him as a Conoco employee and agent.

67

361. Harara is informed and believes, and based thereon alleges, that Conoco is a corporation doing business in the State of California with a principal place of business in Houston, Texas. was formed through successive mergers and acquisitions among the following corporations: Phillips 66, Conoco Inc., Union 76, and Tosco Marketing Company.

362. Harara is informed and believes, and based thereon alleges, that, due to such successive mergers and acquisitions, Conoco's Bay Area local offices were closed and the local corporate hierarchy was shifted to a different location.

363. Harara is informed and believes, and based thereon alleges, that, due to such closure, Conoco's Bay Area certain Conoco employees, including Masterton, operated from their homes with little immediate supervision or reporting requirements.

364. Harara is informed and believes, and based thereon alleges, that Masterton's employment duties, as a dealer's representative, in the normal course of business, afforded him extraordinary discretion and authorities that led to his ability to interfere in the business and daily operations of dealers and franchisees.

365. Harara is informed and believes, and based thereon alleges, that, in addition to the normal extraordinary discretion and authorities afforded to Masterton, due to the successive mergers and the closure of Conoco's local offices, little, if any, immediate supervision of Masterton was exercised and insufficient reporting by Masterton was required.

366. Harara is informed and believes, and based thereon alleges, that such lack of local corporate structure, lack of local offices and corporate hierarchy to refer to beyond Masterton, lack of immediate supervisory control and governance, and lack of reporting requirements, led to Masterton's unfettered and unchallenged exercise of discretion, that was outside of Masterton's protocolled scope of employment, in matters relating to Conoco's performance of

68

the terms of the Agreement and in matters relating to Conoco's exercise of the franchise relationship with Harara.

367.  Harara is informed and believes, and based thereon alleges, that Masterton misused the rights and privileges granted to him by Conoco, and acted with no supervision outside his scope of employment, to achieve personal and individual purposes in that he sought to drive Harara out of business and force him to abandon and lose his business goodwill and the value of his improvements.

368.  Harara is informed and believes, and based thereon alleges, that based on the unfettered authorities given to Masterton as a dealer's representative and based on Conoco's failure to supervise his employment duties and actions, Masterton interfered with and caused damages to the running and daily activities of Harara's business and operation in areas relating to credit payments, access to Harara's financial records, orders, purchases and payments, timely deliveries, maintenance, reimbursements for credit card sales, and other accounting, deliveries, and sales activities.

369.  Harara is informed and believes, and based thereon alleges, that, due to the lack of a local corporate structure and based on Conoco's failed management procedures and reporting requirements, Harara's complaints and requests for Conoco's supervisory review were declined and Harara was referred to Masterton in every instant.

370.  Harara is informed and believes, and based thereon alleges, that Conoco's declining to act on behalf of its franchisee afforded Masterton unrestricted authority to interfere with Harara's business  and operation and convinced Masterton that he was able to drive Harara out of business.

69

371.  Harara is informed and believes, and based thereon alleges, that Conoco sought, through its Wholesale and Marketing Department, not to reimburse Harara for the improvements made to the Station.

372.  Harara is informed and believes, and based thereon alleges, that Conoco, through its Real Estate Department, refused to credit Harara for the reduction in the selling price agreed to by the parties, cancelled Harara's escrow, and refused to consent to Harara's assignment of the Second Offer in an effort to drive Harara out of business.

373.  Harara is informed and believes, and based thereon alleges, that Conoco sought, through its Wholesale and Marketing Department, refused to allow Harara to place orders for motor fuel and refused to deliver and supply Harara with motor fuel in order to use Harara's inability to retail motor fuel as a pretext for terminating his Agreement.

