# EXHIBIT C

1

2                                          FILED

3
                                        SEP 2   2004
4
                                    RICHARD W. WIEKING
5                               CLERK, U.S. DISTRICT COURT
                             NORTHERN DISTRICT OF CALIFORNIA
6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11
   MARWAN AHMED HARARA, on        )
12 behalf of himself and the      )
   General Public of the State    )      No. C04-0515 BZ
13 of California,                 )
                                  )
14          Plaintiff,            )      ORDER GRANTING IN PART
                                  )      DEFENDANTS' MOTION TO
15     v.                         )      DISMISS PLAINTIFF'S SECOND
                                  )      AMENDED COMPLAINT
16 CONOCOPHILLIPS COMPANY, a      )
   Texas Corporation, DEAN        )
17 RICHARD MASTERTON, [and DOES]  )
   1 through 100, INCLUSIVE],     )
18                                )
            Defendants.           )
19 _____)

20       Before me is defendant ConocoPhillips Company ("Conoco")

21 and defendant Masterton's motion to dismiss plaintiff's second

22 amended complaint ("SAC") filed on June 25, 2004.  The facts

23 underlying this dispute are set forth in my June 3, 2004 Order

24 granting in part with leave to amend defendants' motion to

25 dismiss plaintiff's first amended complaint.  Defendants'

26 motion seeks dismissal of plaintiff's fourth, sixth through

27 tenth, and fifteenth through twenty-second claims for relief.

28       To the extent plaintiff's fourth claim asserts that

1  Conoco wrongfully terminated his franchise effective March 1,

2  2004 in retaliation for filing this lawsuit, plaintiff states

3  a claim and Conoco's motion to dismiss is **DENIED.**  Second

4  Amended Complaint ("SAC") ¶¶133-136; <u>Marini v. Atlantic</u>

5  <u>Richfield Co.</u>, 475 F.Supp. 142, 144 (D.N.J. 1979).

6  Allegations contained in plaintiff's sixth claim for relief

7  under 15 U.S.C. §1691 ("ECOA") are sufficiently well-pled to

8  state a claim and Conoco's motion to dismiss is therefore

9  **DENIED.**[1]  Section §1691e(a) creates a private right of action

10  against any creditor "who fails to comply with any

11  requirement" imposed by the ECOA.[2]  Plaintiff sufficiently

12  alleges that Conoco violated the notification requirements

13  under §1691(d)(2) and 12 C.F.R. §202 *et seq.* when it

14  terminated his ability to purchase gasoline and failed to give

15  him proper notice or explanation.  SAC ¶¶164-72; 15 U.S.C

16  §1691(d)(2) and (6); 12 C.F.R. §202.2 (2004).

17      Plaintiff's seventh claim for relief that Conoco's

18  "adverse action was not uniformly applied against all persons

19  in Harara's position who were of different race or religion"

20  is insufficient to state a claim for violations of §1691(a)

21  because it is unclear how plaintiff believes the adverse

22

23  ─────────────────

24  [1]      Plaintiff's claim under §1691(a) is mistakenly
labeled his Eighth, rather than his Seventh, claim for relief.

25  [2]      Defendant incorrectly argued that the Ninth Circuit
limited application of the ECOA to consumer, rather than
26  business, credit in <u>Brothers v. First Leasing</u>, 724 F.2d 789,
792 (9th Cir. 1984).  <u>Brothers</u> addressed only whether the ECOA
27  applied to consumer leases.  <u>Id.</u> at 790.  The opinion, which
concludes that consumer leases did fall within the ECOA's
28  reach, expressly states that "the ECOA, on its face, applies
to all 'credit transactions.'" <u>Id.</u> at 791.

1   action is related to his race or religion, if that is in fact

2   his claim.  Conoco's motion to dismiss this claim is **GRANTED.**

3   If plaintiff wishes to amend this claim to cure this

4   deficiency, he must do so no later than **October 15, 2004.**

5   Conoco's motion to dismiss plaintiff's eighth claim for relief

6   under California Civil Code §1787.2 (the "Holden Credit Denial

7   Act") is **DENIED.**  Section 1787.2 protects applicants who

8   submitted a written application for credit and were denied

9   without a statement of reasons or a written notification of

10  credit denial.  Cal. Civ. Code §1787.2(a), (b).  Plaintiff's

11  allegations are sufficient to state a claim for violations of

12  §1787.2 in that he claims he applied for credit, was

13  subsequently denied credit, and was never given notice or a

14  reason for the denial.  SAC ¶¶192-97.  Conoco argues, although

15  plaintiff does not allege it, that his application was for

16  business credit as opposed to "credit primarily for personal,

17  family, or household purposes," and thus, plaintiff does not

18  qualify as an "applicant" under Section 1787.2(e)(1).  The

19  Act, however, does not expressly limit its protections to only

20  consumer credit.  Cal. Civ. Code §1787.2.

21       As stated in my June 3 Order, to the extent that

22  plaintiff's ninth claim for violations of Bus. & Prof. §21148

23  is based on allegations that Conoco improperly withheld

24  consent to assignment of the Second Offer, the claim is

25  preempted by the PMPA and Conoco's motion is **GRANTED.**  June 3,

26  2004 Order 5:18-19.  To the extent that plaintiff alleges

27  Conoco unreasonably withheld consent to assignment of the

28  remaining unexpired term of the Lease under §21148, plaintiff

3

1   states a claim that is unrelated to the non-renewal or

2   termination of the Franchise, and as such, is not preempted.

3   Unlike his claims relating to assignment of the Second Offer,

4   the assignment of only the remaining term of the franchise

5   does not implicate public policy embodied in the PMPA that

6   protects Conoco's right to terminate or non-renew the

7   franchise and disassociate itself from plaintiff.  Humboldt

8   Oil Co. v. Exxon Company, U.S.A., 823 F.2d 373, 375 (9th Cir.

9   1987).

10      Defendant Masterton's motion to dismiss plaintiff's tenth

11  claim for violations of California Business and Professions

12  Code §21140.2 on the grounds that the claim may be brought

13  only against Conoco, and not Masterton, is **GRANTED**.[3]  Neither

14  party cites any authority, and the court is unable to find

15  any, addressing this issue.  The plain language of the

16  statute, however, does not appear to create a cause of action

17  against a franchisor's agent or employee, as it expressly

18  prohibits only a "franchisor" from requiring a franchisee to

19  purchase the franchisor's automotive accessories.  Cal. Bus. &

20  Prof. §21140.2 (2004).  Contrary to plaintiff's arguments,

21  §21140.3 does not save this claim against Masterton because

22  only the Attorney General, a district attorney, county

23  counsel, or a city attorney may bring an action under §21140.3

24  for violations of §21140.2.

25

26  _____

27      [3]    My June 3, 2004 Order concluded that plaintiff
    stated a claim for violations of §21140.2, but did not address
28  whether this claim was properly brought against both
    Masterton, as a Conoco employee, and Conoco as the franchisor.

1    Plaintiff's claims for intentional and negligent

2    misrepresentation, intentional and negligent interference with

3    prospective economic advantage, and bad faith breach of

4    contract were dismissed with leave to amend in my June 3, 2004

5    Order because the claims related to the "grounds for,

6    procedures for, and notification requirements of, terminations

7    of franchises and non-renewals of franchise relationships."

8    June 3, 2004 Order 4:14-18.  Plaintiff's amended fifteenth

9    through nineteenth claims contain virtually the same

10   allegations as the earlier complaint, and continue to focus on

11   Conoco's refusal to consent to the assignment of the Second

12   Offer, and to reduce the allegedly inflated purchase price

13   contained in the Second Offer.  These claims arose only after

14   Conoco gave plaintiff notice of non-renewal on April 22, 2003

15   and, as required under the PMPA, offered to sell the Station

16   to Harara.  Because the injuries flowed directly from the

17   parties' negotiations regarding the Second Offer, the PMPA

18   preempts these claims.  Arbabian v. BP America, 898 F.Supp.

19   703, 708 (N.D. Cal. 1995).  This result is not altered by new

20   allegations that Conoco acted in bad faith when it decided not

21   to renew the franchise after advising plaintiff that he could

22   recover the cost of improvements over time rather than up

23   front.  SAC ¶¶316, 319.  The injuries that plaintiff claims

24   resulted from these various torts, regardless of how they are

25   characterized or when they began, arose out of the non-renewal

26   or termination of the franchise and fall within the PMPA's

27

28

1  preemptive reach.[4]  Conoco's motion to dismiss these claims is

2  **GRANTED.**

3      Plaintiff's twentieth claim for conspiracy fails to state

4  a claim.  Conspiracy is not a separate and distinct cause of

5  action under California law.  Entm't Research Group, Inc. v.