374.  Towards the end of the year 2003, the defendants and each of them knowingly and willfully conspired, engaged in a scheme, and agreed among themselves to drive Harara out of business, terminate the contract, appropriate his goodwill and the value of improvements made to the Station, and repossess the Station by doing the following:

   a.    terminating Harara's rights to obtain credit in accordance with the terms of the Agreement;

   b.    demanding that Harara pay cash in advance for all deliveries of motor fuel while retaining other sizable sums of cash advanced by Harara as a collateral;

   c.    failing to timely release delivery of motor fuel that had been paid for in advanced cash payments;

70

d.    terminating Harara's rights to access invoices, billings, and other pertinent financial information relating to purchases, costs, and sales, which are necessary for accurate reporting and for running a profitable business;

e.    denying Harara's repeated requests and applications for credit without providing Harara with a statement specifying the grounds of denial;

f.    demanding cash payments in advance for rent and other costs before any matures or becomes due;

g.    demanding cash payments in advance for unknown, uncorroborated, unsubstantiated, unidentified, and unexplained items and refusal to specify what such payments were due for;

h.    refusal to discuss any financial details of the due amounts with Harara, refusal to explain the financial records submitted for payments, refusal to explain the accounting practices showing how Conoco's financial officers calculated and reached the due amounts;

i.    referring all inquiries relating to credit and financial information to Masterton, who would refuse to answer any questions or deny any request;

j.    Conoco's refusal to reimburse Harara for the costs of the improvements;

k.    Conoco's refusal to credit Harara for the reduction in the selling price as agreed to by the parties;

l.    Conoco's refusal to assign the Second Offer;

m.    Conoco's refusal to accept Harara's orders for motor fuel, and its refusal to deliver and supply the same;

71

n.  Conoco's termination of the Agreement in violation of the terms of the PMPA and its repossession of the property of the Station;

o.  Conoco's marketing and offer to sell the Station to third parties while it had a pending escrow open for the sale of the same to Harara; Conoco's offer to sell the Station to third parties, communicate offers for sale of the Station to third parties, and advertise the Station for sale to third parties while an escrow for sale of the same Station was pending and in effect with Harara; and

p.  Conoco's marketing and offer to sell the Station to third parties for a price less than that stated in the Second Offer, communicate offers for sale of the Station to third parties for a price less than that stated in the Second Offer, and advertise the Station for sale to third parties for a price less than that stated in the Second Offer while an escrow for sale of the same Station was pending and in effect with Harara.

375.  Defendants and each of them did the acts and things herein alleged pursuant to, and furtherance of, the conspiracy and above-alleged agreement

376.  Defendants and each of them furthered the conspiracy by cooperation with or lent aid and encouragement to or ratified and adopted the acts of Masterton as set forth herein by deferring all decisions relating to credit, financing, delivery of motor fuel, and all other matters relating to the Station to Masterton and cooperated, aided, encouraged, ratified, and adopted all of his decisions and conclusions without further questionings or investigations.

377.  Harara is informed and believes, and thereon alleges, that the last overt act in pursuance of the above-described conspiracy occurred on or about February 23, 2004, on which date Conoco delivered to Harara its Notice of Termination.

72

SECOND AMENDED COMPLAINT

CASE NO. C04-0515 BZ

378.  As a direct and proximate result of Masterton's and Conoco's fraudulent conduct as herein alleged, Harara has been, and will continue to be, injured and damaged in an amount to be proven at trial, including, but not limited to, loss of his investment, loss of goodwill, loss of business, loss of improvements to the Station, loss of merchandise, loss of equipment, loss of benefits of the proceeds from the sale of Harara's business and the Station, incurring further losses from continued depletion of Harara's financial resources and his inability to operate the Station, loss due to Harara's inability to meet financial obligations and debts incurred to improve the structure of the Station, and loss to all third parties for failing to promptly and timely pay unpaid balances, and all and any consequential damages resulting from Conoco's unlawful actions.

379.  Defendants' intentional misrepresentations, which were made with the intent to damage Harara and cause irreparable injuries, as alleged herein constituted malice, oppression, and fraud as defined under California Civil Code § 3294(c). Defendants are therefore guilty of malice, oppression, and fraud in conscious disregard of plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish defendants and deter others from engaging in similar misconduct.