6  Genesis Creative Group, Inc., 122 F.3d 1211, 1228 (9th Cir.

7  1997), cert. denied, 523 U.S. 1021 (1998).  Even if plaintiff

8  could allege a separate conspiracy claim, he does not allege

9  that Masterton was acting for his own personal advantage other

10  than the statement that Masterton acted "to achieve personal

11  and individual purposes..."  SAC ¶367; Davis & Cox v. Summa

12  Corp., et al., 751 F.2d 1507, 1526 (9th Cir. 1985) (dismissing

13  conspiracy claim involving corporation and employee);

14  Accuimage Diagnostics Corp. v. Terarecon, Inc., 260 F.Supp.2d

15  941, 947 (N.D. Cal. 2003); Washington v. Duty Free Shoppers,

16  696 F.Supp. 1323, 1325 (N.D. Cal. 1988) (explaining

17  intracorporate conspiracy doctrine precluding conspiracy

18  claims brought against corporation and employee/agent).

19  Plaintiff does not identify what those "personal and

20  individual purposes" were.  At best, plaintiff alleges that

21  Masterton was unsupervised, or misusing his "rights and

22  privileges" as a Conoco employee.  The failure to supervise

23  Masterton, however, does not necessarily mean that he was

24  acting for his personal advantage.  Defendants' motion to

25  _____

26      [4]    To the extent plaintiff asserts that the Second
    Offer was made in bad faith, it arguably was not a *bona fide*
    offer as required by the PMPA.  Ellis v. Mobil Oil, 969 F.2d

27  784, 787-788 (9th Cir. 1992); Brownstein v. Acro Petroleum
    Products Co., 604 F.Supp. 313, 315 (E.D. Pa. 1985) (generally

28  defining a "bona fide" as "[i]n or with good faith; honestly,
    openly, and sincerely; without deceit or fraud...").

1  dismiss this claim is **GRANTED**.

2      To the extent that plaintiff's twenty-first claim states

3  a claim for unfair business practices that are not preempted

4  by the PMPA, which includes his sixth, eighth, ninth[5], and

5  tenth claims, Conoco's motion to dismiss his twenty-first

6  claim for violations of §17200 *et seq.* is **DENIED**.[6]  To the

7  extent that plaintiff seeks damages that are not permitted

8  under §17200, et seq., Conoco's motion to dismiss is **GRANTED**.

9      To the extent that plaintiff seeks specific performance

10  of a contract that is not preempted by the PMPA, his twenty-

11  second claim is properly construed as a remedy and not a

12  separate claim.  4 Witkin, <u>California Civil Procedure</u>,

13  Pleading, §740 (4th ed. 1997).  Conoco's motion to dismiss

14  this claim is therefore **GRANTED** in part.

15      The Court may deny amendment under Rule 15(a) "when

16  amendment would be clearly frivolous, unduly prejudicial,

17  cause undue delay or a finding of bad faith is made." <u>United</u>

18  <u>Union of Roofers v. Ins. Co. of America</u>, 919 F.2d 1398, 1402

19  (9th Cir. 1990).  A Court may also deny amendment if that

20  amendment would be futile, or if there have been previous

21  unsuccessful attempts to cure deficiencies.  <u>See</u> <u>Foman v.</u>

22  <u>Davis</u>, 371 U.S. 178, 182 (1962).  The Court has the discretion

23  to determine whether the presence of any of these elements

24  _____

25      [5]    To the extent that part of plaintiff's ninth claim
    is preempted by the PMPA, it may not be relied upon as a basis
26  for his §17200 claim.

27      [6]    Because it is not raised by Conoco, I do not address
    here whether plaintiff properly bases his §17200 claim on ECOA
28  violations.  If plaintiff amends his seventh claim for relief,
    it may be added as a possible ground for the §17200 claim.

1   justifies refusal of a request to amend the complaint; this

2   discretion is particularly broad where plaintiff has

3   previously amended the complaint.  <u>Ascon Properties, Inc. v.</u>

4   <u>Mobil Oil Co.</u>, 866 F.2d 1149, 1160 (9th Cir. 1989).

5   Permitting plaintiff to further amend his complaint to re-

6   allege his ninth, tenth, and fifteenth through twentieth

7   claims would be futile.  Plaintiff will not be able to cure

8   the deficiencies in his complaint, inasmuch as his second

9   amended complaint is substantively unchanged from the first

10  amended complaint with respect to these claims.  For the

11  foregoing reasons, and with the exception that he may amend

12  his seventh claim, plaintiff's request that he be permitted to

13  amend his complaint is **DENIED**.

14       Based on the foregoing, defendants' motion to dismiss is

15  **GRANTED IN PART**.  Plaintiff's seventh claim is **DISMISSED** with

16  leave to amend.  Plaintiff's ninth claim is **DISMISSED** in part.

17  Plaintiff's tenth claim against defendant Masterton is

18  **DISMISSED**.  Plaintiff's fifteenth through twentieth claims are

19  **DISMISSED**.  To the extent that plaintiff basis his §17200

20  claims on unfair business practices that are preempted, his

21  twenty-first claim is **DISMISSED**.  Because plaintiff's

22  remaining claims are brought against Conoco only, defendant

23  Masterton is dismissed from this action.

24  Dated: September 22, 2004

25

26                        Bernard Zimmerman

27              United States Magistrate Judge

28  G:\BZALL\-BZCASES\Harara\dismissorder.wpd

8

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


MARWAN AHMED HARARA,

        Plaintiff,

   v.

ConocoPhillips Company et al,

        Defendant.
_____/

Case Number: CV04-00515 BZ

**CERTIFICATE OF SERVICE**


I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 23, 2004, I SERVED a true and correct copy(ies) of the attached ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Jeffrey L. Podawiltz
Glynn & Finley
100 Pringle Avenue Ste 500
Walnut Creek, CA 94596

Marwan Ahmed Harara
42821 Roberts Avenue
Fremont, CA 94538

Dated: September 23, 2004

                Richard W. Wieking, Clerk
                By: Rose Maher, Deputy Clerk

**EXHIBIT D**

1

2

3          **FILED**

4          APR 2 9 2005

5          RICHARD W. WIEKING
           CLERK, U.S. DISTRICT COURT
6          NORTHERN DISTRICT OF CALIFORNIA

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9

10   MARWAN AHMED HARARA,          )
                                   )
11              Plaintiff(s),      )      No. C04-0515 BZ
                                   )
12        v.                       )      **ORDER ON CROSS MOTIONS**
                                   )      **FOR SUMMARY JUDGMENT ON**
13   CONOCOPHILLIPS COMPANY, et    )      **PLAINTIFF'S CLAIMS**
     al.,                          )
14                                 )
                Defendant(s).      )
15                                 )
                                   )
16   _____  )

17        On September 23, 2004, I granted in part and denied in

18   part defendant's motion to dismiss plaintiff's second amended

19   complaint ("SAC") against defendant ConocoPhillips Company

20   ("Conoco") and dismissed plaintiff's claims against Dean

21   Masterton, a Conoco Account Representative.  Now before me are

22   the parties' cross motions for summary judgment with respect

23   to plaintiff's remaining claims against Conoco.  For the

24   following reasons, plaintiff's motion is denied and

25   defendant's motion is granted.[1]

26

27   _____

28        [1]  This order relies on evidence admitted in accordance
     with the ruling on defendant's evidentiary objections, which
     will be issued separately.

                                   1

1    Plaintiff purchased the goodwill and leasehold of the 76-

2    branded franchise gasoline retail station in Oakland,

3    California (the "Station") from Tosco Marketing Company

4    ("Tosco"), predecessor in interest to Conoco, in February

5    1999.  SAC, ¶¶ 1, 2, 17.  He qualified as a dealer and

6    franchisee and began operating the Station with his brother,

7    Murad Harara.  In late 1999, plaintiff made improvements to

8    the Station, including remodeling the snack shop and restroom.

9    See Decl. of Marwan A. Harara in Supp. of his Mot. for Summ.

10   J. ("Harara Decl."), Ex. C at 83-94.  Tosco approved the

11   improvements in advance, based on blueprints submitted by

12   plaintiff, on the condition that the improvements conform to

13   specifications set forth in its Snack Shop Improvement

14   Manual.[2]  Id. at 88-89, 95, Ex. E-10.

15   On January 16, 2001, plaintiff renewed the franchise for

16   a three-year period pursuant to a Dealer Station Lease and

17   Motor Fuel Supply Agreement (the "Franchise Agreement") that

18   expired on April 30, 2004.  Decl. of Dean Masterton in Supp.

19   of Conoco's Mot. for Summ. J. or, in the Alternative, Summ.

20   Adjudication as to Pl.'s Claims for Relief ("Masterton

21   Decl."), Ex. A.  In June or July 2002, defendant placed

---

23   [2]    The policy at the time was that the dealer would
bear the cost of improvements.  Harara Decl., Ex. C at 91.
24   Pursuant to the "snack shop rental waiver," however, the
franchisor would reimburse the dealer by waiving any increase
25   in rent for the snack shop, for a period of up to five years.
Id. at 91-92.  Once the amount of waived rent equaled the
26   total cost of improvements, the franchisor would then adjust
the rent to reflect the increased square footage of the snack
27   shop.  Id.  In plaintiff's case, the improvements would have
increased plaintiff's rent from approximately $250 to $500 per
28   month.  Id.  Under the policy, plaintiff's rent remained at
$250 following the improvements.  Id. at 92-93.

plaintiff on "Cash in Advance" status, which required him to

prepay for all gasoline deliveries.[3]   Harara Decl. ¶¶ 15-16,

Ex. B; Decl. of Paul Curtis in Supp. of Conoco's Mot. for

Summ. J. or, in the Alternative, Summ. Adjudication as to

Pl.'s Claims for Relief ("Curtis Decl.") ¶ 4.