### TWENTY-FIRST CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE) (ACTUAL AND STATUTORY DAMAGES, RESTITUTION, AND EQUITABLE AND DECLARATORY RELIEF FOR UNFAIR BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, ET SEQ.)

380.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

73

SECOND AMENDED COMPLAINT                                        CASE NO. C04-0515 BZ

381. At all times relevant herein, Conoco was conducting, and continue to conduct, business under the laws of the State of California. In conducting such business, Conoco was obligated to comply with the laws of the State of California. Harara brings this action under California Business and Professions Code § 17200, et seq., on his behalf as an injured person affected by Conoco's acts described herein and on behalf of other similarly situated franchisees and the general public of California.

382. Harara is informed and believes, and based thereon alleges, that based on Conoco's conduct described above, Conoco has engaged in unfair and/or fraudulent practices against Harara, other similarly situated franchisees, and the people of California within the meaning and provisions of California Business and Professions Code § 17200, et seq.

383. Harara is informed and believes, and based thereon alleges, that Conoco's violations of California Business and Professions Code § 21140.2 and § 21140.3 in that it instructed and required Harara over the past two years to purchase from Conoco or its retailers and offer for sale and sell to the general public only 76-branded motor oil also constitute a violation of California Business and Professions Code § 17200, et seq.

384. Harara is informed and believes, and based thereon alleges, that Conoco's violations of the terms of payment and credit requirements terms as provided for under Article 16 (Terms of Payment/Credit card Requirements) of the Agreement constitute unfair and/or fraudulent practices against Harara, other similarly situated franchisees, and the people of California within the meaning and provisions of California Business and Professions Code § 17200, et seq.

385. Harara is informed and believes, and based thereon alleges, that Conoco's violations of the terms of TOSCO's Service Station Credit Card Guide ("Guide") that is referred to in Credit

74

Card Sales provisions under Article 17 (Credit Card Sales) of the Agreement constitute unfair and/or fraudulent practices against Harara, other similarly situated franchisees, and the people of California within the meaning and provisions of California Business and Professions Code § 17200, et seq.

386.  Harara is informed and believes, and based thereon alleges, that Conoco's termination of Harara's right to obtain his financial records showing and itemizing all retail credit sales, all Conoco's payments to Harara for such credit card sales, all Conoco's withholding of payments or refusal of payments for such credit card sales, all other sales, fuel deliveries and orders, and other electronically tabularized purchases, sales, and orders, thus preventing Harara from accurately balancing his financial books and records and making it impossible for him to effectively manage and profitably operate the Station constitute unfair and/or fraudulent practices against Harara, other similarly situated franchisees, and the people of California within the meaning and provisions of California Business and Professions Code § 17200, et seq.

387.  Harara is informed and believes, and thereon alleges, that that Conoco's termination of Harara's right to obtain electronic access to his account over the Internet, thus preventing Harara from accurately balancing his financial books and records and making it impossible for him to effectively manage and profitably operate the Station constitute unfair and/or fraudulent practices against Harara, other similarly situated franchisees, and the people of California within the meaning and provisions of California Business and Professions Code § 17200, et seq.

388.  Harara is informed and believes, and thereon alleges, that that Conoco's violations of the Equal Credit Opportunity Act of the Consumer Credit Protection Act, 15 U.S.C. § 1691, et seq.,

75

1  and 12 CFR § 202 et seq., as alleged herein, also constitute unfair and/or fraudulent practices

2  against Harara, other similarly situated franchisees, and the people of California within the

3  meaning and provisions of California Business and Professions Code § 17200, et seq.