     In early 2003, following the merger of Conoco and Philips

Petroleum Corporation, defendant decided to divest itself of

approximately 100 petroleum service stations in California.

Decl. of Philip Bonina in Supp. of Conoco's Mot. for Summ. J.

or, in the Alternative, Summ. Adjudication as to Pl.'s Claims

for Relief ("Bonina Decl.") ¶ 3.   Plaintiff's station was

among those identified for sale, and on April 2, 2003,

defendant sent him a Notice of Nonrenewal. Id.  The notice

advised plaintiff that defendant would not renew the Franchise

Agreement upon its expiration on April 30, 2004, and stated,

"The reason for this nonrenewal is CONOCOPHILLIPS's

determination made in good faith and in the normal course of

business to sell CONOCOPHILLIPS's interest in the marketing

premises." Id., Ex. A.  Defendant also sent plaintiff a

letter, dated April 2, 2003, that stated, "In accordance with

the provisions of the Petroleum Marketing Practices Act,

[Conoco] offers to sell the Marketing Premises to you pursuant

---

    [3]    Defendant originally extended plaintiff credit privileges that allowed him to order gasoline without paying in advance for the delivery. Curtis Decl. ¶ 3.  Pursuant to this arrangement, defendant's Credit Department would authorize a delivery, and then draw funds via electronic fund transfers to pay for the delivery. Id.  Defendant's policy was to rescind a dealer's credit privileges if three transfers were returned for insufficient funds during a 12-month period. Id. at ¶ 4.  As of June 2002, plaintiff had more than three transfers returned during the preceding 12 months, and defendant placed him on "Cash In Advance" status. Id.

to the terms set forth in the enclosed Real Estate Sales
Contract." Id. at ¶ 4, Ex. A.  The Real Estate Sales Contract
("Sales Contract") attached to the letter contained the
relevant terms of defendant's offer to sell the premises to
plaintiff for $1,120,000.  Id.  According to defendant, the
purchase price was based on a third-party appraisal of the
Station by Valuation Research that reflected a January 25,
2003 valuation date.  Id. at ¶ 4, Ex. C. On June 6, 2003,
following discussions with Richard Mathews, Conoco's Northern
California Real Estate Manager, plaintiff accepted defendant's
offer.  Harara Decl. ¶ 3, Ex. U; Mathews Decl. ¶¶ 1, 3, Ex. A.

While the Sales Contract specified a closing date of
September 15, 2003, defendant extended the deadline at
plaintiff's request on at least four occasions, and agreed to
a final closing date of December 19, 2003.  Decl. of Richard
Mathews in Supp. of Conoco's Mot. for Summ. J. or, in the
Alternative, Summ. Adjudication as to Pl.'s Claims for Relief
("Mathews Decl.") ¶ 6.  On November 12, 2003, plaintiff's
lender responded to his original loan application for
$1,120,000 and requested that he reduce his loan application
by $300,000.  Harara Decl. ¶ 7, Ex. D.  Plaintiff subsequently
amended his loan application by reducing the amount by
$300,000.  Id. ¶ 8, Ex. D.

Both parties also contacted third parties regarding the
sale of the Station.  In November 2003, defendant secured from
Khalid and Romana Usman an offer to purchase the property for
$1,120,000.  Bonina Decl., Ex. D.  In December 2003, plaintiff
entered into two separate form contracts with Wurn Waa Phan to

4

purchase the Station, "including equipment, fixtures, goodwill

. . . inventory . . . and improvements," from plaintiff.  Id.

¶ 9; Exs. F, G.  One contract was for $1,120,000, and was

conditioned on Conoco transferring or assigning the Sales

Contract.  Id., Ex. G.  The other contract was for $180,000.

Id., Ex. F.

On January 6, 2004, defendant delivered gasoline to

plaintiff on credit, pursuant to a one-time exception

authorized by Conoco's Credit Department.  Curtis Decl. ¶ 6.

When plaintiff failed to pay for the shipment, Conoco placed

him on a "credit hold" that required him to pay all

outstanding amounts on his account prior to any further

gasoline deliveries.  Id.  Plaintiff subsequently requested

delivery of gasoline.  Harara Decl. ¶ 13, Ex. P.  Conoco did

not respond.  Id. at ¶ 13.  In January or February 2004,

plaintiff ran out of 89 and 91 octane gasoline.  Id.; Decl. of

David Vann in Supp. of Conoco's Mot. for Summ. J. or, in the

Alternative, Summ. Adjudication as to Pl.'s Claims for Relief

("Vann Decl.") ¶ 2; Masterton Decl. ¶¶ 12-13.

Plaintiff did not close the escrow with Conoco on

schedule, and on January 16, 2004, Conoco instructed the

escrow agent to cancel escrow.  Mathews Decl. ¶ 6; Harara

Decl., Ex. E-6.  Two days later, plaintiff sent Mathews a

letter requesting consent to assign the Sales Contract to a

third party purchaser.  Harara Decl., Ex. E-8.  The following

day, Mathews sent plaintiff an email denying consent, and

informing plaintiff that Conoco had cancelled escrow.  Id.,

Ex. E-6.  On January 20, 2004, the escrow company contacted

plaintiff and requested that he execute a release agreement so that it could return his $5,000 deposit. <u>Id.</u>, Ex. N.  Two days later, Khalid and Romana Usman signed a contract to purchase the Station.  The contract was effective March 4, 2004 and would have closed about 5 months later.  Bonina Decl., Ex. D  On January 26, 2004, Mathews sent plaintiff a notice informing him that unless closing occurred within ten days, the Sales Contract would be null and void.  Harara Decl., Ex. E-2.  Plaintiff sent Mathews a letter rejecting the notice, and on February 6, 2004, plaintiff filed this lawsuit against defendant.  <u>Id.</u>, Ex. O.

On February 11, 2004, Conoco sent plaintiff a notice of default informing him that he was in violation of the Franchise Agreement by failing to maintain a complete inventory of motor fuel.  <u>See</u> Masterton Decl., Ex. C.  On February 20, 2004, Conoco served Harara with written notice of termination based on his failures to stock 76-branded motor fuel, to pay $13,163.18 in rent and other charges, and to take reasonable steps to control the operations of the station.  Harara Decl., Ex. S; Masterton Decl. ¶ 14, Ex. D.  Conoco eventually terminated the Franchise Agreement and plaintiff surrendered possession of the Station.

I.    <u>PMPA Claims</u>

In his first and second claims plaintiff contends that defendant's decision not to renew the franchise violated the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §2801, *et seq.*  Plaintiff first argues that Conoco's decision not to renew the Franchise Agreement was not made in good faith in

the normal course of business.[4]  A franchisor may choose not

to renew the franchise relationship where the determination is

made in good faith and in the normal course of business.  15

U.S.C. § 2802(b)(3)(D).  "The good faith requirement looks to

whether the franchisor's actions are designed to conceal

selective discrimination against individual franchises."

Unocal Corp. v. Kaabipour, 177 F.3d 755, 767 (9th Cir. 1999).

The test for determining good faith is subjective, and the

court should look to the franchisor's intent rather than the

effect of the franchisor's actions.  Svela v. Union Oil Co.,

807 F.2d 1494, 1501 (9th Cir. 1986).  "A franchisor meets the

'normal course of business' requirement if the determination

was the result of the franchisors' normal decision making

process."  BP West Coast Products LLC v. Greene, 318 F. Supp.

2d 987, 996 (E.D. Cal. 2004) (citing Beck Oil Co. v. Texaco

Ref. & Mktg., Inc., 25 F.3d 559, 562 (7th Cir. 1994)); see

---

[4]    Defendant erroneously argues that I need not reach
plaintiff's challenges to its determination not to renew the
franchise relationship because it later terminated the
Franchise Agreement.  The cases cited by defendant do not hold
that the PMPA does not apply where a franchisor decides to
terminate after having issued a notice of nonrenewal.  See
Akky v. BP America, 73 F.3d 974 (9th Cir. 1996) (holding that
plaintiff had no PMPA claim where defendant franchisor had
rescinded its notices of termination and continued to operate
under the franchise agreement); Ajir v. Exxon Corp., 855 F.
Supp. 294, 299 (N.D. Cal. 1994) (holding that the requirement
to make a bona fide offer to sell under the PMPA did not apply
where defendant later offered to renew its franchise
relationship with plaintiffs).  Defendant neither rescinded
its notice of termination, nor offered to renew its franchise
relationship with plaintiff.  Rather, it elected to terminate
the franchise.  Had plaintiff been able to close escrow,
defendant's later termination of the Franchise Agreement
either would not have occurred or would have been of little
import, as either plaintiff or a third party purchaser would
have owned a non-Conoco Station.  Issues surrounding the
propriety of defendant's PMPA offer were not mooted by the
subsequent termination.