4  389.  Harara is informed and believes, and thereon alleges, that that Conoco's violations of the

5  Holden Credit Denial Disclosure Act of 1976, California Civil Code § 1787.2, as alleged

6  herein, also constitute unfair and/or fraudulent practices against Harara, other similarly situated

7  franchisees, and the people of California within the meaning and provisions of California

8  Business and Professions Code § 17200, et seq.

9  390.  Harara is informed and believes, and based thereon alleges, that Conoco violated

10 California Corporation Code § 31201 when it continued to market and offer the Station to

11 others at the same time when an escrow was open for sale of the Station between Harara and

12 Conoco, thus making untrue statements and/or omitting material facts necessary in order to

13 make the statements made, in light of the circumstances under which they were made, not

14 misleading.

15

16 391.  Such omissions were unlawful under California Corporation Code § 31201 in that such

17 facts were omitted from communications with Harara, were material, in that they were

18 necessary in order to make the statements made, in light of the circumstances under which they

19 were made, not misleading. Conoco' violations as stated herein also constitute a violation of

20 California Business and Professions Code § 17200, et seq.

21 392.  Harara is informed and believes, and based thereon alleges, that Conoco violated

22 California Corporation Code § 31201 by failing to disclose material information to Harara

23 regarding Harara's rights as franchisee and Conoco's obligations as franchisor.

24

25

26

393.  Harara has suffered special, general, and consequential damages as a result of Conoco's unlawful conduct in an amount to be proven at the time of trial and is entitled to recover such damages pursuant to California Corporation Code § 31300.

394.  Harara is informed and believes, and based thereon alleges, that other Conoco's franchisees have suffered special, general, and consequential damages as a result of Conoco's unlawful conduct in an amount to be proven at the time of trial and are entitled to recover such damages action pursuant to California Business and Professions Code § 17200, et seq., predicated on California Corporation Code § 31300.

395.  Harara is informed and believes, and based thereon alleges, that each of Conoco' violations as stated herein under each cause of action also constitutes a violation of California Business and Professions Code § 17200, et seq.

396.  Harara is entitled to and requests restitution, in an amount according to proof at the time of trial, incurred as a result of each of Conoco's violations of California Business and Professions Code § 17200, et seq.

### TWENTY-SECOND CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(SPECIFIC PERFORMANCE)

397.  Harara re-alleges and incorporates into this cause of action each and every allegation contained in this Second Amended Complaint as if the same were set out at length herein.

398.  Harara is a party to the Second Offer, a Real Estate Sales Contract, for the conveyance of the land and property of the Station.

399.  Harara is informed and believes, and based thereon alleges, that he and Conoco were engaged in a negotiation before and after the execution of the Second Offer to amend, and did

77

amend, its terms and modify, orally and in writing, the consideration and other terms set forth therein to be fair, just, and reasonable.

400.  Harara has duly performed all conditions, covenants, and promises required to be performed by him under the Second Contract in accordance with its terms and conditions, except for those acts that have been prevented, delayed, or excused by acts or omissions of defendants.

401.  Conoco has failed and refused, and continues to fail and refuse, to perform the conditions of the Second Offer in that it refused to credit Harara for the reduction in the selling price as agreed to by the parties and in that it refused to consent to Harara's assignment of the Second Offer and convey the property of the Station as provided for under the Second Offer.

402.  Harara is informed and believes, and based thereon alleges, that Conoco is estopped from relying on the statute of frauds because he partially performed the Second Offer by opening escrow and signing escrow documents, depositing an initial escrow deposit, conducting the Buyer's investigation, conducting the environmental compliance, securing financing to purchase the property, and securing an assignee.

403.  Since the Second Offer is an agreement involving interests in real property, Harara prays judgment against Conoco as follows: specific performance of the Second Offer according to its original and modified terms, Conoco's execution and delivery to Harara a sufficient conveyance of the property of the Station, cost of suit, and other relief as the Court may deem proper.

## TWENTY-THIRD CLAIM FOR RELIEF

(Against CONOCOPHILLIPS COMPANY and DOES 1 through 100, INCLUSIVE)

(DECLARATORY RELIEF)

78

404. Harara re-alleges and incorporates into this cause of action each and every allegation contained in this First Amended Complaint as if the same were set out at length herein.