1   also <u>Sandlin v. Texaco Ref. and Mktg., Inc.</u>, 900 F.2d 1481,

2   1481 (10th Cir. 1990).

3       Defendant has presented evidence that its decision to

4   sell the Station was based on a determination by senior

5   management, following the merger of Conoco and Phillips

6   Petroleum Company, to divest a number of petroleum service

7   station sites throughout the country.  Bonina Decl. ¶ 1.

8   Plaintiff's station was one of approximately 100 stations in

9   California that defendant identified for divestment.  <u>Id.</u>

10  While this evidence establishes that defendant's divestment

11  decision was made in good faith and in the normal course of

12  business, it is less clear why defendant chose to divest

13  plaintiff's station in particular.  In making divestment

14  decisions defendant considered a number of factors, including

15  volume of gasoline sales, dealer rent structure, ground lease

16  tenure, quality of underground storage tanks, and the location

17  and demographics of the site.  <u>See id.</u> at 104-105.  Defendant

18  appears to have decided to divest itself of plaintiff's

19  Station based on a several of these factors, including a

20  significant decline in the volume of plaintiff's gasoline

21  sales, and the fact that the Station was located in an

22  economically challenged neighborhood with a very high crime

23  rate and drug and gang problems.  <u>See</u> Harara Decl., Exs. E at

24  105-106, 110-11, 116-117, 121, E-14.  As with other

25  divestments, the decision appears to have been based in part

26  on a recommendation from several departments within Conoco,

27  including the Real Estate and Marketing Departments.  <u>See</u>

28  Harara Decl., Ex. E at 102-104, 106, 108, 120, E-14.  Based on

1   this evidence I find that defendant has demonstrated that its

2   decision to divest itself of plaintiff's station was made in

3   good faith and in the normal course of business.  Plaintiff

4   has not presented sufficient evidence to establish that the

5   decision to divest the Station was a sham, pretextual,

6   discriminatory or otherwise not made in good faith and in the

7   normal course of business.  See *Svela*, 807 F.2d at 1501; *Marks*

8   *v. Shell Oil Co.*, 643 F. Supp. 1050, 1053, 1055 (E.D. Mich

9   1986), *vacated on other grounds,* 830 F.2d 68 (6th Cir. 1987).

10          Plaintiff contends that the fact that income from

11  gasoline sales at the Station were more than $100,000 per year

12  demonstrates that defendant's decision was made in bad faith.

13  Plaintiff has not established that defendant based its

14  nonrenewal decision solely upon gasoline sales, however.[5]

15  Rather, the evidence establishes that defendant's decision not

16  to renew the franchise was part of a general plan to divest

17  itself of a number of stations, and that profits were among

18  the many factors defendant considered.  See Bonina Decl. ¶ 2;

19  Harara Decl., Exs. E at 103-107; 116-19, E-14.

20          Plaintiff also argues that Masterton's statement in

21  November 2002 that plaintiff should sell the Station

22  establishes that the nonrenewal decision was made in bad

23  _____

24          [5]     Plaintiff's primary evidence is the deposition of
    Dean Masterton, in which he stated in response to plaintiff's
    question about whether Conoco had fixed divestment criteria,

25  "There isn't any such criteria today.  Unocal in the past had
    their own criteria before Conoco – before Tosco purchased

26  their assets.  I've heard varying reports from $75,000 a year
    income to the company to a hundred thousand dollars a year was

27  like the minimum.  Anything below that consistently, not just
    for one year, but consistently would be targeted generally as

28  a divestment.  But again, that's not the only criteria."
    Harara Decl., Ex. E at 107:16-24.

                                    9

1  faith.  See Harara Decl., Ex. C at 53:19-54:19.  The

2  statement, made by Masterton in the context of a discussion

3  about plaintiff's credit, merely establishes that because the

4  Station's profitabilty was declining, Masterton's opinion was

5  that plaintiff should sell the Station rather than seek to

6  have his credit reinstated.  See id.  Masterton's statement,

7  "you need act quickly because the operation of the station was

8  as such that I had no choice but to non-renew your lease," is

9  insufficient in and of itself to create a genuine issue of

10  material fact regarding whether defendant decided not to renew

11  in good faith.  See Id.  There is no evidence that Masterton

12  was directly involved in the senior management divestment

13  decision and Masterton testified he was not.  Id. at 51.

14       Plaintiff's general allegations, unsupported by the

15  record, are likewise insufficient to create a genuine issue of

16  material fact as to whether defendant's decision was made in

17  good faith and in the normal course of business.  See Fed. R.

18  Civ. P. 56(e); Rand v. Rowland, 154 F.3d 952, 963 (9th Cir.

19  1998).  While plaintiff generally alleges that defendant

20  continued to deny him credit privileges and access to

21  financial information, he does not explain how these actions

22  relate to defendant's decision not to renew the franchise.

23  Plaintiff also generally claims that defendant never intended

24  to perform under the Sales Contract, but he has provided no

25  credible evidence to support this claim.[6]

26

_____

27       [6]   In his February 9, 2005 response to defendant's
   interrogatories, plaintiff represented that he was "not aware
28  of a claim that the OFFER was not made in good faith and in
   the normal course of business."  Rep. Decl. of Adam

The evidence presented establishes that defendant decided not to renew the franchise in good faith and in the normal course of business. A reasonable trier of fact could not conclude otherwise, and Conoco is therefore entitled to judgment as a matter of law. <u>See</u> <u>Unified Dealer Group v. Tosco Corp.</u>, 16 F. Supp. 2d 1137, 1142 (N.D. Cal. 1998) (citing <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).

Plaintiff next argues that defendant's offer to sell the station was not bona fide. In particular, plaintiff contends that both the provision in the Sales Contract prohibiting assignment and defendant's refusal to consent to assignment of the Sales Contract violated defendant's duty to make a bona fide offer to sell the Station.[7] <u>See</u> 15 U.S.C. § 2802(b)(3)(D)(iii)(I). While plaintiff's argument is not entirely clear, he appears to contend that the nonassignment

_____

Friedenberg in Supp. of Conoco's Mot. for Summ. J. or, in the Alternative, Summ. Adjudication as to Pl.'s Claims for Relief ("Friedenberg Rep. Decl."), Ex. A. While plaintiff's sworn statement would normally be sufficient to bar this claim, defendant waited until its reply to submit this evidence. Plaintiff has therefore had no opportunity to respond.

[7]    Section 10.3 of the Sales Contract provided:

NO ASSIGNMENT. The provisions of this Contract and the offer to sell the Property shall be personal to Buyer, and may not be assigned by Buyer, except however, that Buyer shall have the right to assign its right, title and interest under this Contract, provided that the Buyer is not released from its obligations hereunder and the Contract is assigned to a corporation, partnership or limited liability company of which Buyer is the managing partner or managing member or in which the Buyer or any of its principals holds an interest.

Mathews Decl., Ex. A.

1   clause constitutes an unreasonable restraint on alienation in

2   violation of state law because it prevented him from assigning

3   defendant's offer to a willing third-party buyer.  See Cal.

4   Civ. Code § 711.  Assuming section 711 is not preempted by the

5   PMPA, it is inapplicable to the contract at issue because the

6   nonassignment clause only prevented plaintiff from assigning

7   defendant's offer to sell the Station.  It did not prevent him

8   from assigning or otherwise transferring the remaining

9   franchise term or transferring the Station to a third party

10  once he had purchased the Station.

11      To the extent that plaintiff argues that the PMPA

12  generally prohibits non-assignment clauses, his argument is

13  also unavailing.  Plaintiff has presented no authority to

14  establish that in order to be bona fide, an offer made under

15  section 2802(b)(3)(D)(iii)(I) must be freely assignable.

16      Finally, the cases cited by plaintiff are inapposite.  In

17  Prestin v. Mobil Oil Corp., 741 F.2d 268 (9th Cir 1984), the

18  Ninth Circuit, applying California law, held that where a

19  contract prohibits assignment of a lease without the written

20  consent of the landlord, the decision not to consent must be

21  made in good faith.  Id.  While the California Supreme Court

22  adopted the holding of Prestin in Kendall v. Ernest Pestana,

23  Inc., 40 Cal. 3d 488, 495 (1985), the California Legislature

24  has since expressly limited the holding in that case.  See

25  Cal. Civ. Code § 1995.230 ("A restriction on transfer of a

26  tenant's interest in a lease may absolutely prohibit

27  transfer."); Cal. Civ. Code § 1995.230, Law Revision

28  Commission Comment (1989) ("Section 1995.230 settles the

1  question raised in <u>Kendall v. Ernest Pestana, Inc.</u>, of the

2  validity of a clause absolutely prohibiting assignment or

3  sublease.  A lease term actually prohibiting transfer of the

4  tenant's interest is not invalid as a restraint on

5  alienation.").  Further, both <u>Prestin</u> and <u>Kendall</u> involved an

6  assignment of the remaining term in the lease.  See <u>Prestin</u>,

7  741 F.2d at 269; <u>Kendall</u>, 40 Cal. 3d at 492.  Plaintiff has

8  presented no evidence that he attempted to assign the

9  remaining term in Franchise Agreement to a third party.