405. A dispute has arisen and an actual controversy exists with respect to the rights of the parties and their obligations with respect to the following:

    a.    The rights and obligations of the parties under the provisions of 15 U.S.C. § 2801 et seq.;

    b.    Whether Conoco's Second Offer to Harara is a "bona fide offer" within the meaning of the PMPA;

    c.    Whether the selling price proposed in the Second Offer reflects the fair market value and meets other requirements to make it a "bona Fide offer;"

    d.    Whether Conoco's offer to sell the same property of the Station for a price less that the selling price proposed in the Second Offer renders the Second Offer non-bona fide;

    e.    Whether Conoco's Notice of Nonrenewal was in violation of the PMPA.

    f.    Whether Conoco's Notice of Termination was in violation of the PMPA

    g.    Whether Conoco's grounds for termination of the Agreement are valid under the PMPA under the relevant facts and circumstances and whether such grounds are sufficient to prematurely terminate Harara's franchise;

    h.    By filing this action, Harara has preserved his rights under both the PMPA and the Second Offer;

    i.    Any other controversy of the parties relating to the agreements entered into between them, the validity of their actions, or proper interpretation of the

79

    

statutory claims at issue in this action, which the Court determines is a genuine controversy in need of resolution.

406. Therefore, Harara seeks a declaration of his and Conoco's rights and obligations with respect to the controversies referred to above.

WHEREFORE, Harara prays for judgment as follows:

With respect to the First, Second, Third, Fourth, and Fifth Claims for Relief, an order granting:

1. A permanent injunction (i) restraining and enjoining Conoco and its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries from attempting termination and/or nonrenewal of Harara's franchise and the Agreement and from taking any further steps towards the termination and/or nonrenewal of Harara's franchise pursuant to the PMPA, federal law, and/or California law;

2. An award of compensatory damages as allowed under the PMPA that were incurred as a proximate result of Conoco's violations of the PMPA;

3. An equitable relief restraining and enjoining Conoco and its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries from transferring, conveying, or selling the premises of the Station any third party;

4. An equitable relief requiring Conoco and its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries to offer

80

Harara a first right of refusal for before attempting to transfer, convey, or sell the premises of the Station any third party pursuant to the PMPA;

5. Any other equitable relief that the Court determines is necessary in order to redress and remedy the effect of Conoco's willful failure to comply with Sections 2801 et seq., of the PMPA, including, but not limited to, compelling Conoco to make a bona fide offer of its interest in the property of the Station;

6. An award of exemplary damages in an amount to deter further violations of the PMPA as a result of Conoco's willful disregard of the requirements of the PMPA and Harara's rights;

7. An award of attorneys fees, expert fees, and other costs allowed under the PMPA in connection with bringing this action; and

8. Any other and further relief the Court deems just and proper;

With respect to the Sixth and Seventh Claims for Relief, an order granting:

9. Actual damages in an amount to be proven at the time of trial for violations of the Equal Credit Opportunity Act of the Consumer Credit Protection Act, 15 U.S.C. § 1691 et seq.;

10. Any equitable relief that the Court determines is necessary in order to redress and remedy the effect of Conoco's willful violations of the Equal Credit Opportunity Act of the Consumer Credit Protection Act, 15 U.S.C. § 1691 et seq. and deter such future violations of the same;

11. An award of punitive and exemplary damages, attorneys fees, expert fees, and other costs allowed under the Equal Credit Opportunity Act of the Consumer Credit Protection Act, 15 U.S.C. § 1691 et seq.;

SECOND AMENDED COMPLAINT                                CASE NO. C04-0515 BZ

12. An award of attorneys fees, expert fees, and other costs allowed under the Equal Credit Opportunity Act of the Consumer Credit Protection Act, 15 U.S.C. § 1691 et seq.; and