10 Unlike the cases cited by plaintiff, the non-assignment clause

11 here expressly prohibited assignment, not assignment without

12 defendant's consent.  See <u>Prestin</u>, 741 F.2d at 269 n.1;

13 <u>Kendall</u>, 40 Cal. 3d at 494 n.5; Mathews Decl., Ex. A.

14 Plaintiff has therefore not demonstrated that either the non-

15 assignment clause in the Sales Contract or defendant's

16 decision not to consent to assignment of the Sales Contract

17 rendered the offer not bona fide.[8]

18     Finally, plaintiff contends that defendant's offer was

19 not bona fide because it was above fair market value.  "It is

20 settled law that a bona fide offer under the PMPA is measured

21 by an objective market standard.  To be objectively

22 _____

23     [8]    Plaintiff's argument that defendant anticipatorily
   breached the Real Estate Sales Contract by offering to sell
   the Station to the Usmans prior to closing, thus rendering the

24 offer not bona fide is also unavailing.  The PMPA does not
   prohibit a franchisor from marketing the premises; it only

25 requires that the franchisor first make a bona fide offer to
   sell the premises to the franchisee.  See 15 U.S.C. §

26 2802(b)(3)(D)(iii)(I).  Here, the Usmans offered to purchase
   the Station in November 2003, defendant accepted the offer on

27 February 11, 2004, and the contract became effective on March
   4, 2004.  See Mathews Decl. ¶ 8; Bonina Decl., Ex. D.  The

28 contract with the Usmans was not effective until well after
   the close of escrow, and therefore did not violate the PMPA.

reasonable, an offer must approach fair market value." <u>Ellis</u>
<u>v. Mobil Oil</u>, 969 F.2d 784, 787-88 (9th Cir. 1992) (citing
<u>Slatky v. Amoco Oil</u>, 830 F.2d 476, 485 (3d. Cir. 1986)). "The
facts of each case will set the terms of what constitutes a
bona fide offer." <u>Id.</u> "When a third party's offer is in the
form of a single transaction for cash, the court can
justifiably infer that the amount of an arms' length offer
represents the value of the station." <u>Ellis</u>, 969 F.2d at 786;
<u>see also</u> <u>BP West Coasts Products</u>, 318 F. Supp. 2d at 1000; <u>Lee</u>
<u>v. Exxon Co., U.S.A.</u>, 867 F. Supp. 365, 368 (D.S.C. 1994);
<u>Ballis v. Mobil Oil Corp.</u>, 622 F. Supp. 473, 475 (N.D. Ill.
1985). "Congress' use of the term 'bona fide' rather than
'fair market value' in the statute indicates a recognition
that the word 'value' almost always involves a conjecture, a
guess, a prediction, a prophesy.  [T]here is no universally
infallible index of fair market value." <u>Magerian v. Exxon</u>
<u>Corp.</u>, 1996 WL 119481 at *5 (N.D. Cal. 1996), *affirmed*, 124
F.3d 212 (9th Cir. 1997) (citing <u>Slatky</u>, 830 F.2d at 485)
(internal quotation marks omitted)).

Defendant offered to sell the Station to plaintiff for
$1,120,000, based on a third-party appraisal by Valuation
Research.  Bonina Decl. ¶ 4, Exs. A, C.  When plaintiff
accepted on June 6, 2003, he did not contend that the offer
was not bona fide or condition acceptance on a lower price.
Harara Decl., Ex. U.  A third party offered and eventually
purchased the property for $1,120,000.  <u>See</u> Mathews Decl. ¶ 8;
Bonina Decl. ¶¶ 4, 7, Ex. D.  That a third party offered and
eventually purchased the property for the same price offered

1  to plaintiff strongly indicates that defendant's offer was

2  bona fide.  Even plaintiff's own third party purchaser, Phan,

3  offered a total of $1,300,000 for the Station.  See Harara

4  Decl., Exs. F, G.

5       Plaintiff has not offered evidence from an independent

6  appraiser that the $1,120,000 offer did not approach fair

7  market value.  Instead, he makes much of the fact that he

8  learned during discovery that defendant obtained two

9  valuations for different amounts from Valuation Research, one

10  appraising the property at $1,120,000 and the other at

11  $1,040,000.[9]  See Harara Decl., Exs. E-18, E-19.  Plaintiff

12  does not challenge the specific facts used by Valuation

13  Research in their valuation, nor does he contend that the

14  company used improper methods or procedures in determining the

15  market value of the Station.  Rather, he argues that because

16  defendant had two estimates, and chose the higher estimate,

17  defendant's offer was per se not bona fide.  In light of the

18  fact that a third party paid $1,120,000 for the Station, and

19  another party offered $1,300,000, that defendant chose the

20  higher estimate is, standing alone, insufficient to

21  demonstrate that the offer was not bona fide.

22       Plaintiff also contends that the offer was not bona fide

23  because Mathews orally promised him that defendant would

24  _____

25  [9]     According to defendant, despite the fact that the
two valuations bear the same date, the lower valuation was
actually prepared by Valuation Research and received by
26  defendant two months after the date of the higher valuation,
and approximately one month after defendant offered to sell
27  the Station to plaintiff.  See Harara Decl., Ex. E at 164-65.
Defendant also contends the second valuation was actually
28  obtained as part of a survey to determine the rental value of
its Stations.  See Harara Decl., Ex. E at 164-65.

15

1   reduce the purchase price.  See Harara Decl. ¶ 6.  Assuming

2   for purposes of these motions that Matthews orally agreed to

3   reduce the purchase price by $75,000 and later reneged, that

4   would not necessarily mean that defendant's offer was not bona

5   fide for number of reasons.  First, because the sales contract

6   is fully integrated, any prior or contemporaneous oral

7   representation made by Matthews is inadmissible to vary the

8   terms of the agreement.  See Mathews Decl., Ex. A; Cal. Civ.

9   Code § 1625; Cal Civ. P. Code § 1856; Chevron U.S.A. Inc. v.

10  El-Khoury, 285 F.3d 1159, 1165 (9th Cir. 2002).  Any post-

11  contract statements by Mathews were also ineffective to modify

12  the Sales Contract, which contained a clause prohibiting oral

13  modifications.  See Mathews Decl., Ex. A; Conley v. Mathes, 56

14  Cal App. 4th 1453, 1465 (1997); Marani v. Jackson, 183 Cal.

15  App. 3d 695, 705-706 (1986).  Moreover, Mathews' subjective

16  intent is not relevant to whether the $1,120,000 offer was

17  bona fide.[10]  See Ellis, 969 F.2d at 787-88 (holding that the

18

19      [10]    Plaintiff also claims that defendant's offer was not
        bona fide because defendant included the value of the
20      improvements in the offer, but never reimbursed him for the
        improvements although Mathews represented it would do so.
21      However, plaintiff does not dispute that Mathews told
        plaintiff that Conoco would "consider" reimbursing plaintiff
22      for amounts spent on improvements; that Mathews did not have
        the authority to make a final determination on the matter; and
23      that any reimbursement would have to be submitted to, and
        approved by, Conoco's Wholesale Operations Department; which
24      never occurred.  Harara Decl., Exs. E at 145-46, E-8, E-9, E-
        11-13, E-16, K, M; Mathews Decl. ¶¶ 4-5; Decl. of Douglas
25      Bergman in Supp. of Conoco's Mot. for Summ. J. or, in the
        Alternative, Summ. Adjudication as to Pl.'s Claims for Relief
26      ("Bergman Decl.") ¶¶ 3-5, Ex. A.  Putting aside the issue of
        whether plaintiff may have been able to recover from defendant
27      the value of such improvements had he brought an appropriate
        claim not premised on a PMPA offer, whether defendant would
28      reimburse plaintiff for any improvements is not relevant to
        whether defendant's offer approached fair market value.

1   bona fide offer standard is objective, and measures whether

2   the offer approached fair market value).

3        Second, this is not a case where Conoco can be said to

4   have induced plaintiff to accept a higher offer by

5   misrepresenting that it would reduce the price and then try to

6   hold plaintiff to the higher offer.  Not only did Conoco not

7   try to force plaintiff to honor his acceptance, it even

8   returned his security deposit.  Finally, plaintiff does not

9   contend that he would have been able to purchase the station

10  for $75,000 less than the agreed price, since his bank would

11  only finance an $820,000 transaction.  See Harara Decl., ¶ 7,

12  Ex. D.

13       It is undisputed that defendant offered the Station to

14  plaintiff for $1,120,000, based on the terms reflected in the

15  Sales Contract.  The only issue before me is whether this

16  offer was bona fide under the PMPA.  Defendant has

17  demonstrated that its offer was objectively reasonable because

18  it approached fair market value.  See id.  I find that because

19  no genuine issue of material fact exists with respect to

20  whether defendant's offer was bona fide, it is entitled to

21  judgment as a matter of law.  Plaintiff's motion for summary

22  judgment on his first and second claims is **DENIED**, and

23  defendant's motion for summary judgment is **GRANTED**.