13. Any other and further relief the Court deems just and proper;

With respect to the Eighth Claim for Relief, an order granting:

14. Actual damages in an amount to be proven at the time of trial for violations of the Holden Credit Denial Disclosure Act of 1976 – California Civil Code § 1787.2;

15. Any equitable relief that the Court determines is necessary in order to redress and remedy the effect of Conoco's willful violations of the Holden Credit Denial Disclosure Act of 1976 – California Civil Code § 1787.2. and deter such future violations of the same;

16. An award of punitive and exemplary damages, attorneys fees, expert fees, and other costs allowed under the Holden Credit Denial Disclosure Act of 1976 – California Civil Code § 1787.2;

17. An award of attorneys fees, expert fees, and other costs allowed under the Holden Credit Denial Disclosure Act of 1976 – California Civil Code § 1787.2; and

18. Any other and further relief the Court deems just and proper;

With respect to the Ninth Claim for Relief, an order granting:

19. Actual damages in an amount to be proven at the time of trial for violations of California Business and Professions Code § 21140, et seq.;

20. In accordance with California Business and Professions Code § 21140.4. Harara requests that judgment be entered for three times the amount of Harara's assessed damages;

SECOND AMENDED COMPLAINT                                   CASE NO. C04-0515 BZ

21. An award of attorneys fees, expert fees, and other costs allowed under California Business and Professions Code § 21140, et seq.; and

22. Any other and further relief the Court deems just and proper;

With respect to the Tenth Claim for Relief, an order granting:

23. Actual damages in an amount to be proven at the time of trial for violations of California Business and Professions Code § 21140, et seq.;

24. In accordance with California Business and Professions Code § 21140.4, Harara requests that judgment be entered for three times the amount of Harara's assessed damages;

25. An award of attorneys fees, expert fees, and other costs allowed under California Business and Professions Code § 21140, et seq.; and

26. Any other and further relief the Court deems just and proper;

With respect to the Eleventh, Twelfth, Thirteenth, and Fourteenth Claims for Relief, an order granting:

27. General damages in an amount to be proven at trial;

28. Special damages in an amount to be proven at trial;

29. Compensatory damages in an amount to be proven at trial; and

30. Any other and further relief the Court deems just and proper;

With respect to the Fifteenth Claims for Relief, an order granting:

31. General damages in an amount to be proven at trial;

32. Special damages in an amount to be proven at trial;

83

33. Compensatory damages in an amount to be proven at trial;

34. Punitive damages in an amount to be proven at trial;

35. Costs incurred herein; and

36. Any other and further relief the Court deems just and proper;

With respect to the Sixteenth Claim for Relief, an order granting:

37. General damages in an amount to be proven at trial;

38. Special damages in an amount to be proven at trial;

39. Compensatory damages in an amount to be proven at trial;

40. Punitive damages in an amount to be proven at trial;

41. Costs incurred herein; and

Any other and further relief the Court deems just and proper;

With respect to the Seventeenth Claim for Relief, an order granting:

42. General damages in an amount to be proven at trial;

43. Special damages in an amount to be proven at trial;

44. Compensatory damages in an amount to be proven at trial; and

45. Any other and further relief the Court deems just and proper;

With respect to the Eighteenth Claim for Relief, an order granting:

46. General damages in an amount to be proven at trial;

47. Special damages in an amount to be proven at trial;

48. Compensatory damages in an amount to be proven at trial;

84

SECOND AMENDED COMPLAINT

CASE NO. C04-0515 BZ

49. Punitive damages in an amount to be proven at trial;

50. Costs incurred herein; and

51. Any other and further relief the Court deems just and proper;


With respect to the Nineteenth Claim for Relief, an order granting:

52. General damages in an amount to be proven at trial;

53. Special damages in an amount to be proven at trial; and

54. Any other and further relief the Court deems just and proper;


With respect to the Twentieth Claim for Relief, an order granting:

55. General damages in an amount to be proven at trial;

56. Special damages in an amount to be proven at trial;

57. Compensatory damages in an amount to be proven at trial;

58. Punitive or exemplary damages in an amount to be proven at trial;

59. Costs incurred herein; and

60. Any other and further relief the Court deems just and proper;


With respect to the Twenty-First Claim for Relief, an order granting:

61. A permanent injunction (i) restraining and enjoining Conoco and its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries from engaging in any further unfair and fraudulent business practices against Harara, (ii) restraining and enjoining Conoco and its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates,

85

and subsidiaries from engaging in any further unfair and fraudulent business practices against members of the California general public, (iii) prohibiting Conoco and its agents, employees, representatives, officers, directors, managing agents, joint ventures, attorneys, affiliates, and subsidiaries from engaging in any retaliatory conduct for bringing the instant action, and (iv) compelling Conoco to institute changes in order to show compliance with the California statutory requirements forbidding unfair and fraudulent business practices;

62. Restitution for Harara and members of the California general public, in an amount according to proof at the time of trial, incurred as a result of each of Conoco's violations of California Business and Professions Code § 17200, et seq. against Harara and against each member of the California general public;

With respect to the Twenty-Second Claim for Relief, an order granting:

63. An order obligating Conoco's specific performance of the Second Offer;

With respect to the Twenty-Third Claim for Relief, an order granting:

64. A declaration of rights and obligations of the parties as set forth in this Complaint;

With respect to All Claims of Relief:

65. An award of attorneys fees, expert fees, and other costs in an amount determined by the Court to be reasonable as authorized by law; and

66. Any other and further relief the Court deems just and proper.

SECOND AMENDED COMPLAINT                                          CASE NO. C04-0515 BZ

DATED: June 25, 2004

By: _____
Marwan A. Harara

Plaintiff

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure, Rule 38, Harara hereby demands a trial by jury of all claims herein that are properly the subject of a trial by jury.

DATED: June 25, 2004

By: _____
Marwan A. Harara

Plaintiff

SECOND AMENDED COMPLAINT                              CASE NO. C04-0515 BZ

1  Marwan A. Harara (CSB No. 209142)
2  3220 Contreras Place
   Hayward, California 94542
3  Phone: (510)445-0932

4  Plaintiff Marwan A. Harara
   In Pro Se

5

6

7

8                  UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11  MARWAN  AHMED  HARARA, on  behalf         CASE NO. C04-0515 BZ
    of himself and the General Public of the State
12  of California                              **PROOF OF SERVICE**

13  Plaintiff,

14  vs.

15  CONOCOPHILLIPS  COMPANY,  a  Texas
    Corporation,     DEAN     RICHARD
16  MASTERTON, [and DOES 1 through 100,
    INCLUSIVE],
17

18  Defendants.

19

20

21

22

23

24

25

26

27

28

1    I, the undersigned, declare:

2    (i) I am over 18 years of age; (ii) I am not a party in the above-captioned action;, and (iii) that on

3    the date indicated below I served by facsimile and by depositing in the mail a sealed envelop with

4    the postage thereon fully prepaid a true and correct copy of:

5
6    • SECOND AMENDED COMPLAINT

7    on the following parties addressed as follows:

8        Jeffery L. Podawiltz, Esq.
         Glynn & Finley, LLP
9        One Walnut Creek Center, Suite 500
         100 Pringle Avenue
10       Walnut Creek, California 94596

11

12   I declare under the penalty of perjury under the laws of the State of California that the foregoing

13   is true and correct.

14

15

16   DATED:        June 25, 2004

17

18                                  By:  S. I. Johl.

19                                       Soulieman Ghali

20

21

22                   Phone = 925 - 210 - 2800
23                   Fax = 925 - 945 - 1975

24

25

26

27

28

PROOF OF SERVICE                        - i -                    CASE NO. C04-0515 BZ