24       In his third claim, plaintiff contends that defendant

25

26

27  _____

28  See Ellis, 969 F.2d at 787-88.  The fair market value of the
    property is driven by the market; not by reference to any
    claims that may exist between a dealer and an oil company.

constructively terminated the franchise.[11]  It is entirely
unclear under what law plaintiff is bringing this claim.  He
has provided no citation to legal authority, and does not
otherwise explain his claim.  To the extent that plaintiff
intends to bring a claim under state law, it is pre-empted.
See 15 U.S.C. § 2806(a).  Assuming that a constructive
termination claim is actionable under the PMPA, plaintiff has
not submitted sufficient evidence to establish that defendant
violated the Franchise Agreement or otherwise constructively
terminated the franchise.[12]  See April Mktg. & Distrib. Corp.
v. Diamond Shamrock Ref. & Mktg. Co., 103 F.3d 28, 30-31 (5th
Cir. 1997) (holding that a claim for constructive termination
does not exist where the franchisor has acted within its
rights under the franchise); Fresher v. Shell Oil Co., 846
F.2d 45, 46-47 (9th Cir. 1989) (holding that franchisees
failed to state a claim where they had not alleged that
defendant breached the franchise agreements).  As a result, no

---

[11]    Specifically, plaintiff contends that defendant
constructively terminated the franchise by:  (1) cancelling
his credit privileges and putting him on "Cash In Advance"
status; (2) withholding payment for credit card sales until
his next purchase of gasoline; (3) making untimely and late
deliveries of gasoline; (4) refusing to accept his orders for
gasoline in January 2004; (5) denying him access to financial
information via the internet; and (6) failing to construct
certain improvements required by the City of Oakland.

[12]    The Ninth Circuit has not determined whether a claim
for constructive termination exists under the PMPA, and I need
not decide this issue here.  See Portland 76 Auto Truck
Plaza/Truck Plaza, Inc. v. Union Oil Co. of California, 153
F.3d 938, 948 (9th Cir. 1998) ("We assume for purposes of
discussion, but do not decide, that constructive termination
may give rise to a claim under the Act.") (citing Little Oil
Co., Inc. v. Atlantic Richfield Co., 852 F.2d 441, 444 n.4
(9th Cir. 1988)).

1   genuine issues of material fact exist with respect to

2   plaintiff's constructive termination claim.[13]

3        Plaintiff first contends that defendant constructively

4   terminated the franchise by terminating his credit privileges

5   and requiring him to prepay for gasoline.  Section 16(a) of

6   the Franchise Agreement provided that defendant "may change

7   credit terms, including but not limited to, defer product

8   shipments until payment is made, demand cash payment, demand

9   payment in advance, nonrenew, or terminate" if plaintiff fails

10  to fulfill terms of payment or if his financial condition

11  deteriorates.  See Masterton Decl., Ex. A, § 16.  It is

12  undisputed that defendant terminated plaintiff's credit

13  privileges, pursuant to company policy, following the return

14  of more than three of his Electronic Fund Transfers during the

15  12-month period preceding June 2002.  See supra note 2.

16  Plaintiff has failed to establish that the Franchise Agreement

17  required defendant, under these circumstances, to continue

18  delivering gasoline to plaintiff on credit.

19       Second, while plaintiff contends that defendant offset

20  amounts due him from credit card sales against the cost of his

21  next gasoline purchase, he has failed to establish that this

22  violated the Franchise Agreement.  Section 16(d) of the

23  Franchise Agreement provided that defendant "may use, without

24  prior notice or demand, any or all of DEALER's credit card

25

26       [13]    A PMPA franchise is composed of three elements:  the
    contract to use the refiner's mark, the contract for the
27  supply of motor fuel, and the lease of the service station
    premises.  Fresher, 846 F.2d at 46-47.  In this case, the
28  terms embodying these three elements are reflected in the
    Franchise Agreement.  See Masterton Decl., Ex. A.

19

1   receipts to setoff or satisfy all or any part of any

2   indebtedness or obligation of the DEALER." Masterton Decl.,

3   Ex. A.

4        Third, plaintiff argues that defendant constructively

5   terminated the franchise by making untimely and late

6   deliveries of gasoline. Even if defendant's deliveries

7   occurred two to three days following payment, as plaintiff

8   claims, this does not give rise to a claim of constructive

9   termination under the PMPA. The Franchise Agreement provided

10  that defendant was not responsible for any delay in motor fuel

11  deliveries due to defendant's inability to confirm plaintiff's

12  funds, and plaintiff does not dispute that delivery delays

13  were due in part to his credit status. Nor does plaintiff

14  explain why, knowing his credit status, he did not order

15  early. See Masterton Decl. ¶ 10, Ex. A, § 12(b). The

16  Franchise Agreement also limited defendant's liability for any

17  delays in delivering gasoline. See Masterton Decl., Ex. A, §

18  12(b).

19       Fourth, plaintiff contends that defendant constructively

20  terminated the franchise by refusing to accept his request for

21  gasoline in January 2004. The Franchise Agreement provided

22  that defendant could defer product shipments until plaintiff

23  had fully paid his outstanding account balance. Masterton

24  Decl., Ex. A, § 16(b). It is undisputed that plaintiff had an

25  outstanding balance as of January 6, 2004, and plaintiff has

26  not established that the Franchise Agreement required

27  defendant to deliver gasoline under these circumstances. See

28  Curtis Decl. ¶¶ 6-7.

1    Fifth, plaintiff argues that defendant constructively

2    terminated the franchise by denying him access to financial

3    information.  Plaintiff has submitted no evidence to support

4    this claim, nor has he established that the Franchise

5    Agreement required defendant to provide such access.  By

6    contrast, defendant has demonstrated that plaintiff had

7    internet access to his financial records.  Curtis Decl. ¶ 9.

8    Finally, while plaintiff contends that defendant failed

9    to construct improvements required by the City of Oakland to

10   curb the spread of illegal activity at the Station, he has not

11   established that either the City of Oakland or the Franchise

12   Agreement required defendant to improve the Station.  For the

13   foregoing reasons, plaintiff's motion for summary judgment

14   with respect to his third claim for relief is **DENIED**, and

15   defendant's motion is **GRANTED**.

16   Plaintiff's fourth claim alleges that defendant

17   terminated him in retaliation for this lawsuit.  The only

18   evidence he offers to support this contention is the fact that

19   the termination occurred shortly after the filing of the

20   lawsuit.  The mere fact that plaintiff is participating in a

21   suit against Conoco does not give rise to a presumption of

22   retaliatory intent on Conoco's part, especially given

23   plaintiff's defaults which had occurred prior to filing suit.

24   See Magerian, 1996 WL 119481 at *5.  As a result, his motion

25   for summary judgment with respect to his fourth claim for

26   relief is **DENIED**, and defendant's motion is **GRANTED**.

27   Plaintiff's fifth claim alleges that defendant's actual

28   termination of the franchise in February 2004 violated the

21

1  PMPA because it was not based on permissible grounds under
2  section 2802(b)(2).  Under section 2802(b)(2) a franchisor may
3  terminate the franchise relationship where the franchisee
4  fails "to comply with any provision of the franchise which
5  provision is both reasonable and of material significance to
6  the franchise relationship, if the franchisor first acquired
7  actual or constructive knowledge of such failure."  15 U.S.C.
8  § 2802(b)(2)(A).

9      In its notice, defendant specified three reasons for
10  termination:  (1) plaintiff's failure to stock 76-branded
11  motor fuel, (2) plaintiff's failure to pay $13,163.18 in rent
12  and other charges, and (3) plaintiff's failure to take
13  reasonable steps to control the operations of the Station.
14  Harara Decl., Ex. S; Masterton Decl. ¶ 14, Ex. D.  It is
15  difficult to imagine a contractual requirement more material
16  to the franchise than requiring the franchisee to actually
17  sell 76-branded gasoline.  See Magerian, 1996 WL 119481 at *6.
18  Defendant's decision to terminate on this basis was therefore
19  reasonable.  See 15 U.S.C. § 2802(b)(2)(A).  Defendant was
20  also justified in terminating the franchise based on
21  defendant's failure to pay rent.  See Murphy Oil USA, Inc. v.
22  Brooks Hauser, 820 F. Supp. 437, 443 (D. Minn. 1993) ("[T]here
23  is no doubt that failure to make timely payments of all sums
24  to which the franchisor is legally entitled is grounds for
25  termination under the PMPA.").  Finally, while it is not
26  entirely clear that plaintiff failed to make improvements
27  required by the City of Oakland, or that this constituted a
28  violation of the Franchise Agreement, the other two grounds

1  alone are sufficient to justify defendant's termination.

2  Plaintiff also contends that defendant did not give

3  sufficient notice prior to terminating the franchise.  While

4  the PMPA generally requires 90 days notice of termination, in

5  certain circumstances notice less than 90 days is reasonable.

6  See 15 U.S.C. § 2804(b)(1); Murphy Oil, 820 F. Supp. at 443

7  (14 days notice reasonable where plaintiff failed to pay

8  $33,176.42 for gasoline purchases and rent); Smoot v. Mobil

9  Oil Corp., 722 F. Supp. 849, 855 (D. Mass 1989) (four weeks

10  notice sufficient where plaintiff failed to stock gasoline);

11  Loomis v. Gulf Oil Corp., 567 F. Supp. 591, 597 (M.D. Fla.

12  1983)(five days notice sufficient for failure to pay amounts

13  due).  Defendant has demonstrated that plaintiff failed to pay

14  rent in January and February 2004 and that he failed to fully

15  pay for a January 6, 2004 shipment of gasoline.  Curtis Decl.

16  ¶¶ 6-8.  Plaintiff does not contend that he would have cured

17  the deficiencies had he been given more time.  I find that

18  under the circumstances presented in this case, defendant was

19  justified in terminating the franchise with ten days notice.

20  Plaintiff's motion for summary judgment as to his actual

21  termination claim is therefore **DENIED**, and defendant's motion

22  is **GRANTED**.

23  II.  ECOA Claim

24  Plaintiff's sixth claim seeks relief pursuant to the

25  Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et*

26  *seq.*, based on defendant's termination of plaintiff's credit

27  privileges in July 2002.  See Harara Decl. ¶ 21, Ex. C at

28  47:17-23.  In particular, plaintiff contends that defendant

23

1   failed to provide him with a statement of reasons for the

2   credit denial and failed to respond to his letter regarding a

3   reinstatement of his credit privileges.  <u>See</u> Harara Decl. ¶

4   21.  Plaintiff arguably abandoned this claim by stating in his

5   deposition that he did not have the facts to establish a cause

6   of action for violation of a federal credit statue, and that

7   he was not currently claiming any violation of a federal

8   credit statute by defendant.  <u>See</u> Decl. of Adam Friedenberg in

9   Supp. of Conoco's Mot. for Summ. J. or, in the Alternative,

10  Summ. Adjudication as to Pl.'s Claims for Relief ("Friedenberg

11  Decl."), Ex. A at 145–46.

12      Even if plaintiff had not abandoned this claim, defendant

13  would still be entitled to summary judgment.  Section

14  1691(d)(2) of the Act provided that "[e]ach applicant against

15  whom adverse action is taken shall be entitled to a statement

16  of reasons for such action from the creditor."  15 U.S.C. §

17  1691(d)(2).  The term "adverse action" does not include "[a]ny

18  action or forbearance relating to an account taken in

19  connection with inactivity, default, or delinquency as to that

20  account."  12 C.F.R. § 202.2(c)(2).  Defendant contends, and

21  plaintiff does not dispute, that the adverse action in this

22  case was the credit denial, and that the denial was due to

23  plaintiff's failure to make prompt payments for gasoline

24  deliveries.  <u>See</u> Masterton Decl., Ex. B; Friedenberg Decl.,

25  Ex. A at 62:17–63.8; Curtis Decl. ¶ 4.  As the adverse action

26  was based on plaintiff's default, section 1691(d)(2) does not

27  provide plaintiff with a basis for a claim.

28      Plaintiff also contends that defendant violated the ECOA

24

1  by failing to respond to his application for reinstatement of

2  his credit privileges.  Section 1691(d)(1) provides that

3  "Within thirty days . . . after receipt of an completed

4  application for credit, a creditor shall notify the applicant

5  of its action on the application."  15 U.S.C. § 1691(d)(1).

6  Application "means an oral or written request for an extension

7  of credit that is made in accordance with procedures used by a

8  creditor for the type of credit requested."  12 C.F.R. §

9  202.2(f).  Plaintiff's application was incomplete because it

10 did not include all required documents, including his profit

11 and loss statements and cash flow and balance sheets for the

12 preceding year.  Masterton Decl. ¶ 9; Harara Decl., Ex. C-3.

13 Plaintiff's motion as to his sixth claim for relief is

14 therefore **DENIED,** and defendant's motion is **GRANTED.**[14]

15 III. State Law Claims

16     Under his eighth claim, plaintiff contends that defendant

17 violated section 1787.2 of the California Civil Code by

18 failing to provide the required notifications after his first

19 termination of credit and not responding to his application

20 for renewal of credit.  Section 1787.2 requires a creditor to

21 notify an applicant, within thirty days of receipt of a

22 completed, written application for credit, of its action on

23 the application.  Cal. Civ. Code § 1787.2 (a).  "The term

24 'applicant' means a natural person who applies for credit

25 primarily for personal, family or household purposes."  Cal.

26 Civ. Code § 1787.2(e)(1).  Plaintiff does not dispute that he

27 _____

28     [14]  In my September 15, 2004 Order, I dismissed
    plaintiff's seventh claim for relief with leave to amend.
    Plaintiff did not amend his claim.

applied to defendant for credit solely related to his service

station business.  <u>See</u> Friedenberg Decl., Ex. A at 146:22-

147:6, Ex. D at 5:13-19.  Indeed, the only evidence he has

presented is his application to defendant to reinstate his

credit privileges so that he did not have to continue to

prepay for gasoline.  <u>See</u> Harara Decl, Ex. C-3.  While I have

found no authoritative state law defining "primarily for

personal, family or household purposes," whatever the phrase

may mean, it does not apply to plaintiff, who applied to

defendant for credit related solely to his service station

business.[15]  As plaintiff has provided no evidence that he

applied for credit for primarily personal, family or household

purposes, I find that no genuine issue of material fact exists

with respect to plaintiff's eighth claim.  Accordingly,

plaintiff's motion for summary judgment on his eighth claim is

**DENIED**, and defendant's motion is **GRANTED**.

     With respect to his ninth claim, although plaintiff did

not explicitly seek to assign the remaining term of his

franchise, he contends that defendant's denial of consent to

assignment of the Sales Contract constitutes an implicit

denial of assignment of the Franchise Agreement in violation

of section 21148 of the California Business and Professions

Code.  Under section 21148, a franchisor may not withhold its

---

[15]     In my September 15, 2004 Order I concluded that
under the lenient standard of notice pleading plaintiff's
allegations were broad enough that I could not conclude that
he was not an "applicant" under the section 1787.2.  <u>See</u>
<u>See</u> September 22, 2004 Order.  Plaintiff incorrectly
interprets my statement that the Act "does not expressly limit
its protections to only consumer credit," to mean that
plaintiff would have a claim against defendant if he had
applied for credit solely for business purposes.  <u>See</u> <u>id.</u>

consent to the sale, transfer, or assignment of the franchise
unless the franchisor demonstrates that one of the enumerated
circumstances applies.  Cal. Bus. & Prof. Code § 21148(a).
Plaintiff has not presented any evidence that he requested to
sell, transfer, or assign the remaining term of his franchise
to Phan, or to any other third party.  His motion for summary
judgment as to his ninth claim is therefore **DENIED**, and
defendant's motion is **GRANTED**.

In his tenth claim for relief, plaintiff contends that
defendant violated section 21140.2 of the California Business
and Professions Code by requiring him to sell only 76-branded
motor oil.  Section 21140.2 provides, in relevant part, "it
shall be illegal for any franchisor by any action to require a
franchisee to purchase only . . . motor oil . . . sold by the
franchisor.  A franchised gasoline dealer may sell any . . .
motor oil . . . as may be available to him or her for retail
sale."  Cal. Bus. & Prof. Code § 21140.2.  It is undisputed
that defendant did not require plaintiff to purchase or sell
only 76-branded motor oil.  See Harara Decl., Ex. A at 136:22-
137:3.  His motion with respect to his tenth claim is
therefore **DENIED**, and defendant's motion is **GRANTED**.

Plaintiff's eleventh claim alleges that defendant
breached the Franchise Agreement by terminating his credit
privileges and denying him access to his financial records.
Defendant complied with the terms of section 16 of the
Franchise Agreement when it terminated plaintiff's credit
privileges.  See supra p. 19.  Plaintiff has not demonstrated
that the Franchise Agreement required defendant to provide

1 access to his financial records, nor does he dispute that, as

2 a service station operator, he had internet access to such

3 information through defendant's website.  Curtis Decl. ¶ 9.

4 Plaintiff's motion for summary judgment on his eleventh claim

5 is therefore **DENIED**, and defendant's motion is **GRANTED**.

6       With respect to his twelfth claim, plaintiff argues that

7 defendant breached the Franchise Agreement by failing to make

8 timely deliveries of gasoline.  See Harara Decl., ¶¶ 14-16,

9 Ex. A at 143:6-144:1.  Section 12(b) of the Franchise

10 Agreement provides that defendant "will fill orders with

11 reasonable promptness, but shall not be liable for loss or

12 damage due to delays or failure in whole or in part to fill

13 orders resulting from DEALER's banking arrangements" or

14 defendant's ability to "confirm DEALER's funds."  Masterton

15 Decl., Ex. A.  Plaintiff does not specify the particular dates

16 on which defendant made late deliveries, nor does he dispute

17 that the delays were due in part to his credit status.[16]

18 See Masterton Decl. ¶ 10.  In any event, the Franchise

19 Agreement expressly limited defendant's liability for delivery

20 delays.  Masterton Decl., Ex. A, § 12(b) ("In no event shall

21 [Conoco] be liable for loss of profits or special or

22 consequential damages because of delay or failure to make

23 deliveries.").  Plaintiff has failed to establish that the

24 defendant's late deliveries violated the Franchise Agreement.

25 As no genuine issue of material of fact exists, plaintiff

26 motion for summary judgment on his twelfth claim is **DENIED**,

27 _____

28     [16]   Defendant's refusal to deliver gasoline in January 2004 was based on plaintiff's failure to pay for a prior shipment of gasoline.  See Curtis Decl. ¶ 6.

1    and defendant's motion is **GRANTED**.

2        Plaintiff has also failed to provide sufficient

3    evidentiary support for his thirteenth claim for relief for

4    breach of contract.  Plaintiff erroneously contends that

5    defendant breached the Franchise Agreement by withholding

6    payment for credit card sales until his next purchase of

7    gasoline and failing to reimburse him for these sales.

8    Section 16(d) of the Franchise Agreement provided that

9    defendant could setoff credit card receipts to satisfy past

10   indebtedness.  Masterton Decl., Ex. A.  Section 17 provided

11   that where plaintiff was past due on any payment, defendant

12   may "first apply credit card invoices to the payment of the

13   past due indebtedness."  Id.  Defendant has demonstrated that

14   plaintiff received a gasoline delivery on January 6, 2004,

15   which cost $14,310.82.  Curtis Decl. ¶ 6.  At the time,

16   defendant owed plaintiff $5,449.23 for recent credit card

17   sales.  Id.  Subtracting these amounts, plaintiff still owes

18   $8,861.23, which he has failed to pay.[17]  Id.  Plaintiff has

19   not established that defendant currently owes him money for

20   any outstanding credit card sales.

21       Plaintiff also contends that defendant failed to

22   reimburse him for credit card sales that customers disputed or

23   refused to pay.  Plaintiff has presented four credit card

24

25       [17]   While plaintiff contends that he had a $15,000
     credit reserve as of March 1, 2001, defendant has shown that
26   it applied $10,000 toward plaintiff's past unpaid debt on
     November 13, 2002, and the additional $5,000 toward
27   plaintiff's $21,663.83 balance on September 9, 2004.  See Rep.
     Decl. of Paul Curtis in Support of Conoco's Mot. for Summ. J.
28   or, in the Alternative, Summ. Adjudication as to Pl.'s Claims
     for Relief, ¶ 2.

1    receipts and a statement titled "invoice chargebacks" which

2    states "customer denies participation" for each invoice.  <u>See</u>

3    Harara Decl., Ex. Y.  These four receipts total $107.23.  <u>Id.</u>

4    Plaintiff has not demonstrated that defendant violated the

5    Franchise Agreement by requiring plaintiff to bear the cost of

6    these "invoice chargebacks," nor has he has established that

7    defendant owes him any money for these disputed payments.  In

8    fact, the Franchise Agreement provided that under certain

9    circumstances, defendant could charge back invoices to Harara,

10   and apply credit card invoices to past due indebtedness.  <u>See</u>

11   Masterton Decl., Ex. A, § 17.  Accordingly, I find that no

12   genuine issue of material fact exists, and defendant is

13   entitled to judgment as a matter of law.  Plaintiff's motion

14   for summary judgment on his thirteenth claim for relief is

15   therefore **DENIED**, and defendant's motion is **GRANTED.**

16       In his fourteenth claim, plaintiff contends that

17   defendant breached the Sales Contract by refusing to consent

18   to assignment, offering the Station to the Usmans, and

19   canceling escrow without granting ten days notice.  These

20   allegations merely restate plaintiff's prior claims.

21   Plaintiff has presented no argument with respect to these

22   claims and instead refers to the first portion of his motion.

23   I have already found that no genuine issue of material fact

24   exists as to these claims, and that defendant is entitled to

25   judgment as a matter of law.  For the reasons stated above,

26   his motion with respect to these claims is also **DENIED**, and

27

28

1   defendant's motion is **GRANTED**.[18]

2       In his twenty-first claim, plaintiff essentially

3   incorporates his other claims and contends that they also

4   constitute independent violations of section 17200 *et seq.* of

5   the California Business and Professions Code.  Plaintiff also

6   contends that defendant violated section 31201 of the

7   California Corporations Code by continuing to market the

8   Station during the escrow period, and that this violates

9   California Business and Professions Code § 17200 *et seq.*

10  Section 31201 is only applicable to the sale of franchises,

11  and plaintiff has provided no evidence that defendant offered

12  to sell the franchise; it only sold the Usmans the property on

13  which the station was located.  See Cal. Corp. Code §§ 31002,

14  31201.  To the extent that plaintiff relies on his other

15  claims as an independent basis for relief under his twenty-

16  first claim, I have granted defendant summary judgment on

17  these claims.[19]  Plaintiff has not established that

18  defendant's actions otherwise constituted unlawful, unfair or

19  fraudulent business practices or that defendant engaged in

20  unfair, deceptive, untrue or misleading advertising in

21  violation of California Business and Profession Code § 17200

22  *et seq.*  Plaintiff's motion for summary judgment on his

23  twenty-first claim is therefore **DENIED**, and defendant's motion

24

25  _____

26      [18]   I previously dismissed plaintiff's fifteenth through
    twentieth claims for relief.  See September 22, 2004 Order.

27      [19]   I have also dismissed plaintiff's twenty-first claim
    to the extent that it is preempted by the PMPA.  See June 2,
28  2004 Order Granting in Part and Denying in Part Defendant's
    Motion to Dismiss at 12; September 22, 2004 Order at 7.

1  is **GRANTED**.

2  IV.  <u>Specific Performance and Declaratory Relief</u>

3       Defendant also seeks summary judgment on plaintiff's

4  twenty-second claim for specific performance of the Sales

5  Contract and his twenty-third claim for declaratory relief.

6  As I have granted defendant's motion with respect each of

7  plaintiff's claims, plaintiff is not entitled to specific

8  performance of the Sales Contract.[20]  Plaintiff's request for

9  a declaratory judgment is similarly untenable because it

10  relates solely to his PMPA claims, and I have already granted

11  defendant summary judgment on these claims.[21]  Defendant's

12  motion for summary judgment on plaintiff's twenty-second and

13  twenty-third claims is **GRANTED**.

14       Although plaintiff has raised many novel and ingenious

15  arguments, two facts stand out from this record.  The price

16  defendant asked did approach fair market value, since the

17  Usmans paid it and Phan would have paid it and more.  And

18  plaintiff ultimately did not close escrow because of anything

19  defendant said or did, but because he could not obtain the

20

_____

21       [20]  Specific performance is a form of contractual
   relief, not an independent claim.  <u>See</u> 5 Witkin, <u>California</u>
22  <u>Procedure</u>, Pleading § 740 (4th ed. 1997).  It is unwarranted
   here because the Usmans have already purchased the Station,
23  and plaintiff has not demonstrated that they were not bona
   fide purchasers.  <u>See</u> <u>Rogers v. Davis</u>, 28 Cal. App. 4th 1215,
24  1222 (1994).  Plaintiff has also failed to establish that he
   is ready, willing, and able to perform under the Sales
25  Contract.  <u>See</u> <u>Gagerro v. Yura</u>, 108 Cal. App. 4th 884, 890
   (2003).
26

       [21]  Other adequate remedies would have also been
27  available for defendant's past conduct had plaintiff
   prevailed, making declaratory relief inappropriate.  <u>See</u>
28  William Schwarzer et al., <u>Federal Civil Procedure Before</u>
   <u>Trial</u>, ¶10:13.5 (2005).

1  necessary financing.  For all the foregoing reasons

2  plaintiff's motion is **DENIED**, defendant motion is **GRANTED** and

3  judgment will be entered in defendant's favor on the

4  complaint.

5  Dated: April 29, 2005

6

7  _____

8  Bernard Zimmerman
   United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

G:\BZALL\-BZCASES\Harara\HARARA.MSJ.ORD7.wpd

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

MARWAN AHMED HARARA,

        Plaintiff,

   v.

ConocoPhillips Company et al,

        Defendant.

_____/

Case Number: CV04-00515 BZ

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 29, 2005, I SERVED a true and correct copy(ies) of the attached ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Adam Friedenberg
Glynn & Finley
100 Pringle Avenue Ste 500
Walnut Creek, CA 94596

Marwan Ahmed Harara
3220 Contreras Place
Hayward, CA 94542

Dated: April 29, 2005

        Richard W. Wieking, Clerk
        By: Rose Maher, Deputy Clerk